UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| FOX TELEVISION STATIONS, INC., et al., <br><br> *Plaintiffs/Counter-Defendants*, <br><br> v. <br><br> FIL, FILMON X LLC, et al., <br><br> *Defendants/Counter-Plaintiffs*. | Civil No. 1:13-cv-00758 (RMC) <br> Hon. Rosemary M. Collyer |

## **DEFENDANTS' EMERGENCY NOTICE OF MOTION AND MOTION TO STAY THE PRELIMINARY INJUNCTION PENDING APPEAL, AND TO MODIFY THE SCOPE OF THE INJUNCTION**

Defendants respectfully move the Court to enter a stay of this Court's September 5, 2013 Order (Dkt. 34) (the "Order") pending defendants' appeal to the U.S. Court of Appeals for the D.C. Circuit. Defendants further request that the Court limit the geographic scope of the injunction to the D.C. Circuit. In light of this emergency motion and the emergency motion for reconsideration, contemporaneously filed, defendants finally request that the Court continue the deadline by which defendants' must demonstrate compliance with the Order until this Court has ruled on defendants' emergency motions.

Defendants intend to appeal the Order, which granted Plaintiffs' Motion for Preliminary Injunction and enjoined defendants and other related persons from "streaming, transmitting, retransmitting, or otherwise publicly performing, displaying or distributing any Copyrighted Programming over the Internet (through websites such as filmon.com or filmonx.com), via web applications (available through platforms such as the Windows App Store, Apple's App Store, the

1

Amazon App Store, Facebook, or Google Play), via portable devices (such as through application on devices such as iPhones, iPads, Android devices, smart phones or tablets), or by means of any device or process." (Order at 2.) The order enjoins defendants from that activity throughout the United States with the exception of the Second Circuit. Additionally, within three court days after plaintiffs post a bond in the amount of $250,000,[1] the Order requires defendants "to file and serve a report in writing and under oath setting forth in detail the manner and form with which Defendants have complied with the Preliminary Injunction." (Order at 3.)

The basis for defendants' motion is set forth in the attached Memorandum, the accompanying Declarations of Alkiviades David, Mykola Kutovyy, and Ryan Baker, the accompanying Request for Judicial Notice, and the court records filed by the parties in connection with plaintiffs' motion for a preliminary injunction. A proposed order is also included. Because defendants are required to file a report demonstrating compliance with the Preliminary Injunction by Thursday, September 12, 2013, defendants respectfully request expedited consideration of this motion.

Pursuant to Local Rule 7(m), defendants provided notice of their intent to seek the relief requested in this motion to plaintiffs' counsel on September 9, 2013. (Declaration of Ryan Baker, ¶ 3.) Plaintiffs' counsel indicated that plaintiffs would oppose this motion. (*Id.*, ¶ 4 & Ex. 1.) Defendants' counsel further proposed an expedited briefing schedule, but the parties were unable to agree on terms. (*Id.*, ¶ 5.) This motion has been brought by defendants at the first available opportunity. (*Id.*, ¶ 6.)

---

[1] Plaintiffs posted the bond for the injunction on September 9, 2013. (Dkt. No. 35.)

2

Dated: September 10, 2013                          BAKER MARQUART LLP


By: /s/   Ryan G. Baker
Ryan G. Baker
BAKER MARQUART LLP
10990 Wilshire Blvd., Fourth Floor
Los Angeles, California 90024
(424) 652-7811 (telephone)
(424) 652-7850 (facsimile)
Bar No.: 214036

*Attorneys for Defendants and Counterclaim Plaintiffs FilmOn X, LLC, FilmOn.TV, Inc., FilmOn.TV Networks, Inc., and FilmOn.com, Inc*

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................ 1

PROCEDURAL BACKGROUND ............................................................................................... 2

ARGUMENT ................................................................................................................................ 3

I.    A Complete Stay Of The Preliminary Injunction Pending Appeal Is Warranted .................... 3

    A.    There Is A Serious Question Whether This Court's Correctly Interpreted The Transmit Clause ............................................................................................................... 4

    B.    Defendants Will Suffer Severe And Irreparable Harm From The Injunction, Which This Court Did Not Contemplate In Its Order ............................................. 7

    C.    Plaintiffs Will Not Suffer Substantial Harm From A Stay Pending Appeal ................ 9

    D.    The Public Interest Is Served By A Stay ............................................................. 10

II.    At A Minimum, This Court Should Modify The Geographic Scope Of The Injunction To Limit It To the D.C. Circuit ................................................................................................. 11

CONCLUSION ........................................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Am. Broad. Companies, Inc. v. Aereo, Inc.,*
874 F. Supp. 2d 373 (S.D.N.Y. 2012) ("*Aereo I*") ..................................................................5

*Cablevision. Cartoon Network LP, LLLP v. CSC Holdings, Inc.,*
536 F. 3d 121 (2d Cir. 2008) ("*Cablevision*") ............................................................5, 6, 7

*Califano v. Yamasaki,*
442 U.S. 682 (1979) ..................................................................................................................12

*Cuomo v. U.S. Nuclear Regulatory Comm'n,*
772 F.2d 972 (D.C. Cir. 1985) .................................................................................................3

*Fox Broadcasting Co, Inc., et al. v. Dish Network L.L.C., et al.,*
2013 WL 3814917 (9th Cir. July 24, 2013) ...........................................................................5

*Fox Television Stations, Inc. v. BarryDriller Content Systems, PLC,*
915 F. Supp. 2d 1138 (C.D. Cal. 2012) ..........................................................................13, 12

*Hilton v. Braunskill,*
481 U.S. 770 (1987) ..............................................................................................................3, 4

*Holland v. National Mining Association,*
309 F.3d 808 (D.C. Cir. 2002) ....................................................................................11, 12, 13

*Population Inst. v. McPherson,*
797 F.2d 1062 (D.C. Cir. 1986) ..............................................................................................4

*Random House v. Rosetta Books LLC,*
283 F.3d 490 (2d Cir. 2002) ..................................................................................................10

*Sony Corp. of Am. v. Universal City Studios, Inc.,*
464 U.S. 417 (1984) (*Sony*) ..............................................................................................5, 10

*Virginia Soc'y for Human Life v. Federal Election Comm'n,*
263 F.3d 379 (4th Cir.2001) ..................................................................................................12

*WNET, Thirteen v. Aereo, Inc.,*
712 F.3d 680 (2d Cir. 2013) ("*Aereo*") ...........................................................................1, 5, 7

**FEDERAL STATUTES**

17 U.S.C. § 101 ..........................................................................................................................6, 7

17 U.S.C. § 502 ............................................................................................................................3

**RULES**

Federal Rule of Civil Procedure 62(c) ...................................................................................2, 3

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' EMERGENCY MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL

### INTRODUCTION

On September 5, 2013, this Court granted plaintiffs' motion for a preliminary injunction. That order bars defendants from offering their FilmOn X service nationwide, except for the Second Circuit, where the courts have found that technology similar to that of the defendants is legal. Although this Court declined to follow Second Circuit precedent, *WNET, Thirteen v. Aereo, Inc.*, 712 F.3d 680 (2d Cir. 2013) ("*Aereo*"), the same issues this Court considered are currently before courts in two other circuits. The Ninth Circuit heard oral argument related to defendants' technology on August 27, 2013. In the First Circuit, the District Court for Massachusetts will hear a motion for preliminary injunction – similar to the motion brought by plaintiffs in this case – on September 18, 2013. (*See* Defendants/Counter-Plaintiffs' Request for Judicial Notice ("RJN"), Exs. 10-11.) There is a substantial likelihood that one or both of those Courts will follow Second Circuit precedent, which this Court did not in enjoining conduct in regions governed by the other courts considering the same issues.[2]

Courts faced with the facts and law before this Court have come out differently. But the only court of appeals to consider the issues raised in this case has decided that the technology offered by FilmOn X enables only private performance and is therefore legal. Accordingly, defendants respectfully assert that there is a substantial likelihood that they will ultimately prevail on appeal. Even if this Court reaches a different assessment, defendants' appeal plainly raises serious questions concerning the appropriate interpretation of the Transmit Clause, as evidenced by the carefully reasoned opinion of the Second Circuit in *Aereo*. Accordingly, a stay is appropriate.

---

[2] For similar reasons, in a separate motion, defendants request that this Court reconsider the Court's September 5, 2013 preliminary injunction order.

1

Alternatively, defendants request under Federal Rule of Civil Procedure 62(c), that this Court modify the scope of the injunction to limit it to this circuit.

This Court's injunction also has another potentially unintended consequence – the Order unfairly prejudices defendants, by restraining FilmOn X's ability to compete with Aereo in a new and developing industry sector. Aereo, of course, is not subject to any injunction and may continue to operate everywhere, except, presumably, where courts have agreed with this Court's ruling. Defendants would suffer irreparable harm as a result of a nationwide injunction that would prevent them from competing with Aereo.

Because a nationwide injunction will unduly prejudice defendants by permitting defendants' main competitor, Aereo, to continue operations across the country without competition from FilmOn X, this Court should issue a complete stay of the injunction. Alternatively, the scope of the injunction should be limited to the circuit in which this Court resides. A stay or modification of the injunction is also warranted because of the important questions of law that are currently before several different courts across the country, which questions will soon be presented to the court of appeals for this circuit.

## PROCEDURAL BACKGROUND

In this action, plaintiffs seek to permanently enjoin defendants from providing services that use the Internet to give consumers the ability to watch over-the-air television channels through their computers and on mobile devices. On August 1, 2013, plaintiffs moved for a preliminary injunction (Dkt. 27), and defendants opposed that motion. (*See* Defs. Opp. (Dkt. 31).)

On September 5, 2013, the Court granted plaintiffs' motion for preliminary injunction. The Court enjoined defendants[3] from "streaming, transmitting, retransmitting, or otherwise publicly

---

[3] The injunction also applies to defendants' "parents, subsidiaries, officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of this Order."

2

performing, displaying or distributing any Copyrighted Programming over the Internet (through websites such as filmon.com or filmonx.com), via web applications (available through platforms such as the Windows App Store, Apple's App Store, the Amazon App Store, Facebook, or Google Play), via portable devices (such as through application on devices such as iPhones, iPads, Android devices, smart phones or tablets), or by means of any device or process." (Order (Dkt. 34) at 2.) Further, rather than limiting the geographic scope of the injunction to the D.C. Circuit, this Court ruled that the injunction "applies throughout the United States pursuant to 17 U.S.C. § 502, with the exception of the Geographic boundaries of the United States Court of Appeals for the Second Circuit." (*Id.* at 2.)

Pursuant to Federal Rule of Civil Procedure 62(c), defendants seek a stay of the Order in its entirety. Alternatively, defendants seek to modify the geographic scope of the injunction to limit it to the D.C. Circuit.

## ARGUMENT

### I. A Complete Stay Of The Preliminary Injunction Pending Appeal Is Warranted.

In light of defendants' decision to appeal the Court's September 5, 2013 Order, the weighty issues presented in this case that must be resolved on appeal, and the irreparable injury that defendants and the public would suffer if that Order remains in place pending resolution of their appeal, defendants respectfully seek a stay. Courts consider four factors in assessing the propriety of granting a motion for stay pending appeal: (1) the movant's likelihood of prevailing on the merits of the appeal; (2) whether the movant will suffer irreparable damage absent a stay; (3) the harm that other parties will suffer if a stay is granted; and (4) the public interest. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985) (internal citations omitted).

3

These familiar equitable factors cannot be reduced to a "set of rigid rules" but rather necessitate "individualized judgments in each case." *Hilton*, 481 U.S. at 777. For instance, the district court, having already ruled against the movant on the underlying legal questions, need not be convinced that the movant has "an absolute certainty of success" on appeal. Instead, "[i]t will ordinarily be enough that the [movant] has raised serious legal questions going to the merits, so serious, substantial, difficult as to make them a fair ground of litigation . . . ." *Population Inst. v. McPherson*, 797 F.2d 1062, 1078 (D.C. Cir. 1986). The substantiality of defendants' arguments on appeal, together with the balance of hardships, weigh heavily in favor of granting a stay pending appellate review.

### A. There Is A Serious Question Whether This Court's Correctly Interpreted The Transmit Clause

In its September 5, 2013 Memorandum & Opinion (the "Opinion"), this Court ruled that "FilmOn X's service violates Plaintiffs' 'exclusive right . . . to perform the copyrighted work publicly'" because it "mak[es] available Plaintiffs' copyrighted performances to any member of the public who accesses the FilmOn X service . . . ." (Opinion (Dkt. 33) at 25.) The Court reasoned that "Congress intended 'device or process' in the Transmit Clause to include 'all kinds of equipment for reproducing or amplifying sounds or visual images, any sort of transmitting apparatus, any type of electronic retrieval system, and any other techniques and systems not yet in use or even invented.'" (*Id.* at 27 (quoting H.R. Rep. 94-1476 (House Report) at 1 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5677).) Thus, it mistakenly concluded that the particular technological system used by FilmOn X to provide these "DVR-like capabilities" is legally irrelevant, and that "every broadcast of a television program . . . could be described as 'generated from the same copy'— the original source." (*Id.* at 25, 27.)

In reaching its conclusion, this Court ignored the unique nature of the copy from which a transmission to an individual user originates. This Court's focus on the "original over-the-air

4

broadcast of a work copyrighted by Plaintiffs" rather than on the transmission of the performance at issue, ignores that consumers use FilmOn X's services to record individual copies of television programs for their own *private* future use and enjoyment. This Court also does not acknowledge that it is the user and not FilmOn X who makes the copy and initiates the transmission. That concept – the significance of the user's volition – was recently emphasized in *Fox Broadcasting Co, Inc., et al. v. Dish Network L.L.C., et al.*, 2013 WL 3814917, at *1 (9th Cir. July 24, 2013) *Dish*, slip op. at 12 (based on its conclusion that "[i]nfringement of the reproduction right requires 'copying *by* the defendant,'" as opposed to the end user, the district court properly denied Fox's motion for preliminary injunction.)

Like the remote storage RS-DVR systems in *Cablevision* and *Aereo*, FilmOn X's system merely enables consumers to personally make and privately view performances from individual copies, at the consumer's convenience. *Cablevision. Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F. 3d 121 (2d Cir. 2008) ("*Cablevision*"); *Am. Broad. Companies, Inc. v. Aereo, Inc.*, 874 F. Supp. 2d 373 (S.D.N.Y. 2012) ("*Aereo I*"); *WNET, Thirteen v. Aereo, Inc.*, 712 F.3d 680 (2d Cir. 2013) ("*Aereo II*"). This is no different in kind from consumer use of a traditional home video recorder, which Sony deemed a non-infringing fair use. *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 431-32 (1984) (*Sony*); *see also Fox Broadcasting Co, Inc., et al. v. Dish Network L.L.C., et al.*, 2013 WL 3814917, at *1 (9th Cir. July 24, 2013) (because Dish technology merely enables users to copy and watch network programming, plaintiff networks were not entitled to an injunction).[4]

---

[4] In contrast, this Court concluded that "FilmOn X . . . is in no meaningful way different from cable television companies, whose relationship with broadcasters such as Plaintiffs was the primary motivation for the 1976 Act's enactment." (Opinion at 27.) However, cable television companies—unlike FilmOn X—retransmit broadcasts of copyrighted television programs to unlimited numbers of subscribers in a *single over-the-air transmission*. FilmOn X is not a cable system. Instead, FilmOn X allows individual consumers to remotely store their own unique copies of television programs that they have chosen to record for their personal use and enjoyment in the

Defendants respectfully assert that the Court's conclusions about the statutory language of the Transmit Clause and the intent of Congress raise serious issues of law to be decided on appeal. As to the statutory language itself, the Transmit Clause focuses on the act of transmitting a performance of the work. It expressly provides that "[t]o perform or display a work 'publicly' means . . . (2) *to transmit or otherwise communicate* a performance or display of the work . . . *to the public*, by means of any device or process, whether the members of the *public capable of receiving the performance* or display receive it in the same place or in separate places and at the same time or at different times." 17 U.S.C. § 101 (emphasis added). By referring to "the public" and "members of the public capable of receiving" a specific transmission, the statute plainly requires an inquiry into whether a specific transmission of a performance has been made to the public. *See Cablevision*, 536 F. 3d 121, 139 (2d Cir. 2008) (reasoning that "the transmit clause directs us to identify the potential audience of a given transmission, *i.e.*, the persons 'capable of receiving' it, to determine whether that transmission is made 'to the public.'"). Accordingly, the Transmit clause only applies to transmissions of specific performances that are capable of being received by the public at large.

Defendants' interpretation of the Transmit clause is also fully consistent with congressional intent. Although this Court concluded that there is "nothing" in the legislative history that suggests "Congress intended a commercial entity" such as FilmOn X "to avoid liability for infringement of the copyright holders' exclusive right to public performance," FilmOn X merely provides a data storage service to consumers who wish to record and store television shows for legal private performances in the future. This Court's focus on FilmOn X's status as a "commercial entity" is misplaced. Nothing in the Transmit clause focuses on a defendant's status as a "commercial entity"—to the contrary, the statutory language states that "to perform or display

---

future.

a work 'publicly' means . . . to transmit or otherwise communicate a performance or display of the work . . . to the public . . . ." 17 U.S.C. § 101. Thus, the plain language of the statute requires the court to focus its analysis on the audience of a specific transmission. Moreover, nothing in the Copyright Act makes it illegal for private persons to use commercial companies such as FilmOn X to provide remote storage and recording services for otherwise private performances of television programs.[5]

Ultimately, there are serious questions as to the proper interpretation of the Transmit Clause that require appellate review. While this Court may disagree with the Second Circuit's decisions in *Cablevision* and *Aereo*, those decisions were carefully reasoned and supported. Accordingly, this Court should grant a stay of its preliminary injunction pending appeal, especially in light of the grave irreparable harm that will be suffered by defendants.

### B. Defendants Will Suffer Severe And Irreparable Harm From The Injunction, Which This Court Did Not Contemplate In Its Order

Although this Court previously stated that FilmOn X's concerns over a preliminary injunction are "overstated," the extremely broad geographic scope of the injunction clearly threatens substantial and irreparable harm to defendants' business operations in every single U.S. jurisdiction except the Second Circuit. Further, the injunction broadly applies to "any Copyrighted Programming over the Internet (through websites such as filmon.com or filmonx.com), via web applications (available through platforms such as the Windows App Store, Apple's App Store, the Amazon App Store, Facebook, or Google Play), via portable devices (such as through application on devices such as iPhones, iPads, Android devices, smart phones, or tablets), or by means of any device or process." (Order (Dkt. 34) at 2.) Thus, the plain language of the Order clearly applies to a wide range of services offered by defendants in the vast majority of U.S. markets.

While defendants believe that the balancing of the equities decidedly tips in their favor for

---

[5] Of course, the entire cloud computing industry is based on such commercial entities that permit individual users to remotely store and access material for private performance and consumption.

7

many of the reasons previously briefed by the parties, a central problem with this Court's factual analysis is that the Court failed to take into account the unintended consequence of a nearly nationwide injunction that *only applies to defendants*. The preliminary injunction does not apply to Aereo or other companies who provide similar remote DVR-like capabilities to consumers. (Declaration of Alkiviades David in support of Defendants/Cross-Plaintiffs' Emergency Motion to Stay the Preliminary Injunction ("David Decl.") at ¶¶ 3, 8.) If the current injunction is not stayed, then defendants almost certainly will lose market share to Aereo or these competitors who will continue to provide consumers with remote data storage services for copyrighted programming even though Defendants are no longer allowed to do so. (David Decl. at ¶¶ 6-8, 10.) In light of the fact that FilmOn X is a relatively new technology company, formed in 2008 in a rapidly evolving industry, it is no stretch of the imagination to conclude that FilmOn X will permanently lose a substantial portion of its market share to Aereo or other competitors who spring up to fill the void left by FilmOn X's forced exit from the marketplace. (*See* David Decl. at ¶¶ 5-8, 10.)

    Surely, this Court did not intend to give Aereo a competitive advantage over defendants by granting Plaintiffs' request for a preliminary injunction, but that is the natural consequence of its decision. At present, Aereo provides the same DVR-like services as FilmOn X in Atlanta, Boston, Miami, Salt Lake City, as well as within the Second Circuit. (*See* RJN, Exs. 1-5; David Decl. at ¶ 4.) Even more importantly, Aereo has publicly announced plans to expand to Washington D.C., as well as Austin, Baltimore, Birmingham, Alabama, Chicago, Cleveland, Dallas, Denver, Detroit, Houston, Kansas City, Madison, Wisconsin, Minneapolis, Philadelphia, Pittsburg, Providence, Rhode Island, Raleigh-Durham, North Carolina, and Tampa, Florida. (*See* RJN, Exs. 6-9.) Thus, Aereo—an extremely well-funded operation—certainly is in a position to expand into other geographic markets where it can be expected to steal FilmOn X consumers who are disappointed that they can no longer use FilmOn X's services to record copyrighted programming for their own

private performances. (David Decl. at ¶¶ 7-9.) Even if FilmOn X wins its appeal to the D.C. Circuit and the preliminary injunction is vacated, it is extremely unlikely that FilmOn X will ever be able to recover its market share and customer loyalty in this rapidly evolving industry. (David Decl. at ¶ 8.) A stay of the injunction pending appeal will still provide plaintiffs with a legal win at the preliminary injunction stage, while temporarily preserving the status quo to avoid grave irreparable harm to defendants.

### C. Plaintiffs Will Not Suffer Substantial Harm From A Stay Pending Appeal

In granting the injunction, this Court identified four "categories of irreparable harm" that Plaintiffs will suffer if a preliminary injunction is not issued. (Opinion (Dkt. 33) at 29-30.) Although this Court previously ruled that these harms are not speculative, it did not take into account the fact that plaintiffs will continue to suffer these same alleged harms even with an injunction because defendants' competitors, specifically Aereo, are not bound by the injunction.

For example, plaintiffs will continue to suffer a "loss of control over content and threat of viral infringement" (*Id.* at 30), regardless of whether the preliminary injunction against defendants is allowed to go into effect. After all, defendants are hardly the only third party source of "digital copies of Plaintiffs' programs" on the Internet. (*See id.* at 29.) Nor did Defendants allege or submit any evidence showing that FilmOn X has altered or manipulated copyrighted material. Moreover, Aereo already provides the same services as defendants and is not bound by this Court's preliminary injunction. Thus, regardless of whether FilmOn X is preliminarily enjoined or not, plaintiffs will continue to suffer the alleged harms cited by this Court in its September 5, 2013 Order. (*See id.* at 29-30) (discussing "harm to [the] value in network and local advertising," damage to "Plaintiffs' ability to negotiate retransmission consent agreements," and "interference with lawful internet television distribution.") In short, the hypothetical harm likely to be suffered by plaintiffs from a stay is far less than the irreparable harm that will occur to FilmOn X, which is

9

a fledgling technology company in a competitive environment. Thus, this Court should stay the preliminary injunction to avoid severe and irreparable harm to FilmOn X. *See Random House v. Rosetta Books LLC*, 283 F.3d 490, 491-92 (2d Cir. 2002) (affirming denial of preliminary injunction due to serious concerns that Rosetta would go out of business balanced against Random House's alleged loss of goodwill).

### D. The Public Interest Is Served By A Stay

This Court previously concluded that "the public interest favors an injunction" because the public interest "can only be served by upholding copyright protections . . . ." (Opinion (Dkt. 33) at 32-33) (internal citations omitted.) Ultimately, this Court's analysis of the public interest depends entirely on whether its interpretation of the Transmit Clause is correct or not. (*See id.*)

This case clearly raises substantial and serious legal questions for appellate review. It is certainly reasonable to conclude that the D.C. Circuit will disagree with this Court's legal analysis and join the Second Circuit in holding that the technology at issue is consistent with the public's right of private performance. Indeed, the Copyright Act "has never accorded the copyright owner complete control over all possible uses of his work." *Sony*, 464 U.S. at 432. In the event that the D.C. Circuit finds that FilmOn X's technology merely facilitates the right of public performance, then the public interest indisputably would be served by a stay.

Moreover, there can be no real dispute that there is a strong public demand for the technological services offered by FilmOn X. It is undisputed that FilmOn X has invested over $10 million in its technology, receives revenue from direct customer subscriptions, licensing fees, and advertising. (*See* Declaration of Alkiviades David filed in support of Defendants' Opposition to Motion for Preliminary Injunction ("Decl. of Alkiviades David"), ¶¶ 32-33 (Dkt. No. 31-1).) Further, approximately 50% of FilmOn's United States-based customers have subscriptions for local channels which include network programming and its mobile application has been

10

downloaded about 20,000 to 30,000 time in the United States. (*Id.*, ¶¶ 35-36.) Accordingly, the public clearly has expressed its desire for the technological services provided by FilmOn X. If this Court does not stay the preliminary injunction, the public will lose the benefits of these services from FilmOn X and there will be less competition in the marketplace as Aereo strengthens its monopoly over these services.

When balancing the equities, this Court should stay the preliminary injunction pending appeal to preserve the status quo. While an injunction threatens to permanently cripple FilmOn X's nascent business and strengthen Aereo's position in the marketplace, plaintiffs will suffer essentially the same harms regardless of whether this Court stays the injunction or not. Further, in light of the strong public demand for FilmOn X's services, it would be prudent for this Court to enter a stay of the injunction to allow the appellate court to consider the serious legal questions raised in this case.

## II. At A Minimum, This Court Should Modify The Geographic Scope Of The Injunction To Limit It To the D.C. Circuit

The legal questions on appeal in this action are particularly serious given the broad geographic scope of the injunction. The injunction—which applies nationwide except in the Second Circuit—is extremely broad and threatens irreparable injury to defendants' business in countless U.S. markets across the country. At a minimum, this Court should modify the injunction to limit its geographic scope to the D.C. Circuit.[6]

In *Holland v. National Mining Association*, 309 F.3d 808, 815 (D.C. Cir. 2002)—a case cited by this Court—the Court of Appeal recognized that "[a]llowing one circuit's statutory interpretation to foreclose . . . review of the question in another circuit would squelch the circuit disagreements that can lead to Supreme Court review." That is exactly what Plaintiffs seek to do here. Plaintiffs attempt to use a "win" in this jurisdiction to artificially isolate the Second Circuit

---

[6] Alternatively, this Court could stay the preliminary injunction in every circuit outside the D.C. Circuit, which would have the same practical effect as a modification of the injunction.

11

and obtain a nearly nationwide injunction that would effectively preclude judicial review of Defendants' business model in other circuits. Although this Court recognized that "comity may require courts to limit the scope of injunctions" (Opinion (Dkt. 33) at 34), it failed to appreciate that an injunction beyond the D.C. Circuit in this case can easily "squelch the circuit disagreements that can lead to Supreme Court review." *See Holland*, 309 F.3d at 815.

Importantly, the probability of "circuit disagreements" over the proper interpretation of the Transmit Clause and its application to the technology at issue is hardly hypothetical. To date, plaintiffs have filed four separate actions in four different circuits seeking to enjoin the technology at issue in this case. They lost their first case in the Second Circuit. In the second case, oral argument recently was held before the Ninth Circuit. And after this third lawsuit was filed in the D.C. Circuit, a fourth lawsuit was filed against Aereo in the First Circuit where a motion for a preliminary injunction has been fully briefed and is pending review in the District of Massachusetts. (*See* RJN, Exs. 10-11.) Based on principles of comity, especially in light of the Second Circuit's contrary ruling, this Court should not interfere with the judicial process in these or other circuits where courts may reach different interpretations of the Transmit clause.[7] In light of the fact there are already two divergent opinions on the legality of this technology, the other varying circuits should have the opportunity to decide for themselves whether it is legal or not. *See Virginia Soc'y for Human Life v. Federal Election Comm'n*, 263 F.3d 379, 393 (4th Cir.2001) (A nationwide injunction "has the effect of precluding other circuits from ruling on the constitutionality" of an agency's regulation.); *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) (nationwide injunctions "have a detrimental effect by foreclosing adjudication by a number of different courts and judges."). The district court in the California Case correctly explained that "[i]f other circuits do not have law that conflicts with this decision, they <u>might</u> adopt such law

---

[7] Indeed, this Court's injunction likely would be void in the Ninth Circuit if Defendants prevail on appeal in the *BarryDriller* case.

when presented with the choice." *Fox Television Stations, Inc. v. BarryDriller Content Systems, PLC*, 915 F. Supp. 2d 1138, 1148 (C.D. Cal. 2012).

This Court should take this opportunity to modify the scope of the injunction to limit it to the D.C. Circuit. *See Holland*, 309 F.3d at 815 (recognizing "the authority of the circuits to rule on statutory meaning independently of each other").

## CONCLUSION

Based on the foregoing, defendants respectfully requests that the Court stay the preliminary injunction pending appeal. Alternatively, defendants request that this Court modify the scope of the injunction to limit it to the D.C. Circuit based on principles of comity.

Dated: September 10, 2013

BAKER MARQUART LLP

By: /s/ Ryan G. Baker
Ryan G. Baker
BAKER MARQUART LLP
10990 Wilshire Blvd., Fourth Floor
Los Angeles, California 90024
(424) 652-7811 (telephone)
(424) 652-7850 (facsimile)
Bar No.: 200344

*Attorneys for Defendants and Counterclaim Plaintiffs FilmOn X, LLC, FilmOn.TV, Inc., FilmOn.TV Networks, Inc., and FilmOn.com, Inc.*

/s/ Kerry J. Davidson
LAW OFFICE OF KERRY J. DAVIDSON
1738 Elton Road, Suite 113
Silver Spring, Maryland 20903
(301) 586-9516 (telephone)
(866) 920-1535 (facsimile)
Bar No.: 456431

*Attorneys for Defendants and Counterclaim Plaintiffs FilmOn X, LLC, FilmOn.TV, Inc., FilmOn.TV Networks, Inc., and FilmOn.com, Inc.*