UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| FOX TELEVISION STATIONS, INC., et al.<br><br>*Plaintiffs/Counter-Defendants*,<br><br>v.<br><br>FILMON X LLC, et al.<br><br>*Defendants/Counter-Plaintiffs*. | Civil No. 1:13-cv-00758 (RMC)<br><br>Hon. Rosemary M. Collyer |

**DEFENDANTS' EMERGENCY NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF THE GEOGRAPHIC SCOPE OF THE PRELIMINARY INJUNCTION AND BOND AMOUNT**

Defendants[1] respectfully seek reconsideration of this Court's September 5, 2013 Memorandum Opinion (Dkt. 33) and Order (Dkt. 34) granting Plaintiffs' Motion for Preliminary Injunction (Dkt. 27). Specifically, Defendants request, on reconsideration, that this Court limit the geographic scope of any injunction to the D.C. Circuit. In the alternative, the Court should increase the amount of the bond by $250,000 for each federal circuit covered by the injunction. Additionally, Defendants request that this Court continue their deadline to demonstrate compliance with the preliminary injunction until this Court has ruled on this emergency motion.

The basis for Defendants' motion is set forth in the attached Memorandum, the accompanying Declarations of Mykola Kutovyy, Alkiviades David, Ryan Baker, and the court records filed by the parties in connection with plaintiffs' motion for a preliminary injunction. A proposed order is also included. Because Defendants are required to file a report demonstrating

---

[1] "Defendants" refers collectively to FilmOn X LLC, FilmOn.TV Networks, Inc., FilmOn.TV, Inc. and FilmOn.com, Inc.

1

compliance with the Preliminary Injunction by Thursday, September 12, 2013, Defendants respectfully request expedited consideration of this motion.

Pursuant to Local Rule 7(m), defendants provided notice of their intent to seek the relief requested in this motion to plaintiffs' counsel on September 9, 2013.  (Declaration of Ryan G. Baker ("Baker Decl."), ¶ 3.)  Plaintiffs' counsel indicated that plaintiffs would oppose this motion. (*Id.*, ¶ 4 & Ex. 1.)  Defendants' counsel further proposed an expedited briefing schedule, but the parties were unable to agree on terms.  (*Id.*, ¶ 5.)  This motion has been brought by defendants at the first available opportunity.  (*Id.*, ¶ 6.)

Dated:  September 10, 2013               BAKER MARQUART LLP


                                          By: /s/ _Ryan G. Baker_____
                                          Ryan G. Baker
                                          BAKER MARQUART LLP
                                          10990 Wilshire Blvd., Fourth Floor
                                          Los Angeles, California 90024
                                          (424) 652-7811 (telephone)
                                          (424) 652-7850 (facsimile)
                                          Bar No.: 200344

                                          *Attorneys for Defendants and Counterclaim Plaintiffs FilmOn X, LLC, FilmOn.TV, Inc., FilmOn.TV Networks, Inc., and FilmOn.com, Inc*

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

ARGUMENT ................................................................................................................................... 2

I.     This Court Has Jurisdiction To Reconsider Its September 5, 2013 Memorandum Opinion And Order ............................................................................................................ 2

II.    On Reconsideration, This Court Should Limit The Geographic Scope Of The Preliminary Injunction To The D.C. Circuit ....................................................................... 3

    A.    This Court Did Not Previously Consider That The Injunction Does Not Apply To Aereo ............................................................................................................ 3

    B.    It Is Especially Appropriate For This Court To Limit The Scope Of The Injunction In Light Of Certain Factual Errors Contained In This Court's Opinion ........................................................................................................................ 5

III.   If This Court Leaves The Current Injunction Intact, The Amount Of The Bond Should Be Increased To Take Into Account The Broad Geographic Scope Of The Injunction ............................................................................................................................ 8

CONCLUSION ................................................................................................................................ 9

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Cobell v. Norton,*
　355 F. Supp. 2d 531 (D.D.C. 2005) ........................................................................................2

*Fox Broadcasting Co, Inc., et al. v. Dish Network L.L.C., et al.,*
　2013 WL 3814917 (9th Cir. July 24, 2013), slip op. ..............................................................6

*Isse v. Am. Univ.,*
　544 F. Supp. 2d 25 (D.D.C. 2008) ..........................................................................................3

*Singh v. George Washington University,*
　383 F. Supp. 2d 99 (D.D.C. 2005) ..........................................................................................2

*Sony Corp. of Am. v. Universal City Studios, Inc.,*
　464 U.S. 417 (1984) ................................................................................................................6

*Williams v. Johanns,*
　555 F. Supp. 2d 162 (D.D.C.2008) .........................................................................................5

**RULES**

Rule 54(b) .........................................................................................................................................2

**<u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
EMERGENCY MOTION FOR RECONSIDERATION OF THE GEOGRAPHIC SCOPE
OF THE PRELIMINARY INJUNCTION AND BOND AMOUNT</u>**

**<u>INTRODUCTION</u>**

The preliminary injunction issued by this Court on September 5, 2013 is extremely broad and should be reconsidered. With the exception of the Second Circuit where the technology at issue been found to be legal, the injunction applies "throughout the United States . . . ." (Dkt. No. 34). This nearly nationwide injunction was issued even though there is ongoing litigation in the First and Ninth Circuits concerning the same subject matter as this lawsuit. (Defendants/Counter-Plaintiffs' Request for Judicial Notice ("RJN"), Exs. 10-11.) The Ninth Circuit heard oral argument related to Defendants' technology on August 27, 2013. In the First Circuit, the District Court for Massachusetts will hear a motion for preliminary injunction – similar to the motion brought by plaintiffs in this case – on September 18, 2013. (RJN, Exs. 10-11.)

In light of this ongoing litigation and the disagreement that already exists between the Second Circuit and district courts in the Ninth Circuit and the D.C. Circuit, the Supreme Court ultimately may have to resolve a circuit split over the proper interpretation of the Transmit clause. This Court's injunction is too broad. Based on principles of comity, this Court should limit the injunction to the D.C. Circuit so that the injunction does not interfere with the litigation in the First and Ninth Circuits or otherwise arrest the development of case law in other circuits where similar lawsuits may be filed in the future. (RJN, Exs. 10-11.) Other jurisdictions should have an opportunity to decide for themselves whether the technology at issue in this case violates the Transmit clause or merely facilitates lawful private performances protected by the Copyright Act.

Moreover, it is especially important for this Court to reconsider the geographic scope of the injunction because Aereo is not bound by the injunction. While FilmOn X is prohibited by the injunction from providing certain services to consumers in eleven different judicial circuits,

Aereo may continue to provide or expand those same services to consumers across the country (with the arguable exception of the D.C. Circuit). By limiting the injunction to the D.C. Circuit, this Court would reduce the irreparable harm that FilmOn X would suffer if its nationwide operations were undercut by Aereo.

Alternatively, this Court should increase the amount of the bond to take into account the extremely broad geographic scope of the injunction. When this Court ordered a bond of $250,000, it adopted the bond amount set by the district court judge in the *Barrydriller* case even though the preliminary injunction in that case only applies within the territorial limits of the Ninth Circuit. Because the preliminary injunction in this case applies across eleven judicial circuits, the harm suffered by Defendants from the preliminary injunction in this case is exponentially greater than the harm from the limited injunction in *BarryDriller*. Accordingly, if this Court does not modify the geographic scope of the injunction, this Court should increase the amount of the bond in the interests of justice.

## ARGUMENT

**I.     This Court Has Jurisdiction To Reconsider Its September 5, 2013 Memorandum Opinion And Order**

The Court has broad discretion to hear a motion for reconsideration brought under Rule 54(b). The standard for determining whether or not to grant a motion to reconsider brought under Rule 54(b) is the "as justice requires" standard espoused in *Cobell v. Norton,* 355 F. Supp. 2d 531, 539 (D.D.C. 2005), which requires "determining, within the Court's discretion, whether reconsideration is necessary under the relevant circumstances." *See also Singh v. George Washington University,* 383 F. Supp. 2d 99, 101 (D.D.C. 2005). Considerations a court may take into account under the "as justice requires" standard include whether the court "patently" misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling decisions or data, or whether a controlling or significant

change in the law has occurred. *See Id*. The party seeking reconsideration bears the burden of proving that some harm would accompany a denial of the motion to reconsider; "[i]n order for justice to require reconsideration, logically, it must be the case that, some sort of 'injustice' will result if reconsideration is refused. That is, the movant must demonstrate that some harm, legal or at least tangible, would flow from a denial of reconsideration." *Cobell,* 355 F. Supp. 2d at 540.

*Cobell* also suggests that even if justice does not "require" reconsideration of an interlocutory ruling, a decision to reconsider is nonetheless within the court's discretion, so long as reasonable: "[E]ven if the appropriate legal standard does not indicate that reconsideration is warranted, the Court may nevertheless elect to grant a motion for reconsideration if there are other good reasons for doing so." *Cobell*, 355 F. Supp. 2d at 540.

For the reasons discussed below, reconsideration is appropriate in this case.

## II.     On Reconsideration, This Court Should Limit The Geographic Scope Of The Preliminary Injunction To The D.C. Circuit

### A.     This Court Did Not Previously Consider That The Injunction Does Not Apply To Aereo

It is in the interests of justice for this Court to limit the geographic scope of its injunction. Section 502(a) of the Copyright Act states a court may grant an injunction "on such terms as it may deem reasonable." It is the moving party's burden to show that some harm would accompany the Court's denial of the motion to reconsider. *Isse v. Am. Univ.*, 544 F. Supp. 2d 25 (D.D.C. 2008). That harm can be legal or tangible. *Id.*

Here, it is completely reasonable for the Court to reconsider the scope of its injunction. Defendants will suffer both legal and tangible harm should the Court refuse and thus maintain its virtual nationwide injunction. This harm Defendants will suffer is a manifest injustice. This Court has issued a nationwide injunction preventing Defendants from operating a predominant

portion of their services to customers everywhere, except for within the geographic boundaries of the Second Circuit, where this Court recognized its decision is in direct contravention to the law there. (Memorandum of Opinion (Dkt. 33) ("Opinion") at p. 25 fn 11.)

This Court recognized in its Memorandum of Opinion that "in some cases comity may require courts to limit the scope of injunctions." (*Id.* at 34.) This is such a case. One circuit has already ruled this technology to be legal within the Copyright Act. In addition to that circuit, there are two other cases on this technology pending in two additional circuits, Ninth Circuit and the First Circuit. (RJN, Exs. 10-11.) Defendants, and the other circuits, should not be denied the ability to consider merits and decide themselves which law is more in line with that circuit.

Further, Defendants will suffer real, tangible harm should the Court refuse to reconsider the scope of its injunction. The injunction enjoins Defendants from enabling users to access Plaintiffs' copyright works through Defendants' service anywhere except for the Second Circuit. However, Defendants' direct competitor, Aereo, Inc. ("Aereo"), is not so enjoined. As the concurrently filed Request for Judicial Notice shows, Aereo is already in large markets throughout the United States and has clear plans to expand in many others. (RJN, Exs. 1-9.) In markets outside the Second Circuit, Aereo operates in Atlanta, Boston, Miami and Salt Lake City. (RJN, Exs. 1-5.) Further, Aereo has announced plans to expand to the following markets: Minneapolis, Madison, Chicago, Detroit, Cleveland, Providence, Philadelphia, Pittsburgh, Baltimore, Raleigh-Durham, Kansas City, Birmingham, Houston, Tampa, Dallas-Ft. Worth, Austin, Kansas City and Denver. (RJN, Exs. 6-9.)

Preventing Defendants from competing with Aereo on an equal footing in this competitive, growing market is clearly a manifest injustice to Defendants. Should the virtual nationwide injunction remain, it will cause Defendants extreme revenue losses, market share

losses, loss of brand recognition, loss of customer loyalty, lost opportunities with vendors and sponsors and lost goodwill.  (Declaration of Alkiviades David in support of Defendants/Cross-Plaintiffs' Motion for Reconsideration ("David Decl.") ¶¶ 5-10.)  These harms are in addition to the millions of dollars Defendants have invested into their technology and services and establishing themselves as a market competitor.  (David Decl. at ¶¶ 5.)

Given the legal and tangible harms the Court's broad injunction will cause Defendants, it is proper for the Court to reconsider the geographic scope of its injunction and limit it to the D.C. Circuit.

> **B.     It Is Especially Appropriate For This Court To Limit The Scope Of The Injunction In Light Of Certain Factual Errors Contained In This Court's Opinion**

Reconsideration in the interests of justice is appropriate where the Court "patently misunderstood the parties."  *Williams v. Johanns,* 555 F. Supp. 2d 162, 164 (D.D.C.2008).  In the Court's Memorandum of Opinion there are several material misunderstandings regarding Defendants technology, which greatly impacted the Court's Opinion.

In its September 5, 2013 Order, this Court ruled that "FilmOn X's service violates Plaintiffs' 'exclusive right . . . to perform the copyrighted work publicly'" because it "mak[es] available Plaintiffs' copyrighted performances to any member of the public who accesses the FilmOn X service . . . ."  (Order at 25.)  It reasoned that that "any member of the public who clicks on the link for the video feed" can access broadcasts of a television programs that are "'generated from the same copy'—the original source."  (*Id.* at 27.)

However, this Court's description of the underlying technology is factually inaccurate.  Further, this Court mischaracterizes FilmOn X's legal position when it states that FilmOn X's argument is that "there is no copyright violation" "so long as each FilmOn X user has his or her own assigned antenna."  (Opinion at 2.)  FilmOn X does not—as the Court implies—simply

5

build an antenna farm and then stream content over the internet, using antennas. Rather, consumers use FilmOn X's services to record individual copies of television programs for their own future use and enjoyment. Like the remote storage RS-DVR systems in *Cablevision* and *Aereo*, FilmOn X's system merely enables consumers to personally make and privately view performances from individual copies, at the consumer's convenience. This is no different in kind from consumer use of a traditional home video recorder, which Sony deemed a non-infringing fair use. *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 131-32 (1984) (*Sony*); *see also Fox Broadcasting Co, Inc., et al. v. Dish Network L.L.C., et al.*, 2013 WL 3814917, at *1 (9th Cir. July 24, 2013), slip op. at 12 (based on its conclusion that "[i]nfringement of the reproduction right requires 'copying *by* the defendant,'" as opposed to the end user, the district court properly denied Fox's motion for preliminary injunction.)

    To clarify the Court's understanding, Defendants' service is based entirely on a "one-to-one relationship" between a unique copy of a copyrighted work and an individual FilmOn X user. (Declaration of Mykola Kutovyy filed in support of Defendants' Motion for Reconsideration ("Kutovyy Decl.") at ¶ 3.) While it is true Defendants' technology relies on such devices as servers and encoders to facilitate the process when a user requests an antenna and content, those additional devices do not change the fact that individual copies of content are generated for future viewing by the user and the user alone. (*Id*.) Those devices merely facilitate the user's private transmission. (*Id.*)

    When a user chooses to record a particular program through FilmOn X, the FilmOn X antenna, tuner and other equipment generate a unique copy of that program for the user. (*Id*.) That unique copy is stored in a hard-drive directory unique to the specific user, which cannot be accessed by any other user. (*Id.*) Thus, although FilmOn X uses servers and other equipment,

6

the copies that it generates are not broadcast to the public at large but instead are made available for viewing by a specific individual upon that individual's request. (*Id.*)

While the technology of FilmOn X involves certain steps and processes in order to respond to a user's request for free over-the-air broadcast television, those steps merely facilitate the one-to-one relationship that exists every step of the way between a FilmOn X user and the technological system. Each step in the process is both individualized and something each user has the right to do for themselves. These technological clarifications show that FilmOn X is not an internet streamer of copyrighted works, but a provider of remote equipment enabling users to view free over-the-air broadcast television.

Moreover, as explained in the Declaration of Mykola Kutovyy, the Court misunderstood FilmOn X's technology in other relevant ways. For example, this Court found that "all dynamic antennas are shared" and, in a footnote, that "[a]ccording to *Aereo I*, even static users sometimes share antennas." (Opinion at 5.) However, a FilmOn X user will never simultaneously "share" an antenna with another user. (Kutovyy Decl. at ¶ 4.) A "static" FilmOn X user will never "share" his or her antenna, unless there is a system malfunction. (*Id.*) Each time a "dynamic" FilmOn X user logs onto the FilmOn X system, he or she is assigned an antenna that only he or she may control until that user logs off of the system. (*Id.*)

Also on page five of the Opinion, the Court states, "The video encoder is connected to a 'distribution endpoint,' which is a 'server or group of servers' that delivers the video and audio to FilmOn X users." When a FilmOn X user requests content from the FilmOn X website, the data obtained by a particular antenna while allocated to a particular user is not "shared" with or accessible by any other FilmOn X user. (Kutovyy Decl. at ¶ 5.) That data is completely individualized. (*Id.*) At the time the allocated antenna picks up the individualized data, a unique

7

directory assigned specifically to an individual user is created in order to individually store the data received by the allocated antenna. (*Id.* at ¶ 6.) The data has to be processed by the transcoder so it will be in a format that allows it to be transmitted to the user. (*Id.*) The transcoding process does not alter or affect the individualized nature of the data. (*Id.*)

Finally, to clarify any confusion surrounding the distribution endpoint, it is just simply the point at which the television show is then, still individualized of course, transmitted to the consumer. The distribution endpoint technologically is made up a server or groups of servers and is the distribution point for the data that makes up the television program. (*Id.* at ¶ 8.) At all times the system still maintains the completely individualized nature of the transcoded data. (*Id.*) There are server partitions within the servers, as well as unique codes that isolate and maintain individualized nature of each set of data that is sent in response to a user's request for content through FilmOn X's system. (*Id.*) Indeed, FilmOn X's technological system ensures that there is "one-to-one relationship" between a copy of the copyrighted work and the individual FilmOn X's users at every stage of the technological process.

In light of this "one-to-one relationship," Defendants respectfully request that this Court reconsider its earlier factual findings. Further, in light of these factual errors, justice requires that this Court limit the geographic scope of the injunction so that courts in other circuits may reach their own factual and legal determinations with respect to the technology at issue.

### III. If This Court Leaves The Current Injunction Intact, The Amount Of The Bond Should Be Increased To Take Into Account The Broad Geographic Scope Of The Injunction

The bond should be increased drastically if the Court refuses to stay or amend the injunction. The Court seemingly based the amount of the bond it granted on the Central District of California's determination of the bond amount in the *BarryDriller* case. (Opinion at 35.) The Court stated it "finds no meaningful distinction between this case and *BarryDriller*. It will

8

require Plaintiffs to post $250,000 bond." (*Id.*)  However, there is a very meaningful distinction between the injunction here and the one in *BarryDriller*,

The court in *BarryDriller* only enjoined Defendants from offering their full services in the Ninth Circuit.  Here, the Court is enjoining Defendants from offering their full services in *every* circuit, other than the Second Circuit.  If the court in *BarryDriller* (this Court's apparent guide for determining the bond amount) found $250,000 to be sufficient for an injunction covering one circuit, the proper bond amount based on this Court's Order would be at a minimum, substantially larger, if not eleven times larger, given this injunction covers eleven circuits.

The Court does recognize some of the harm Defendants will suffer as a result of the injunction. (*Id.*)  The Opinion, however, fails to recognize the drastically increased harm to Defendants given the exponentially larger injunction it entered.  Therefore, should the Court not stay the injunction or at least modify it to only cover the D.C. Circuit, Defendants should be granted a substantially larger bond amount.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court reconsider the geographic scope of its preliminary injunction and limit the injunction to the D.C. Circuit.  Alternatively, this Court should substantially increase the amount of the bond so that a bond of $250,000 must be posted for each federal circuit covered by the injunction.

September 10, 2013                               Respectfully submitted,

                                            By: /s/ Ryan G. Baker
Ryan G. Baker
BAKER MARQUART LLP
10990 Wilshire Blvd., Fourth Floor
Los Angeles, California 90024
(424) 652-7811 (telephone)
(424) 652-7850 (facsimile)
Bar No.: 200344

/s/ Kerry J. Davidson
LAW OFFICE OF KERRY J. DAVIDSON
1738 Elton Road, Suite 113
Silver Spring, Maryland 20903
(301) 586-9516 (telephone)
(866) 920-1535(facsimile)
Bar No.: 456431

*Attorneys for Defendants and Counterclaim Plaintiffs FilmOn X, LLC, FilmOn.TV, Inc., FilmOn.TV Networks, Inc., and FilmOn.com, Inc.*