## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————

|  |  |  |
|---|---|---|
| **FOX TELEVISION STATIONS, INC.,** *et al.*, | ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| v. | ) ) | **Civil Action No. 13-758 (RMC)** |
| **FILMON X LLC,** *et al.*, | ) ) | |
| **Defendants.** | ) ) | |

———————————————   )

### MEMORANDUM OPINION

Plaintiffs, a group that includes over-the-air television broadcasters and programmers, sued Defendants, entities that operate an online service called FilmOn X, for violating their public performance rights for copyrighted television programs.  On September 5, 2013, the Court granted Plaintiffs' motion for a preliminary injunction, concluding that Plaintiffs are likely to succeed on their copyright infringement claim and that all the preliminary injunction factors favor Plaintiffs.  *See* Op. [Dkt. 33], Prelim. Inj. [Dkt. 34].  The Preliminary Injunction provided that it would become effective immediately upon the posting of a $250,000 bond, Prelim. Inj. ¶ 5, and that FilmOn X must certify compliance, under oath, "[w]ithin three court days of the effective date of [the] Preliminary Injunction," *id.* ¶ 6.  For the reasons stated in the Opinion, the Court found that 17 U.S.C. § 502(b) required the Preliminary Injunction to have nationwide effect, but the Court omitted the geographic area of the Second Circuit from the coverage of the Injunction to avoid conflict with that court's decision in *WNET, Thirteen v. Aereo, Inc.* (*Aereo II*), 712 F.3d 676 (2d Cir. 2013).  Plaintiffs posted the required bond on September 9, 2013, meaning that FilmOn X must certify compliance with the Preliminary Injunction no later than today, September 12, 2013.

1

On September 11, FilmOn X filed two emergency motions: an Emergency Motion to Stay the Injunction Pending Appeal and/or to Modify the Injunction, Dkt. 36; and an Emergency Motion for Reconsideration of the Geographic Scope of the Preliminary Injunction and Bond Amount, Dkt. 37.  Plaintiffs oppose FilmOn X's motions.  *See* Opp. Mot. Stay [Dkt. 39]; Opp. Mot. Recons. [Dkt. 40].

FilmOn X seeks the following relief:[1]

- A stay of the Preliminary Injunction, in its entirety, pending FilmOn X's appeal to the D.C. Circuit.  Mem. Supp. Mot. Stay at 3–11.

- A stay of the Preliminary Injunction in all circuits except for the D.C. Circuit.  *Id.* at 11 n.6.

- Modification of the Preliminary Injunction so that it covers only the D.C. Circuit.  *Id.* at 11–13; Mem. Supp. Mot. Recons. at 3–8.

- An increase in the bond amount to $250,000 for each circuit in which FilmOn X is enjoined—*i.e.*, $2,750,000 for eleven circuits—or an otherwise substantial increase. Mem. Supp. Mot. Recons. at 8–9.

---

[1] FilmOn X asks the Court to take judicial notice of two categories of evidence: (1) a set of press releases "to show that . . . Aereo, Inc., is currently providing or has plans to provide in the near future[ ] substantially similar services to those this Court as [sic] now enjoined FilmOn X from providing;" (2) the docket of *Hearst Stations, Inc. v. Aereo, Inc.*, Civ. No. 13-cv-11649-NMG (D. Mass. filed July 9, 2013), "to show that there is a substantially similar pending case in the First Circuit and that there is a hearing on the plaintiff's motion for preliminary injunction . . . set for September 18, 2013" and to show that the plaintiffs in *Hearst* have filed a Notice of Supplemental Authorities referencing this Court's Preliminary Injunction.  Req. Judicial Notice [Dkt. 38] at 1–3.  Plaintiffs oppose the motion.  *See* Pls. Objs. Req. Judicial Notice [Dkt. 39-3] at 1–5.  As the Court stated in its Opinion, FilmOn X's request is proper only to the extent that the Court takes judicial notice of the fact that documents have been filed and a hearing scheduled in *Hearst*; the request is denied in all other respects.  *See* Fed. R. Evid. 201; *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388–89 (2d Cir. 1992).

The Court addresses FilmOn X's arguments in two groups: (1) its request for a stay and (2) its request for reconsideration.  As discussed below, the Court concludes that the public benefit is not harmed by issuance of the Preliminary Injunction.  While the Injunction remains in place, FilmOn X's innovative technology can be used by the public, via computer or mobile device, to access material that is properly licensed from copyright holders.  The conduct prohibited by the Preliminary Injunction is uncompensated infringement of those holders' exclusive right to public performance of their works, and the public interest is not harmed by requiring FilmOn X to cease infringement.  FilmOn X's emergency motions will be denied in all respects.

## I. STAY

### A.  Legal Standard

Federal Rule of Civil Procedure 62(c) authorizes courts to stay an injunction pending appeal.  To determine whether to grant the stay, the Court must weigh the same four factors it considers when determining whether to grant an injunction: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay."  *Cuomo v. NRC*, 772 F.2d 972, 974 (D.C. Cir. 1985) (citing *WMATA v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977)).

### B.  Analysis

Because the factors bearing on a stay pending appeal are the same factors the Court evaluated in granting Plaintiffs' motion for a preliminary injunction, the parties' arguments are mostly the same as those set forth in the Court's Opinion.  FilmOn X's argument that the injunction should be stayed pending appeal derives from its basic legal position in this

case: that "FilmOn X's system merely enables consumers to personally make and privately view performances from individual copies, at the consumer's convenience," and thus FilmOn X does not infringe Plaintiffs' public performance rights in their copyrighted material.  Mem. Supp. Mot. Stay at 5.  Because the conflict between (1) the Second Circuit's *Aereo II* decision and (2) *BarryDriller*[2] and this Court's ruling presents important legal questions that need resolution, FilmOn X asserts that this Court should stay the Preliminary Injunction pending appellate review.  Moreover, FilmOn X asserts that it will suffer "grave irreparable harm" if the Injunction is not stayed because "[t]he preliminary injunction does not apply to Aereo or other companies who provide similar remote DVR-like capabilities to consumers," allowing those companies to seize market share at FilmOn X's expense.  *Id.* at 7–8.  Finally, according to FilmOn X, "there is a strong public demand for the technological services offered by FilmOn X," so the public interest will be served by a stay.  *Id.* at 10–11.

Plaintiffs respond that "[t]he mere existence of two non-controlling, widely-criticized cases supporting FilmOnX [*Cablevision* and *Aereo II*] does not create a strong likelihood that the D.C. Circuit will reverse the injunction."  Opp. Mot. Stay at 4.  Plaintiffs also assert that the Court should reject FilmOn X's claim that it will suffer harm based on Aereo not being enjoined, emphasizing that "FilmOnX's argument boils down to the plea that it should be allowed to continue to infringe because there is another infringing service in operation (Aereo) with which FilmOnX competes."  *Id.* at 5.

FilmOn X's arguments are not persuasive.  The Court weighed the relevant factors—likelihood of success on the merits, possibility of irreparable harm, balance of the harm, and the public interest—in its Opinion and concluded that all four considerations favor Plaintiffs.

---

[2] *Fox Television Systems, Inc. v. BarryDriller Content Systems, PLC*, 915 F. Supp. 2d 1138 (C.D. Cal. 2012).

*See* Op. at 21–33.  That conclusion remains in equal force now.  Most importantly, Plaintiffs are likely to succeed on the merits of their claim because the Copyright Act and, in particular, the Transmit Clause are clear: "FilmOn X transmits (i.e., communicates from mini-antenna through servers over the Internet to a user) the performance (i.e., an original over-the-air broadcast of a work copyrighted by one of the Plaintiffs) to members of the public (i.e., any person who accesses the FilmOn X service through its website or application) who receive the performance in separate places and at different times (i.e., at home at their computers or on their mobile devices)."  Op. at 25.  In reaching its conclusion, this Court joined *BarryDriller* in respectfully disagreeing with the *Aereo II* court's reading of the Transmit Clause as myopically focused on the nature of the transmission, not whether the work was publicly performed.  The only change FilmOn X has identified is that Aereo, its competitor, is not enjoined.  But this argument is backwards: FilmOn X claims that the Preliminary Injunction has created irreparable harm because FilmOn X will not be able to keep pace with a similar service that also appears to infringe Plaintiffs' copyrights.  FilmOn X, not Aereo, is the defendant in this case; the Court has already concluded that, at least at the preliminary injunction stage, the balance of irreparable harms and the public interest favor an injunction.

FilmOn X has not shown "either a high probability of success and some injury, or vice versa," as would support a stay of the Preliminary Injunction—in its entirety or even with respect to areas outside the D.C. Circuit—pending appeal.  *Cuomo*, 772 F.2d at 974. FilmOn X's motion to stay will be denied.

## II.   RECONSIDERATION

### A.  Legal Standard

Viewing the preliminary injunction as an interlocutory ruling, FilmOn X argues that the Rule 54(b) "as justice requires" standard applies to its motion for reconsideration.  Mem.

Supp. Mot. Recons. at 2–3 (citing, *inter alia*, *Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005)).  Rule 54(b) applies to "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties."  Plaintiffs respond that the heightened standard of Rule 59(e) for reconsideration of final judgments—not the "as justice requires" standard of Rule 54(b)—applies to preliminary injunctive orders that can be appealed under 28 U.S.C. § 1292(a)(1).  *See* Opp. Mot. Recons. at 2–3.

The question is slightly more complex than either party recognizes.  In determining whether to treat a motion for reconsideration of a preliminary injunction as a motion to modify the injunction pursuant to Rule 62(c) or as a motion for reconsideration pursuant to Rule 59(e), courts "look beyond the motion's caption to its substance" and "compare the circumstances existing on . . . the date of entry of the order granting the preliminary injunction, with the circumstances existing when the motion to modify was made."  *Favia v. Ind. Univ. of Pa.*, 7 F.3d 332, 337 (3d Cir. 1993).[3]  "Modification of an injunction [and treatment under Rule 62(c)] is proper only when there has been a change of circumstances between entry of the injunction and the filing of the motion that would render the continuance of the injunction in its original form inequitable."  *Id.*; *see also Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1124 (9th Cir. 2005) ("[O]ur task is to determine whether the substance of [the] motion

---

[3] The D.C. Circuit does not appear to have adopted this test, but other circuits have done so in resolving whether a motion to reconsider a preliminary injunction is timely.  Even assuming *arguendo* that the Rule 54(b) standard applies, the Court finds that justice does not require reconsideration of the Preliminary Injunction because the Court has not "patently misunderstood a party,[ ] made a decision outside the adversarial issues presented to the Court by the parties, [or] made an error not of reasoning, but of apprehension," and there has been no "controlling or significant change in the law or facts . . . since the submission of the issue to the Court."  *Ficken v. Golden*, 696 F. Supp. 2d 21, 35 (D.D.C. 2010) (quoting *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004)).

was based on changed circumstances."). When there are no such changed circumstances, the Rule 59(e) reconsideration standard applies.

The Court finds that FilmOn X has not identified any change in circumstances from the entry of the Preliminary Injunction just seven days ago. Accordingly, the Court applies the Rule 59(e) reconsideration standard. *See GSS Group Ltd. v. Nat'l Port Auth.*, 680 F.3d 805, 812 (D.C. Cir. 2012) (quoting *District of Columbia v. Doe*, 611 F.3d 888, 896 (D.C. Cir. 2010)). "A Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Fox v. Am. Airlines Inc.*, 389 F.3d 1291, 1296 (D.C. Cir. 2004) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)). A Rule 59(e) motion is not "simply an opportunity to reargue facts and theories upon which a court has already ruled." *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995). Nor is it an avenue for a "losing party . . . to raise new issues that could have been raised previously." *Kattan v. District of Columbia*, 995 F.2d 274, 276 (D.C. Cir. 1993); *see also Oceana, Inc. v. Evans*, 389 F. Supp. 2d 4, 8 (D.D.C. 2005) ("Rule 59 was not intended to allow a second bite at the apple.").

**B.  FilmOn X's Contention of "Factual Errors"**

The Court first addresses FilmOn X's assertion that the Court has "several material misunderstandings regarding Defendants [sic] technology, which greatly impacted the Court's Opinion." Mem. Supp. Mot. Recons. at 5. In seeking reconsideration, FilmOn X explains its technological process anew, arguing that "[w]hile it is true Defendants' technology relies on such devices as servers and encoders to facilitate the process when a user requests an antenna and content," there is no copyright violation because "Defendants' service is based

entirely on a 'one-to-one relationship' between a unique copy of a copyrighted work and an individual FilmOn X user." *Id.* at 6–7 (citation omitted).

   This argument misses the mark.  The technological explanation set forth in the Motion for Reconsideration is completely consistent with the Court's understanding of how FilmOn X operates as set forth in its Opinion.  *See* Op. at 5–8.  FilmOn X's claims of "confusion" and "factual errors," Mem. Supp. Mot. Recons. at 8, are nothing more than transparent collateral assaults on the Court's legal conclusion that "the artifice of one-to-one is baldly wrong."  Op. at 28 n.12.  The Opinion addressed and rejected all such legal arguments.  Accordingly, there is no clear error or new evidence to justify reconsideration.

### C.  Scope of Injunction

   As to the scope of the injunction, FilmOn X argues that "Defendants, and the other circuits, should not be denied the ability to consider [the] merits and decide themselves which law is more in line with that circuit."  Mem. Supp. Mot. Recons. at 4; Mem. Supp. Mot. Stay at 11–12 ("[T]he other varying circuits should have the opportunity to decide for themselves whether [FilmOn X's service] is legal or not.").  Moreover, FilmOn X complains that its competitor Aereo "is already in large markets throughout the United States and has clear plans to expand in many others" but is not enjoined, allowing Aereo to capture market share and profits while FilmOn X is enjoined.  Mem. Supp. Mot. Recons. at 4–5.

   The arguments advanced by FilmOn X fail in two respects: they neither undo the clarity of the Copyright Act, as explained in the Court's Opinion at pages 21 through 29, nor do they confront the lucidity of 17 U.S.C. § 502, which requires any injunction that "prevent[s] or restrain[s] infringement of a copyright" to "be operative throughout the United States."  More fundamentally, at this stage, FilmOn X has offered no "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest

injustice," and thus there is no reason for the Court to reconsider its Preliminary Injunction.  *See Fox*, 389 F.3d at 1296.  If other courts issue contrary rulings, FilmOn X may file a motion to modify this Court's injunction.

### D.  Bond Amount

FilmOn X's argument as to the bond amount is that the *BarryDriller* court found $250,000 appropriate for an injunction covering the Ninth Circuit, so this Court should require that amount for *each* judicial circuit covered by this Court's Order or otherwise impose a "substantially larger bond amount."  Mem. Supp. Mot. Recons. at 8–9.

"The language [in Rule 65(c)] 'in such sum as the court deems proper' has been read to vest broad discretion in the district court to determine the appropriate amount of an injunction bond."  *DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999) (citation omitted).  For the reasons stated in the Opinion, *see* Op. at 34–35, $250,000 is "sufficient to protect [FilmOn X] from loss in the event that future proceedings prove that the injunction issued wrongfully."  *Monzillo v. Biller*, 735 F.2d 1456, 1461 (D.C. Cir. 1984) (quoting *Edgar v. Mite Corp.*, 457 U.S. 624, 649 (1982) (Stevens, J., concurring)).  FilmOn X has offered nothing beyond the mere say-so of counsel that $250,000 would not be sufficient to cover its potential losses, and Plaintiffs have more than sufficient resources in the unlikely event that the injunction was erroneously issued *and* FilmOn X incurs more than $250,000 in losses.

### III.  CONCLUSION

For the reasons stated above, FilmOn X's Emergency Motion to Stay the Injunction Pending Appeal and/or to Modify the Injunction, Dkt. 36 and Emergency Motion for Reconsideration of the Geographic Scope of the Preliminary Injunction and Bond Amount, Dkt. 37, will be denied.

A memorializing Order accompanies this Memorandum Opinion.

Date: September 12, 2013

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge
