UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

_____

FOX TELEVISION STATIONS, INC., et al.

        *Plaintiffs/Counter-Defendants*,

v.

FILMON X LLC, et al.

        *Defendants/Counter-Plaintiffs*.
_____

Civil No. 1:13-cv-00758 (RMC)

Hon. Rosemary M. Collyer

**DEFENDANTS' EMERGENCY NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF THE MOTION TO MODIFY THE PRELIMINARY INJUNCTION IN LIGHT OF THE *HEARST* DECISION**

    FilmOn X LLC, FilmOn.TV Networks, Inc., FilmOn.TV, Inc. and FilmOn.com, Inc. (collectively, "defendants" or "FilmOn X") respectfully seek reconsideration of this Court's October 15, 2013 Order (Dkt. 54) denying their motion to modify the Preliminary Injunction issued on September 5, 2013. Specifically, defendants request, on reconsideration, that this Court modify the scope of the Preliminary Injunction to exclude the geographic boundaries of the United States Court of Appeals for the First Circuit.

    The basis for defendants' motion is set forth in the attached Memorandum, the accompanying declarations of Alkiviades David and Ryan Baker, and the court records filed by the parties in connection with plaintiffs' motion for a preliminary injunction. A proposed order is also included.

    Pursuant to Local Rule 7(m), defendants provided notice of their intent to seek the relief requested in this motion to plaintiffs' counsel on October 16, 2013. (Declaration of Ryan Baker ("Baker Decl."), ¶ 4.) Plaintiffs' counsel indicated that plaintiffs would oppose this motion. (*Id.*,

¶ 5 & Ex. 2.)  This motion has been brought by defendants at the first available opportunity. (*Id.*,

¶ 6.)

Dated:  October 17, 2013        BAKER MARQUART LLP

By:_____
Ryan G. Baker
BAKER MARQUART LLP
10990 Wilshire Blvd., Fourth Floor
Los Angeles, California 90024
(424) 652-7811 (telephone)
(424) 652-7850 (facsimile)
Bar No.: 200344

*Attorneys for Defendants and Counterclaim Plaintiffs FilmOn X, LLC, FilmOn.TV, Inc., FilmOn.TV Networks, Inc., and FilmOn.com, Inc.*

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................ 1

ARGUMENT .................................................................................................................................. 3

A.  Hearst Does Not Require That The Court Reverse Its Ruling, But The Court Should Permit A Sister Court To Apply The Law Of The Circuit In Which It Resides ................. 4

    1.  *Hearst* Is Factually Indistinguishable from this Case ................................................. 4

    2.  *Hearst* Is the only Court to Consider and Apply the Law of the First Circuit ............. 5

    3.  This Court Should Permit the *Hearst* Court to Interpret the law of the First Circuit and Defer to Its Interpretation within the First Circuit ............................................... 5

B.  FilmOn X Has Acted In Good Faith And This Court Did Not Have All The Facts When It Denied The Motion To Modify ......................................................................................... 7

C.  This Court's Denial Of The Motion To Modify Is Clearly Erroneous And Would Result In A Manifest Injustice ........................................................................................................ 9

    1.  The Massachusetts District Court's Decision in *Hearst*, at a Minimum, Constitutes a Significant Change in the Law of the First Circuit ..................................................... 10

    2.  This Court Should Modify the Injunction to Allow FilmOn X to Compete with Aereo in the First Circuit in Compliance with *Hearst* ........................................................... 12

CONCLUSION .............................................................................................................................. 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Bates v. Donley*,
    CIV. 11-1589 RCL, 2013 WL 1224482 (D.D.C. Mar. 27, 2013)........................................6, 10

*Bryant v. Smith*,
    165 B.R. 176 (W.D. Va. 1994) ........................................................................................6, 10

*Campbell v. U.S. Dep't of Justice*,
    231 F. Supp. 2d 1 (D.D.C. 2002) ..............................................................................................3

*Cartoon Network LP v. CSC Holdings, Inc. ("Cablevision")*,
    536 F.3d 121 (2nd Cir. 2008)..................................................................................................10

*Christianson v. Colt Indus. Operating Corp.,*,
    486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988)............................................................3

*Fair Assessment in Real Estate Ass'n, Inc. v. McNary*,
    454 U.S. 100 (1981)...................................................................................................................6

*Fox Television Stations, Inc. v. BarryDriller Content Sys., Plc*
    ("*BarryDriller*"), 915 F. Supp. 2d 1138 (C.D. Cal. 2012).................................................4, 5, 6

*Holland v. National Mining Association*,
    309 F.3d 808 (D.C. Cir. 2002) ...................................................................................................7

*Lederman v. United States,*
    539 F. Supp. 2d 1 (D.D.C.2008) ...........................................................................................3, 4

*Los Angeles Haven Hospice, Inc. v. Sebelius*,
    638 F.3d 644 (9th Cir. 2011) .....................................................................................................9

*N.L.R.B. v. P\*I\*E Nationwide, Inc.*,
    894 F.2d 887 (7th Cir. 1990) .....................................................................................................6

*NAACP, Jefferson Cnty. Branch v. Brock*,
    619 F. Supp. 846 (D.D.C. 1985)................................................................................................6

*Newell v. Harold Shaffer Leasing Co.*,
    489 F.2d 103 (5th Cir.1974) ....................................................................................................10

*R.C. by Alabama Disabilities Advocacy Program v. Nachman*,
    969 F. Supp. 682 (M.D. Ala. 1997) ..........................................................................................8

*Schauss v. Metals Depository Corp.*,
   757 F.2d 649 (5th Cir.1985) ..................................................................................................6

*Securities and Exchange Commission v. Lauer*,
   445 F. Supp. 2d 1363 (S.D. Fla. 2006) ..................................................................................8

*Singh v. George Wash. Univ.*,
   383 F. Supp. 2d 99 (D.D.C. 2005) ................................................................................. passim

*Virginia Soc. for Human Life, Inc. v. Federal Election Comm'n*,
   263 F.3d 379 (4th Cir. 2001) ......................................................................................9, 11, 13

*WCVB-TV v. Aereo, Inc.*,
   Civ. No. 13-11659-NMG (D. Mass.) ("*Hearst*") ............................................................ passim

*Weinberger v. Romero-Barcelo*,
   456 U.S. 305 (1982) ................................................................................................................5

**FEDERAL STATUTES**

17 U.S.C. § 502 ..................................................................................................................................6

17 U.S.C. § 502(b) .............................................................................................................................5

**RULES**

Federal Rule 54(b) .............................................................................................................................3

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' EMERGENCY MOTION FOR RECONSIDERATION OF THE MOTION TO MODIFY THE PRELIMINARY INJUNCTION IN LIGHT OF THE *HEARST* DECISION**

**INTRODUCTION**

This Court should reconsider its October 15, 2013 denial of FilmOn X's motion to modify the September 5, 2013 injunction. Reconsideration is permissible if a court has, *inter alia*, misunderstood a party, or where a significant change in law or facts have occurred since the submission of the issue. *Singh v. George Wash. Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005). Here, those factors, as well as manifest justice, require reconsideration of the October 15 order (and modification of the underlying September 5, 2013 preliminary injunction).

First, FilmOn X did not request that the Court reverse its injunction order based on *Hearst Stations, Inc., d/b/a/ WCVB-TV v. Aereo, Inc.*, Civ. No. 13-11659-NMG (D. Mass.) ("*Hearst*"). Rather, FilmOn X requested only that the Court clarify that FilmOn X users may access plaintiffs' programming in the First Circuit based on the *Hearst* court's conclusion that any such access within the First Circuit would constitute a private performance according to First Circuit law. In its October 15 order, the Court states that "a contrary decision by a co-equal court in another district involving different parties does not represent a change in controlling law." But FilmOn X did not argue that *Hearst* was "controlling law;" rather, *Hearst* reflects the law of the First Circuit, as it is the decision of the only court within the First Circuit to specifically consider and apply First Circuit law to facts that are indisputably similar in all relevant ways to the facts before this Court.[1] While FilmOn X contends that *Hearst*'s reading of the Transmit Clause is correct, this Court has reached the opposite conclusion. *Hearst* does not

---

[1] This Court previously ruled that the technological systems used by FilmOn X and Aereo "are essentially the same, and the parties agree that there are no legally meaningful differences." [Dkt. 33 at 4.]

1

invalidate the conclusion of this Court, but *Hearst* is the only court to specifically analyze and apply First Circuit law to facts similar to the facts before this Court.  Accordingly, FilmOn X requests that this Court, in light of comity concerns, modify the injunction so that FilmOn X may operate its service in the First Circuit, just as Aereo currently does.

Pursuant to *Hearst*, the services of FilmOn X and Aereo do not enable public performance under First Circuit law.  The authority offered to this Court by plaintiffs on this point (*e.g.*, *Singh*,[2] 383 F. Supp. 2d 99) is inapposite, as that authority contemplates the reversal of a court order, not a modification based on comity.  FilmOn X respectfully requests that this Court reconsider its decision to prevent FilmOn X from operating in a circuit where the only court to specifically consider and apply the law of that circuit concluded the service offered by FilmOn X does not warrant injunctive relief.

Further, additional facts, not before the Court prior to its October 15 decision, warrant reconsideration.  The Court's October 5 order states that "FilmOn X may be acting in defiance of this Court's Preliminary Injunction."  But plaintiffs' scandalous accusations that FilmOn X has "unclean hands" and has "deliberate[ly] defi[ed]" this Court's orders are completely unfounded. [*See* Dkt. 53 at 1.]  Following the ruling of the First Circuit, FilmOn tested its service in the First Circuit.  That service was temporarily active.  It was deactivated well before this Court's October 15 ruling.  FilmOn X has consistently acted in good faith and has taken prompt steps to ensure ongoing compliance with this Court's preliminary injunction.

Manifest justice also requires reconsideration of the Court's October 15 order.  The practical effect of this Court's nationwide injunction is to prohibit FilmOn X from operating in the First Circuit where a sister court has issued a ruling that allows FilmOn X's competitor,

---

[2] Aside from *Hearst* and a case on judicial notice, *Singh* is the only decision that this Court cited in its October 15, 2013 order. [Dkt. 54 at 2.]

Aereo, to engage in the exact same conduct based on the conclusion that under First Circuit law, the users of services such as those offered by FilmOn X and Aereo privately perform plaintiffs' works. The Court should respect the *Hearst* ruling and permit FilmOn X to offer a service the *Hearst* court has determined is permissible under First Circuit law.

This Court erred in refusing to modify the scope of the injunction to exclude the First Circuit in light of *Hearst*. Furthermore, additional facts and manifest justice require that the Court reconsider its refusal to modify the injunction. The Court should reconsider its October 15 ruling and modify the injunction in this case to permit FilmOn X to operate in the First Circuit.

## ARGUMENT

Under Federal Rule 54(b), a trial court may grant reconsideration "as justice requires." *Campbell v. U.S. Dep't of Justice,* 231 F. Supp. 2d 1, 7 (D.D.C. 2002). Reconsideration may be warranted where there was a patent misunderstanding of the parties, where a decision was made that exceeded the issues presented, where a court failed to consider controlling law, or where a significant change in the law occurred after the decision was rendered. *Singh,* 383 F. Supp. 2d at 101. Additionally, a prior decision should be reconsidered where it was "clearly erroneous and would work a manifest injustice." *Lederman v. United States,* 539 F. Supp. 2d 1, 2 (D.D.C.2008) (quoting *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 817, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988)).

This Court's ruling that "FilmOn X has provided no basis for the Court to modify the Preliminary Injunction" is clearly erroneous. [Dkt. 54 at 2.] FilmOn X has shown that the District Court of Massachusetts found that a substantially identical service operated by FilmOn X's competitor, Aereo, does not violate the Transmit Clause under the law of the First Circuit. Specifically, *Hearst* found that any performance of plaintiffs' copyrighted programming enabled

by technology such as that of FilmOn X or Aereo is a private, not public, performance. Plaintiffs do not dispute that. This Court acknowledged that "[t]he district court in *Hearst* dealt with copyright infringement issues similar to those already addressed here and came to the opposite conclusion." [Dkt. 54 at 2.] Under settled principles of comity, this Court should modify its injunction to prevent manifest injustice arising from this admitted conflict between two district court decisions. This Court also should reconsider its denial of the motion to modify in light of new facts showing FilmOn X's good faith compliance with this Court's injunction.

**A.**   ***Hearst* Does Not Require That The Court Reverse Its Ruling, But The Court Should Permit A Sister Court To Apply The Law Of The Circuit In Which It Resides**

In *Hearst*, the court considered facts analogous to the facts before this Court in every relevant way. As this Court has recognized, *Hearst* reached the opposite conclusion. That conclusion does not control in this case, but as the ruling of the only court to consider and apply the law of the First Circuit, FilmOn X urges this Court to recognize that ruling and permit the courts of another circuit to analyze and apply the law of the circuit within which they reside.

**1.**   ***Hearst* Is Factually Indistinguishable from this Case**

In all relevant respects, the facts and law at issue in this case and *Hearst* are identical. This Court previously ruled that the technological systems used by FilmOn X and Aereo "are essentially the same, and the parties agree that there are no legally meaningful differences." [Dkt. 33 at 4.] It also previously found that the parties in this case between FilmOn X and plaintiffs[3] "agree that the *Aereo* courts and *BarryDriller* court described the technology and services accurately." [Dkt. 33 at 4.] Likewise, it has found that "[t]he district court in *Hearst*

---

[3] As they must, plaintiffs consistently admit that the material facts in the *Aereo*, *BarryDriller* and *Hearst* line of cases (like this lawsuit) are the same. [*See, e.g.,* Dkt. 39 at 8 (accepting that "FilmOn X's technology is identical to Aereo's"); *Id.* at 10 (referring to Aereo's technology as "identical to FilmOn X"); Dkt. 27-1 at 30-31 (discussing Aereo's technology and stating that "[t]he same is true for FilmOnX (*sic*)); Dkt. 5 at 7 (stating that Aereo's "Internet-based television retransmission service [is] allegedly similar to Defendants' service.").]

dealt with copyright infringement issues similar to those already addressed here and came to the opposite conclusion." [Dkt. 54 at 2.]  Accordingly, the mere fact that this case involves "different parties" is not a sufficient basis to distinguish *Hearst*.

> 2. ***Hearst* Is the only Court to Consider and Apply the Law of the First Circuit**

At least four district courts have considered facts such as those before this court and have ruled on motions similar to plaintiffs' motion for a preliminary injunction in this case.  Two of those courts (this Court and the Central District of California) have found in favor of plaintiffs' position and two (the District of Massachusetts and the Southern District of New York) have found in favor of the arguments advanced by defendants.  All of those rulings were appealed and the only appellate court to rule on these issues has found that Aereo and FilmOn X do not enable any public performance.  In the first court to find in plaintiffs' favor, *Fox Television Stations, Inc. v. BarryDriller Content Sys., Plc* ("*BarryDriller*"), 915 F. Supp. 2d 1138 (C.D. Cal. 2012), plaintiffs sought a nationwide injunction, except for the Second Circuit.  At that time, the Second Circuit had not yet affirmed the ruling of the Southern District of New York, yet not only did the court in *BarryDriller* refuse to apply the injunction in the Second Circuit, that injunction was limited to the Ninth Circuit based on comity concerns.  *BarryDriller*, 915 F. Supp. 2d at 1148.

*Hearst* is the latest district court to rule on issues similar to those before this Court.  And *Hearst* is the only Court to consider and apply the law of the First Circuit.  Unlike the district court in *Hearst*, this Court did not purport to determine or apply the law of the First Circuit.

> 3. **This Court Should Permit the *Hearst* Court to Interpret the law of the First Circuit and Defer to Its Interpretation within the First Circuit**

This Court committed legal error when it assumed that 17 U.S.C. section 502(b) "requires" the Court to issue an injunction that covers every jurisdiction where a circuit court has not yet ruled. [See Dkt. 41 at 8.]  "An injunction is an equitable remedy," *Weinberger v.*

5

*Romero-Barcelo*, 456 U.S. 305, 311 (1982), and "is subject to the equitable constraints that have evolved over centuries." *N.L.R.B. v. P\*I\*E Nationwide, Inc.*, 894 F.2d 887, 893 (7th Cir. 1990).

Under principles of comity, this Court must exercise restraint when issuing nationwide injunctions to avoid undue interference with the authority of courts in other jurisdictions to determine and apply their own law within their territory. "Comity interests are advanced when 'courts of coordinate ranks are respectful of each other's orders,[4] as well as careful to avoid hindering each other's proceedings.'" *NAACP, Jefferson Cnty. Branch v. Brock*, 619 F. Supp. 846, 853 (D.D.C. 1985) (quoting *Schauss v. Metals Depository Corp.,* 757 F.2d 649, 654 (5th Cir.1985).) Indeed, "[c]omity has an established and substantial role in informing the exercise of the court's discretion" when a "federal court is asked to employ its historic powers as a court of equity, and is called upon to decide whether to exercise the broadest and potentially most intrusive form of judicial authority." *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 119-20 (1981).

As *BarryDriller* recognized, principles of comity impose important equitable limits on a court's power to issue a nationwide injunction under 17 U.S.C. section 502. Especially when confronted with conflicting decisions on a legal issue from another jurisdiction, a district court should be cautious in "assum[ing]" that other circuits that have not yet ruled would adopt its interpretation of the law. *BarryDriller*, 915 F. Supp. 2d at 1148. *See id.* (reasoning that "[i]f other circuits do not have law that conflicts with this decision, they might adopt such law when presented with the choice. The Court would therefore issue an injunction covering only the Ninth Circuit."). The D.C. Circuit has similarly cautioned against "[a]llowing one circuit's statutory interpretation to foreclose . . . review of the question in another circuit," which would "squelch

---

[4] The mere fact that the Massachusetts District Court is not an appellate court does not mean that this Court may simply ignore its decision. "The opinions of district court judges have persuasive authority" and are "entitled to substantial deference." *Bryant v. Smith*, 165 B.R. 176, 180-81 (W.D. Va. 1994) (internal quotations omitted); *see also Bates v. Donley*, CIV. 11-1589 RCL, 2013 WL 1224482 (D.D.C. Mar. 27, 2013) ("[Plaintiff] is right to suggest that the well-reasoned holdings of a colleague have a strong persuasive effect.").

the circuit disagreements that can lead to Supreme Court review." *Holland v. National Mining Association*, 309 F.3d 808, 815 (D.C. Cir. 2002). That is exactly what plaintiffs seek to do here. By obtaining a nationwide injunction from this Court, plaintiffs seek to convert a "win" before this Court into an order that effectively prevents district courts in other jurisdictions from considering and applying their own law within their territory.

**B.     FilmOn X Has Acted In Good Faith And This Court Did Not Have All The Facts When It Denied The Motion To Modify**

This Court should reconsider its denial of the motion to modify on the ground that it did not consider new facts relating to FilmOn X's good faith compliance with this Court's orders. Relying entirely on the first argument presented in plaintiffs' opposition papers, this Court expressed concern that "FilmOn X may be acting in defiance of this Court's Preliminary Injunction, possibly by retransmitting Plaintiffs' copyrighted broadcast programming in the Boston area." [Dkt. 54 at 2.] Unfortunately, because this Court ruled only a couple of hours after plaintiffs' filed their opposition brief, the Court was not presented with and did not have an opportunity to consider the actual facts showing FilmOn X's good faith.[5] Indeed, on October 15, 2013 – before plaintiffs' filing of their opposition brief (at approximately 10:03 a.m. eastern daylight time) – FilmOn X's counsel expressly advised plaintiffs' counsel that he had "confirmed that no FilmOn X user in the First Circuit may view [plaintiffs'] programming using FilmOn X at this time." (Baker Decl., ¶ 3 & Ex. 1.)

Accordingly, FilmOn X's alleged "unclean hands" is not a proper basis for this Court's denial of the motion to modify. As one of plaintiffs' cases explains, a party who comes to a court of equity seeking relief "must have acted in good faith" and the doors to equity will not

---

[5] Counsel for defendants attempted to contact the court after receiving plaintiffs' opposition to the motion to modify the scope of the injunction to request leave to submit evidence of defendants' compliance in response to the opposition, but the Court was closed at that time.

open "if defendant's wrongdoing has helped create the situation from which defendant seeks relief . . . ."  *R.C. by Alabama Disabilities Advocacy Program v. Nachman*, 969 F. Supp. 682, 688 (M.D. Ala. 1997).  In each of the cases cited by plaintiffs, courts refused to modify consent decrees or denied other equitable relief because the defendants had engaged in bad faith conduct that contributed to the situation from which they sought relief.[6]  That is not the case here.

FilmOn X is acting and always has acted in good faith.  Shortly after this Court originally issued the preliminary injunction on September 5, 2013, FilmOn X timely complied with the injunction by shutting down FilmOn X users' access to plaintiffs' programming in all the jurisdictions covered by the injunction (including the First Circuit).  [*See* Dkt. 43 at p. 2 (explaining that defendants "removed all access to the unlicensed Copyrighted Programming to users logging on to any of the websites or mobile applications operated by defendants from within any designated market areas outside the Second Circuit.").]  Subsequently, for a very brief period of time after the Massachusetts District Court issued its ruling in *Hearst*, FilmOn X tested its "technology in anticipation of the possibility that the [Preliminary Injunction] Order would be lifted as applied to the First Circuit."  (Declaration of Alkiviades David ("David Decl."), ¶¶ 6-7.) "The testing was only done within the geographic limits of the First Circuit periodically over a span of 2 to 3 days, and only so that Defendants could begin offering their services immediately

---

[6] None of the "unclean hands" cases cited by Plaintiffs are remotely analogous to the facts at issue in this case.  For example, in *Securities and Exchange Commission v. Lauer*, 445 F. Supp. 2d 1363, 1366 (S.D. Fla. 2006), the District Court of Florida denied a request to modify a preliminary injunction to permit a criminal defendant to access frozen assets to fund his legal defense.  The court reasoned that the criminal defendant, while represented by counsel, twice consented to the asset freeze order.  *Id*. at 1364-65.  It also found that the defendant had repeatedly failed to disclose assets and had intentionally diverted other assets from the freeze in violation of the court's prior orders.  *Id*. at 1366.  Because the defendant had "not shown an intervening change in controlling law, newly discovered evidence, or a need to correct a clear error or manifest injustice[,]" the court denied the motion to modify the asset freeze order.  *Id*. at 1371.  That is not the case here.

8

if the Order was modified so as not to include the First Circuit." (*Id.*, ¶ 7.) Unfortunately, "[d]uring the brief window when the testing occurred, a limited number of users in the First Circuit may have been able to access some of the Copyrighted Programming subject to the Order. As soon as Defendants learned of this, they discontinued testing in the First Circuit. Prior to the Court's issuance of its October 16 order denying Defendants' motion to modify the scope of the injunction in this case, no user of Defendants' services could access plaintiffs' programming through the FilmOn X service. No testing has occurred since." (*Id.*, ¶ 8.) "Currently, users who attempt to access Defendants' programming covered by the Order outside of the geographic limits of the Second Circuit are denied access. Defendants continue to take steps to ensure that this remains the case going forward." (*Id.*, ¶ 9.)

In light of these new facts showing FilmOn X's good faith efforts to comply with this Court's injunction, this Court should modify the injunction.

**C.     This Court's Denial Of The Motion To Modify Is Clearly Erroneous And Would Result In A Manifest Injustice**

*Hearst* is the latest in a string of related cases about the same technology at issue in this case that have been reached in different jurisdictions across the country. In some cases, the courts have adopted Aereo and FilmOn X's interpretation of the Transmit Clause; in other cases, courts have adopted a contrary reading. In light of these judicial disagreements, it would be a manifest injustice for this Court to enforce its view of the law on other jurisdictions where courts have reached different conclusions. *See Virginia Soc. for Human Life, Inc. v. Federal Election Comm'n*, 263 F.3d 379, 393 (4th Cir. 2001) (holding that nationwide injunctions should not be used by a court to "impos[e] [its] view of the law on all the other circuits" and should not "thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue"); *see also Los Angeles Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 664-

65 (9th Cir. 2011) (vacating nationwide injunction where a lawsuit involved important or difficult questions of law).

### 1. The Massachusetts District Court's Decision in *Hearst*, at a Minimum, Constitutes a Significant Change in the Law of the First Circuit

Reconsideration is appropriate where a significant change in the law occurred after the decision was rendered. *Singh,* 383 F. Supp. 2d at 101. *Hearst* is a significant change in the law, particularly in the law of the First Circuit. This Court's refusal to recognize the *Hearst* court's interpretation of First Circuit law is clearly erroneous. It is the duty of the District Court of Massachusetts to consider, determine and apply the law of that circuit. *Newell v. Harold Shaffer Leasing Co.,* 489 F.2d 103, 107 (5th Cir.1974). That is exactly what the district court did in *Hearst*. It applied its reasoned judgment as to First Circuit law and agreed with the analysis contained in the Second Circuit's decision in *Cartoon Network LP v. CSC Holdings, Inc.* ("*Cablevision*"), 536 F.3d 121 (2nd Cir. 2008). [Dkt. 52-1, Ex. A at 10-13.] It thus refused to issue a preliminary injunction on the ground that Aereo was "transmitting private rather than public performances per *Cablevision*." [*Id*. at 12, 20.] Thus, even though *Hearst* is not binding on this Court, it is still a valid reflection of the law of the First Circuit.

Unlike the district court in *Hearst*, this Court did not purport to determine or apply the law of the First Circuit. This Court should defer to the *Hearst* decision within the territory of the First Circuit. *See, e.g., Bryant*, 165 B.R. at 180-81 ("The opinions of district court judges have persuasive authority entitled to substantial deference."); *Bates v. Donley*, CIV. 11-1589 RCL, 2013 WL 1224482 (D.D.C. Mar. 27, 2013) ("well-reasoned holdings of a colleague have a strong persuasive effect.").

Moreover, the decision in *Singh*,[7] 383 F. Supp. 2d at 101, does not provide any support for this Court's October 15, 2013 order. That case did not involve an injunction that applied across multiple jurisdictions; instead, it involved reconsideration of a summary judgment ruling. The court wisely declined to reconsider its summary judgment ruling where a party had submitted non-binding supplemental authority from another court on a legal issue that the court found to be "poorly reasoned." *Id*. at 103. That is not at all the situation here.

Unlike *Singh*, this Court has issued an extremely broad injunction that applies across multiple jurisdictions and has the effect of precluding FilmOn X from operating in another judicial circuit where the exact same operations have been found to be legal by a district court. *Singh*'s reasoning highlights why this Court should give deference to the decision of a sister court in Massachusetts:

> District courts, and circuit courts, are free to disagree as they seek to apply to the law and to reach just results in their cases. Our lower federal courts, as the various states are laboratories for new policies, are the laboratories for the law as it develops in response to particular controversies. A disagreement between coequal courts in separate districts is no grounds for reconsideration.

*Id*. at 103. It is precisely because district courts should be "free to disagree" that it is manifestly unjust for this Court to enforce its view of the law in another jurisdiction where a district court has reached a different result. *See also Virginia Soc. for Human Life,* 263 F.3d at 393 (holding that a court should not "impos[e]" its view of the law "on all the other circuits" and a party should be permitted "to press its position in those circuits" if it so chooses). Indeed, this Court has previously rejected FilmOn X's argument that the injunction causes irreparable harm because it prevents FilmOn X from competing with Aereo in jurisdictions outside the Second Circuit. At the time, this Court reasoned that FilmOn X "should not be permitted to infringe simply

---

[7] Aside from *Hearst* and a case on judicial notice, *Singh* is the only decision that this Court cited in its September 15, 2013 order. [Dkt. 54 at 2.]

11

because" "there is another infringing service in operation (Aereo) with which FilmOn X competes." [Dkt. 41 at 4-5.] But now that the Massachusetts District Court has ruled that Aereo does not infringe, this Court should modify the injunction to permit FilmOn X to operate alongside its competitor Aereo, in the First Circuit.

### 2. This Court Should Modify the Injunction to Allow FilmOn X to Compete with Aereo in the First Circuit in Compliance with Hearst

FilmOn X does not ask this Court to vacate the Preliminary Injunction in its entirety based on the *Hearst* decision. While FilmOn X believes that this Court misinterpreted the Transmit Clause and should have adopted the contrary reasoning of the Second Circuit and the District of Massachusetts, FilmOn X merely asks this Court to modify the injunction so that FilmOn X may continue to operate its service just as Aereo currently does in the First Circuit.[8]

This Court earlier rejected the argument that FilmOn X should be permitted to engage in the same conduct as Aereo on the ground that Aereo is also "infring[ing]" plaintiffs' copyrighted programming. [Dkt. 41 at 5.] That is clearly no longer the case in the First Circuit. In light of *Hearst*, there is now a judicial decision finding that Aereo's technology does not infringe copyrights. Thus, it would be manifestly unjust and would cause irreparable harm to prohibit FilmOn X from competing in this same market against Aereo.

If the injunction is not modified, FilmOn X will lose market share to Aereo, which will continue to provide consumers with remote data storage services for copyrighted programming in the First Circuit even though FilmOn X is no longer allowed to do so. [Dkt. 37-2 at ¶¶ 6-8,

---

[8] Lest there be any confusion, FilmOn X does not contend—as this Court suggested in its October 15, 2013 order—that "this Court must follow a new ruling from the District of Massachusetts . . . ." [Dkt. 54 at 1.] This Court, of course, may make its own decisions and interpret the law differently from the District of Massachusetts. However, it should not issue an injunction outside its territorial boundaries in a manner that clearly conflicts with the law of another jurisdiction.

10.] In light of the fact that FilmOn X is a relatively new technology company, formed in 2008 in a rapidly evolving industry, it is no stretch of the imagination to conclude that FilmOn X will permanently lose a substantial portion of its market share to Aereo or other competitors who spring up to fill the void left by FilmOn X's forced exit from the marketplace.[9] [*See id.* at ¶¶ 5-8, 10.] Even if FilmOn X wins its appeal to the D.C. Circuit and the preliminary injunction is vacated, it is extremely unlikely that FilmOn X will ever be able to recover its market share and customer loyalty in this rapidly evolving industry. [*Id.* at ¶ 8.] All of those factors weigh in favor of reconsideration and, ultimately, modification of the Court's September 5 injunction.

## CONCLUSION

For the foregoing reasons, FilmOn X respectfully requests the Court reconsider its ruling denying defendant motion to modify the scope of its preliminary injunction and modify that injunction to exclude the First Circuit.

---

[9] At present, Aereo provides the same DVR-like services as FilmOn X in Atlanta, Boston, Miami, Salt Lake City, as well as within the Second Circuit. [*See* Dkt. 38, Exs. 1-5; Dkt 37-2 at ¶ 4.] Even more importantly, Aereo has publicly announced plans to expand to Washington D.C., as well as Austin, Baltimore, Birmingham, Alabama, Chicago, Cleveland, Dallas, Denver, Detroit, Houston, Kansas City, Madison, Wisconsin, Minneapolis, Philadelphia, Pittsburg, Providence, Rhode Island, Raleigh-Durham, North Carolina, and Tampa, Florida. [*See* Dkt. 38, Exs. 6-9.] Thus, Aereo—an extremely well-funded operation—certainly is in a position to expand into other geographic markets where it can be expected to steal FilmOn X consumers who are disappointed that they can no longer use FilmOn X's services to record copyrighted programming for their own private performances. [Dkt. 37-2 at ¶¶ 7-9.]

October 17, 2013                               Respectfully submitted,

        By: /s/ Ryan G. Baker
           Ryan G. Baker
           BAKER MARQUART LLP
           10990 Wilshire Blvd., Fourth Floor
           Los Angeles, California 90024
           (424) 652-7811 (telephone)
           (424) 652-7850 (facsimile)
           Bar No.: 200344

           /s/ Kerry J. Davidson
           LAW OFFICE OF KERRY J. DAVIDSON
           1738 Elton Road, Suite 113
           Silver Spring, Maryland 20903
           (301) 586-9516 (telephone)
           (866) 920-1535(facsimile)
           Bar No.: 456431

           *Attorneys for Defendants and Counterclaim Plaintiffs FilmOn X, LLC, FilmOn.TV, Inc., FilmOn.TV Networks, Inc., and FilmOn.com, Inc.*