**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

---

FOX TELEVISION STATIONS, INC., et al.

                *Plaintiffs/Counter-Defendants*,

                      v.

FILMON X LLC, et al.

                *Defendants/Counter-Plaintiffs*.

---

Civil No. 1:13-cv-00758 (RMC)

Hon. Rosemary M. Collyer

**DEFENDANT FILMON X'S SUPPLEMENTAL RESPONSE TO COURT'S ORDER TO
SHOW CAUSE REGARDING CONTEMPT**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

    A.    The September 5 Order Does Not Clearly And Unambiguously Prohibit FilmOn X From Operating In The First Circuit In Compliance With *Hearst*. .................... 3

    B.    Plaintiffs Cannot Uphold Their Burden Of Proving By Clear And Convincing Evidence That The Purposes Of Civil Contempt Are Not Satisfied Here .............. 4

    C.    FilmOn X Has Complied and Continues to Comply Substantially In Good Faith With The Order ........................................................................................................ 7

    D.    Plaintiffs Cannot Uphold Their Burden Of Proving Beyond A Reasonable Doubt That FilmOn X Is Liable For Criminal Contempt ................................................. 9

CONCLUSION .................................................................................................................. 11

    DEFENDANT FILMON X'S RESPONSE
TO COURT'S ORDER TO SHOW CAUSE

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Al-Adahi v. Obama,*
   672 F. Supp. 2d 114 (D.D.C. 2009) ........................................................................9

*Armstrong v. Executive Office of the President,*
   1 F.3d 1274 (D.C.Cir. 1993) ..................................................................................3

*Brotherhood of Locomotive Firemen and Enginemen v. Bangor & Aroostook Railroad
   Company,*
   380 F.2d 570 (D.C. Cir. 1967) ........................................................................7, 8, 9

*Common Cause v. Nuclear Regulatory Comm'n,*
   674 F.2d 921 (D.C. Cir.1982) ................................................................................3

*Hearst Stations Inc. d/b/a WCVB-TV v. Aereo, Inc.,*
   Civ. No. 13-11649-NMG (D.Mass. Oct. 8, 2013) ....................................... passim

*In re Fannie Mae Secs. Litig.,*
   552 F.3d 814 (D.C. Cir. 2009) ..............................................................................5

*In re Magwood,*
   785 F.2d 1077 (1986) ......................................................................................5, 6, 9

*Int'l Union, United Mine Workers of Am. v. Bagwell,*
   512 U.S. 821 (1994) ................................................................................................9

*N. L. R. B. v. Blevins Popcorn Co.,*
   659 F.2d 1173 (D.C. Cir. 1981) ..........................................................................10

*NAACP, Jefferson Cnty. Branch v. Brock,*
   619 F. Supp. 846 (D.D.C. 1985) ...........................................................................7

*S.E.C. v. Bilzerian,*
   112 F. Supp. 2d 12 (D.D.C. 2000) .........................................................................3

*S.E.C. v. Life Partners, Inc.,*
   912 F. Supp. 4 (D.D.C. 1996) ................................................................................2

*Sheet Metal Workers v. EEOC,*
   478 U.S. 421 (1986) ................................................................................................5

*Spallone v. United States,*
   493 U.S. 265 (1990) ................................................................................................2

*Teamsters Local Union No. 96 v. Washington Gas Light Co.*,
466 F. Supp. 2d 360 (D.D.C. 2006) ................................................................................... 2, 3

*United States v. United Mine Workers of Am.*,
330 U.S. 258 (1947) ............................................................................................................ 10

*United States v. Young*,
107 F.3d 903 (D.C.Cir. 1997) ........................................................................................... 3, 10

*Washington Metro. Area Transit Auth. v. Amalgamated Transit Union, Nat. Capital
Local Div. 689*,
531 F.2d 617 (D.C. Cir. 1976) ............................................................................................ 7, 9

## **INTRODUCTION**

FilmOn X[1] submits this supplemental brief in response to this Court's October 15, 2013 Order to Show Cause why FilmOn X should not be held in contempt (the "OSC").  This Court had originally directed FilmOn X to file this brief by "no later than October 21, 2013."  [Dkt. 54 at 3.]  Although FilmOn X subsequently filed a motion for reconsideration on October 17 and submitted a declaration from Alkiavides David at that time in connection with its motion to modify the injunction, FilmOn X has not previously attempted to fully brief this Court on the legal authority and factual analysis that governs any contempt ruling on the OSC.  Thus, FilmOn X respectfully requests that this Court consider this supplemental brief.

Contempt is a drastic remedy.  For several independent reasons, this Court should not hold FilmOn X in contempt.  As an initial matter, the preliminary injunction issued by this Court on September 5, 2013 (the "Order")—which only applies to a "public[] perform[ance]"—may reasonably be interpreted as not barring FilmOn X from operating in the First Circuit where a district court has ruled that a substantially identical service operated by Aereo, Inc. ("Aereo") does not enable public performances; rather the performances are private.  In any event, even assuming the Order clearly and unambiguously bars FilmOn X from engaging in the exact same conduct as Aereo in the First Circuit, Plaintiffs have not and cannot uphold their burden of proving that FilmOn X should be held in civil or criminal contempt.  Plaintiffs cannot show that the extreme remedy of contempt is necessary to coerce FilmOn X into complying with the Order, to compensate plaintiffs for non-existent losses attributable to alleged violation of the Order, or to punish FilmOn X for willful misconduct.

---

[1] "FilmOn X" or "Defendants" refers collectively herein to defendants FilmOn X LLC, FilmOn.TV Networks, Inc., FilmOn.TV, Inc. and FilmOn.com, Inc.

To the contrary, FilmOn X has substantially complied with the Order and has promptly and voluntarily taken steps to ensure on-going compliance with the Order.  As set forth in the Declarations of Alkiviades David filed on September 12 and October 17, 2013, FilmOn X has consistently acted to ensure ongoing compliance with the Order.  [*See* dkt. 43, 55-2.]  FilmOn is and has been voluntarily complying with that order.  Although certain copyrighted programming was inadvertently accessible in the First Circuit for some period of time following the ruling of the Massachusetts District Court in *Hearst Stations Inc. d/b/a WCVB-TV v. Aereo, Inc.*, Civ. No. 13-11649-NMG (D.Mass. Oct. 8, 2013) ("*Hearst*") due to testing, FilmOn X immediately "discontinued testing in the First Circuit" upon learning that a limited number of users in the First Circuit may have been able to access some of Plaintiffs' copyrighted programming.  [Dkt. 55-2 at ¶¶ 7-8.]  It deactivated that testing well before this Court's October 15 ruling and before Plaintiffs raised any objection.  Accordingly, it would be patently improper to hold FilmOn X in civil or criminal contempt.

## **ARGUMENT**

"The judicial contempt power is a potent weapon that courts rightly impose with caution." *Teamsters Local Union No. 96 v. Washington Gas Light Co.*, 466 F. Supp. 2d 360, 362 (D.D.C. 2006) (internal quotations omitted).  The "extraordinary nature" of the remedy of civil contempt leads courts to "impose it with caution." *S.E.C. v. Life Partners, Inc.*, 912 F. Supp. 4, 11 (D.D.C. 1996).  Moreover, in light of its extraordinary nature, district courts are required "to use the least possible power adequate to the end proposed" in selecting which sanctions are appropriate. *See Spallone v. United States*, 493 U.S. 265, 276 (1990).

Here, Plaintiffs simply cannot uphold their steep burden of proving that FilmOn X should be either in either civil or criminal contempt.  At worst, FilmOn X's testing of its software

inadvertently allowed a limit number of users in the First Circuit to access copyrighted programming for a brief period of time after the *Hearst* decision. Upon discovering that this error had occurred, FilmOn X immediately and voluntarily took corrective action before Plaintiffs brought this issue to this Court's attention. Under these circumstances, it would be inappropriate to exercise the extreme remedy of contempt.

**A.**     **The September 5 Order Does Not Clearly And Unambiguously Prohibit FilmOn X From Operating In The First Circuit In Compliance With *Hearst*.**

As a threshold matter, it would not be fair to hold FilmOn X in civil or criminal contempt because the September 5 Order is itself unclear and ambiguous. To justify a finding of contempt, the party seeking contempt must demonstrate that "'the putative contemnor has violated an order that is clear and unambiguous.'" *Armstrong v. Executive Office of the President,* 1 F.3d 1274, 1289 (D.C.Cir. 1993) (internal quotations omitted). In determining whether an order is clear and reasonably specific, courts apply "an objective standard that takes into account both the language of the order and the circumstances surrounding the issuance of the order." *United States v. Young,* 107 F.3d 903, 907 (D.C.Cir. 1997). "This requirement of clarity derives from concepts of fairness and due process." *S.E.C. v. Bilzerian*, 112 F. Supp. 2d 12, 28 (D.D.C. 2000). "The violation must be proved by clear and convincing evidence, and ambiguities in the underlying order should be resolved in favor of the alleged contemnor. *See Common Cause v. Nuclear Regulatory Comm'n,* 674 F.2d 921, 927-28 & n. 13 (D.C.Cir.1982); *Teamsters Local Union No. 96 v. Washington Gas Light Co.*, 466 F. Supp. 2d 360, 363 n.4 (D.D.C. 2006) (refusing to hold a party in contempt because the order at issue was not sufficiently clear and unambiguous).

While this Court found under the law of the D.C. Circuit that FilmOn X's technology likely does infringe Plaintiffs' exclusive public performance rights, this Court did not purport to rule on the law of any other circuit. The September 5 Order only prohibits FilmOn X from

"publicly performing" the Plaintiffs' copyrighted programming, but does not define that term.  It simply states that "Defendants . . . are preliminarily enjoined from streaming, transmitting, retransmitting, or otherwise ***publicly performing***, displaying, or distributing any Copyrighted Programming over the Internet . . . ."  [Dkt. 34 at 2 (emphasis added).]  Importantly, the Order itself does not expressly contemplate the effect of subsequent court decisions on the undefined term "publicly performing" in particular jurisdictions.

Here, the parties have vigorously contested the meaning of a public as opposed to a private performance and courts in different jurisdictions have reached different opinions on the subject.  In light of the recent *Hearst* decision, which was issued after the September 5 Order and found that a service analogous to FilmOn X's enables only private performance, the Order may be read so as to not prohibit FilmOn X from providing access to Plaintiffs' programming in the First Circuit.  Ultimately, while this Court may disagree with *Hearst's* reasoning, it is not patently unreasonable to interpret the term "publicly performing" in the September 5 Order in a manner that is consistent with decisions in particular jurisdictions that are directly on point (as is the case with *Hearst*).  Indeed, under these unique circumstances, it would not be fair to hold FilmOn X in contempt based on ambiguities in the September 5 Order and subsequent judicial decisions.

**B.**     **Plaintiffs Cannot Uphold Their Burden Of Proving By Clear And Convincing Evidence That The Purposes Of Civil Contempt Are Not Satisfied Here**

Even assuming this Court finds that the September 5 Order is clear and free of any ambiguity (it is not), the extreme remedy of civil contempt is still inappropriate.  Although the Order should not be interpreted as prohibiting FilmOn X from operating in the First Circuit in compliance with *Hearst*, FilmOn X has acted cautiously to ensure on-going compliance with the

Order.  It does not currently make Plaintiffs' programming available in the First Circuit and has voluntarily taken prompt corrective action where appropriate.

Under settled U.S. Supreme Court authority, courts employ civil contempt sanctions "for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Sheet Metal Workers v. EEOC,* 478 U.S. 421, 443 (1986) (internal quotations omitted).  "Unlike discovery sanctions, civil contempt sanctions may not be punitive—they must be calibrated to coerce compliance or compensate a complainant for losses sustained." *In re Fannie Mae Secs. Litig.,* 552 F.3d 814, 823 (D.C. Cir. 2009); *see also In re Magwood,* 785 F.2d 1077, 1081 (1986) ("Civil contempt sanctions are employed only to *coerce compliance* with the court's order or to *compensate* an injured party for losses sustained because of the contemptuous behavior.  The sanctions in a civil contempt must not be punitive.").  Neither of those purposes would be served here by a finding of contempt.

First, there is no need to "coerce" FilmOn X into complying with the September 5 Order. FilmOn is and has been voluntarily complying with that Order.  Although certain copyrighted programming was inadvertently accessible in the First Circuit due to testing, FilmOn X immediately "discontinued testing in the First Circuit" upon learning that a limited number of users in the First Circuit may have been able to access some of Plaintiffs' copyrighted programming.  [Dkt. 55-2 at ¶¶ 7-8.]  It discontinued that testing voluntarily before this Court, on October 16, denied FilmOn X's motion to modify the injunction.  [*Id*. at ¶ 8.]  "No testing has occurred since."  [*Id*.]  "Currently, users who attempt to access Defendants' programming covered by the Order outside of the geographic limits of the Second Circuit are denied access. Defendants continue to take steps to ensure that this remains the case going forward."  [*Id*. at ¶ 9.]  Thus, there simply is no need to "coerce" compliance through the extraordinary contempt

remedy in light of FilmOn X's current and on-going compliance with the injunction.  *See In re*

*Magwood*, 785 F.2d at 1082 ("If a sanction operates whether or not a party remains violation of

the court order, it obviously does not coerce any compliance").

Second, Plaintiffs have not shown and cannot show that they have suffered any actual

losses attributable to FilmOn X's alleged violation of the September 15 Order.  "Compensatory

civil contempt reimburses the injured party for losses and expenses incurred because of the

contemptuous conduct.  This includes losses attributable to the violation of expenses reasonably

and necessarily incurred in the attempt to enforce compliance."  *See In re Magwood*, 785 F.2d at

1082-83.  There are no such losses here.

At worst, FilmOn X inadvertently allowed "a limited number of users in the First Circuit

. . . to access some of [Plaintiffs'] Copyrighted Programming" over a span of two to three days.

(Dkt. 55-2 at ¶ 8.)  There is no way Plaintiffs could prove, much less quantify, any losses

sustained as a proximate result of this brief incident.  All of the alleged irreparable harm that

Plaintiffs originally identified in support of their motion for a preliminary injunction is clearly

inapplicable.  Plaintiffs surely cannot show any harm to their net worth by the mere fact that a

small number of users may have been able to access their programming on FilmOn X for a brief

period of time in Boston and elsewhere in the First Circuit.  Nor can Plaintiffs reasonably prove

that their leverage either in local advertising negotiations or in negotiations over retransmission

consent agreements with cable, satellite, or telecommunications providers has been damaged by

an alleged violation of the Order.  Plaintiffs' ability to develop a lawful market for Internet

distribution of television programing has not been damaged by an alleged violation of the Order.

In any event, Plaintiffs cannot prove that they suffered any loss in revenue or incurred

other losses from FilmOn X's testing of its system in the First Circuit for a brief period.  Because

Plaintiffs cannot prove by clear and convincing evidence that the underlying purposes of civil contempt are not satisfied, it would be improper for this Court to hold FilmOn X in contempt.

**C.**     **FilmOn X Has Complied and Continues to Comply Substantially In Good Faith With The Order**

An order of contempt also is inappropriate here because FilmOn X has worked diligently and in good faith to comply with the terms of the Order.  Courts of this circuit have considered good faith compliance efforts as a defense, which calls for mitigation or elimination of contempt sanctions.  *See NAACP, Jefferson Cnty. Branch v. Brock*, 619 F. Supp. 846, 850 (D.D.C. 1985); *see also Washington Metro. Area Transit Auth. v. Amalgamated Transit Union, Nat. Capital Local Div. 689*, 531 F.2d 617, 621-22 (D.C. Cir. 1976) ("*WMATA*"); *Brotherhood of Locomotive Firemen and Enginemen v. Bangor & Aroostook Railroad Company*, 380 F.2d 570, 582 (D.C. Cir. 1967).  Because FilmOn X continues to comply with the Order, this Court should not find FilmOn X in contempt; nor are any sanctions warranted.

The D.C. Circuit recognizes that "[e]valuation of good faith efforts to comply, once raised, is necessary to determine the possibility of compliance" and should also "be considered in mitigation of penalty" or elimination of the penalty in full.  *See WMATA*, 531 F.2d at 621-22. The court in *WMATA* relied on previous authority in the D.C. Circuit to support its decision, including *Brotherhood of Locomotive Firemen and Enginemen v. Bangor & Aroostook Railroad Company*, 380 F.2d 570, 582 (D.C. Cir. 1967), for the proposition that "the history of contempt litigation . . . prescribes extreme care and insistence on the full indicia of due process in contempt cases," and that "not only must the District Court consider whether there is indeed a contempt *but also* whether if so, it be of such magnitude as to warrant retention, *in part or to any extent*, of the coercive fine originally provided for in contemplation of an out right refusal to obey" (emphasis added).  The court in *Brotherhood of Locomotive Firemen and Enginemen*

further emphasized flexibility in approach, and that courts considering contempt cases take into consideration the extent of efforts taken by a party to obey the terms of the outstanding order. *See id.*

Here, FilmOn X undertook extensive efforts to obey the terms of the Order.  Following the entry of the Order on September 5, 2013, FilmOn X began taking immediate steps to comply with the Order.  [Dkt. 55-2 at ¶ 3.)  In fact, by September 12, 2013, FilmOn X had removed all access to plaintiffs' Copyrighted Programming to users logging on to any of the websites or mobile applications operated by FilmOn X within any area in the United States outside of the Second Circuit.  (*Id.* at ¶ 4.)  This continues to be the case, as users who attempt to access FilmOn X's services from outside the geographic limits of the Second Circuit are denied access and do not receive the option of accessing any of the unlicensed Copyrighted Programming subject to the Order.  (*Id.* at ¶ 5.)

Defendants have taken and continue to take measures to ensure that users who attempt to access FilmOn X's services from outside the geographic limits of the Second Circuit are denied such access for as long as the Order remains in effect.  (*Id.*)  Indeed, the only instance in which users could potentially have accessed FilmOn X's services from outside the geographic limits of the Second Circuit was during the course of a temporary technology check conducted by FilmOn X over a brief span following the issuance of the *Hearst* opinion.  (*Id.* at 7.)  Though theoretically users may have been able to briefly access some of the Copyrighted Programming subject to the Order, once FilmOn X learned of the potential for users to access some of the Copyrighted Programming, it immediately discontinued its testing.  Furthermore, this temporary technology check was conducted by FilmOn X in good faith anticipation of the possibility that the Order would be lifted as applied to the First Circuit, following the U.S. District Court of

Massachusetts' decision denying the Plaintiffs a preliminary injunction in *Hearst*.  (*Id.*at ¶¶ 6-7.)

Testing took place only so that FilmOn X could begin offering its services immediately if the

Order was modified so as not to include the First Circuit.  (*Id.*at ¶ 7.)  There was no bad faith or

intentional disregard of this Court's order.

      Consistent with this Circuit's decisions in *WMATA* and *Brotherhood of Locomotive*

*Firemen and Enginemen* that an equity court evaluate a party's good faith efforts to comply with

a court's order in considering whether to eliminate or mitigate a penalty for non-compliance,

FilmOn X respectfully submits that this court evaluate FilmOn X's substantial good faith efforts

to comply with the Order in considering whether to hold FilmOn X in contempt of the Order.

**D.**      **Plaintiffs Cannot Uphold Their Burden Of Proving Beyond A Reasonable Doubt
That FilmOn X Is Liable For Criminal Contempt**

      There is clearly no basis for holding FilmOn X in criminal contempt.  FilmOn X did

not—as Plaintiffs allege—"deliberate[ly] defi[e]" this Court's orders.  [*See* Dkt. 53 at 1.]  To the

contrary, FilmOn X has consistently acted in good faith and has taken prompt steps to ensure

ongoing compliance with the Order.

      Unlike civil contempt which is designed to coerce or compensate, "[t]he purpose of a

criminal contempt proceeding is the vindication of the court's authority by *punishing for a past*

*violation of a court order*."  *In re Magwood*, 785 F.2d at 1083 (italics in original).  The Supreme

Court has described criminal contempt sanctions as "punitive" in nature.  *Int'l Union, United*

*Mine Workers of Am. v. Bagwell*, 512 U.S. at 827-28 (1994). As such "[c]riminal contempt

requires both a contemptuous act and a wrongful state of mind." *Al-Adahi v. Obama*, 672 F.

Supp. 2d 114, 117 (D.D.C. 2009) (internal quotations omitted).  Moreover, alleged criminal

contemnors are entitled to many, if not all, of the procedural safeguards typically afforded

ordinary criminal defendants, including the provision for due process insofar as it necessitates

"suitable notice and adequate opportunity to appear and to be heard." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 365 (1947).  The burden of proof in criminal contempt proceedings is "beyond a reasonable doubt." *United States v. Young*, 107 F.3d 903, 907 (D.C. Cir. 1997); *N. L. R. B. v. Blevins Popcorn Co.,* 659 F.2d at 1183–84 (D.C. Cir. 1981).

Here, Plaintiffs certainly cannot uphold their burden of proving beyond a reasonable doubt that FilmOn X deliberately defied this Court's Order.  FilmOn X has consistently engaged in good faith efforts to comply with the Order and voluntarily took corrective action before Plaintiffs even complained about the testing.  FilmOn X did not have a wrongful state of mind. In any event, it would be inappropriate to hold FilmOn X in criminal contempt without an opportunity to be heard in an evidentiary hearing.

///

///

///

///

///

///

///

///

///

///

///

///

///

10      DEFENDANT FILMON X'S RESPONSE
TO COURT'S ORDER TO SHOW CAUSE

## CONCLUSION

For the foregoing reasons, this Court should not hold FilmOn X in contempt.

October 21, 2013

Respectfully submitted,

By: /s/ Ryan G. Baker
Ryan G. Baker
BAKER MARQUART LLP
10990 Wilshire Blvd., Fourth Floor
Los Angeles, California 90024
(424) 652-7811 (telephone)
(424) 652-7850 (facsimile)
Bar No.: 200344

/s/ Kerry J. Davidson
LAW OFFICE OF KERRY J. DAVIDSON
1738 Elton Road, Suite 113
Silver Spring, Maryland 20903
(301) 586-9516 (telephone)
(866) 920-1535(facsimile)
Bar No.: 456431

*Attorneys for Defendants and Counterclaim Plaintiffs FilmOn X, LLC, FilmOn.TV, Inc., FilmOn.TV Networks, Inc., and FilmOn.com, Inc.*