UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

FOX TELEVISION STATIONS, INC., et al.

Plaintiffs,

v.

FILMON X, LLC, et al.

Defendants.

Civil Action No.  1:13-cv-00758-RMC
Hon. Rosemary M. Collyer

**JOINT STIPULATION FOR (1) PLAINTIFFS TO FILE SECOND AMENDED COMPLAINT; (2) DEFENDANTS TO FILE ANSWERS TO SECOND AMENDED COMPLAINT;  (3) DEFENDANTS TO FILE SECOND AMENDED COUNTERCLAIM; AND (4) PLAINTIFFS TO FILE ANSWER TO SECOND AMENDED COUNTERCLAIM**

Plaintiffs Fox Television Stations, Inc., Twentieth Century Fox Film Corporation, Fox Broadcasting Company, NBC Subsidiary (WRC-TV) LLC, NBC Studios LLC, Universal Network Television LLC, Open 4 Business Productions LLC, Telemundo Network Group LLC, American Broadcasting Companies, Inc., Disney Enterprises, Inc., Allbritton Communications Company, CBS Broadcasting Inc., CBS Studios Inc., and Gannett Co., Inc., (collectively, "Plaintiffs"), and Defendants FilmOn X, LLC (f/k/a Aereokiller LLC), FilmOn.com, Inc., FilmOn.TV, Inc., and FilmOn.TV Networks, Inc. (collectively, "Defendants"), stipulate as follows:

WHEREAS, Plaintiffs' operative pleading is the First Amended Complaint, filed on May 24, 2013 (Dkt. No. 5);

WHEREAS, Defendants have filed an Answer to the First Amended Complaint (Dkt. No. 14);

WHEREAS, Defendants have filed a First Amended Counterclaim (Dkt. No. 13);

1

WHEREAS, Plaintiffs have filed Answers to the First Amended Counterclaim (Dkt. Nos. 24, 25);

WHEREAS, on June 25, 2014, the Supreme Court issued its decision in *American Broadcasting Cos., Inc. v. Aereo, Inc.*, 134 S. Ct. 2498 (2014) ("*Aereo*");

WHEREAS, Plaintiffs seek to name as a defendant Alkiviades David ("David"), the Chief Executive Officer and/or principal shareholder of one or more of the Defendants;

WHEREAS, Defendants seek to add an affirmative defense, and seek to plead a counterclaim for declaratory relief, that they are entitled to a statutory license as a "cable system" pursuant to 17 U.S.C. § 111 following the *Aereo* opinion;

WHEREAS, the parties have met and conferred and agree that, pursuant to Federal Rule of Civil Procedure 15(a)(2):  (i) Plaintiffs may file a Second Amended Complaint in the form attached hereto as **Exhibit A**; (ii) Defendants and David may file Answers thereto, in the form attached hereto as **Exhibits B-C**; (iii) Defendants may file a Second Amended Counterclaim, in the form attached hereto **Exhibit D**; and (iv) Plaintiffs may file an Answer to the Second Amended Counterclaim, in the form attached hereto as **Exhibit E**.

WHEREAS, the parties' agreement on the filing of amended pleadings extends to and includes only the amendments identified in the exhibits attached hereto; and

WHEREAS, the parties further agree that they are reserving all rights with respect to the pleadings that are the subject of this stipulation.

IT IS HEREBY STIPULATED by and between Plaintiffs, Defendants, and David, through their counsel of record, and subject to the Court's approval, that:

2

1.      Plaintiffs shall be granted leave to file a Second Amended Complaint in the form attached hereto as **Exhibit A**, within two (2) court days after this stipulation is approved by the Court.

2.      Defendants shall be granted leave to file a Second Amended Counterclaim in the form attached hereto as **Exhibit D**, within two (2) court days after this stipulation is approved by the Court.

3.      Defendants and David shall be granted leave to file Answers in response to the Second Amended Complaint in the form attached hereto as **Exhibits B-C**, within two (2) court days after the Second Amended Complaint is filed.

4.      Plaintiffs shall be granted leave to file an Answer in response to the Second Amended Counterclaim in the form attached hereto as **Exhibit E**, within two (2) court days after the Second Amended Counterclaim is filed.


Dated: September 22, 2014

/s/ Julie A. Shepard
Paul Smith (D.C. Bar No. 358870)
psmith@jenner.com
JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412
Telephone: (202) 639-6000
Facsimile: (202) 639-6066

Richard L. Stone (admitted *pro hac*)
rstone@jenner.com
Julie A. Shepard (admitted *pro hac*)
jshepard@jenner.com
Amy Gallegos (admitted *pro hac*)
agallegos@jenner.com
JENNER & BLOCK LLP
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
Telephone: (213) 239-5100

3

Facsimile: (213) 239-5199

*Attorneys for Plaintiffs Fox Television Stations, Inc., Twentieth Century Fox Film Corporation, and Fox Broadcasting Company*

Dated: September 22, 2014

/s/ John C. Ulin

Robert Alan Garrett (D.C. Bar No. 239681)
Hadrian R. Katz (D.C. Bar No. 931162)
Christopher Scott Morrow (D.C. Bar No. 491925)
Murad Hussain (D.C. Bar No. 999278)
ARNOLD & PORTER LLP
555 12th St., NW
Washington, DC 20004
Telephone: (202) 942-5444
Facsimile: (202) 942-5999

James S. Blackburn (admitted *pro hac*)
james.blackburn@aporter.com
John C. Ulin (admitted *pro hac*)
john.ulin@aporter.com
ARNOLD & PORTER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017
Telephone: (213) 243-4000
Facsimile: (213) 243-4199

*Attorneys for Plaintiffs NBC Subsidiary (WRC-TV) LLC, NBC Studios LLC, Universal Network Television LLC, Open 4 Business Productions LLC, Telemundo Network Group LLC, American Broadcasting Companies, Inc., Disney Enterprises, Inc., Allbritton Communications Company, CBS Broadcasting Inc., CBS Studios Inc., and Gannett Co., Inc.*

Dated: September 22, 2014

/s/ Ryan G. Baker

Ryan G. Baker
BAKER MARQUART LLP
10990 Wilshire Blvd., Fourth Floor
Los Angeles, California 90024
(424) 652-7811 (telephone)
(424) 652-7850 (facsimile)

Bar No.: 200344

*Attorneys for Defendants and Counterclaim*
*Plaintiffs FilmOn X, LLC, FilmOn.TV, Inc.,*
*FilmOn.TV Networks, Inc., and FilmOn.com, Inc.*
*and Defendant Alkiviades David*

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

----------------------------------------------------------x

FOX TELEVISION STATIONS, INC.,
    10201 West Pico Blvd.,
    Los Angeles, CA 90035,

TWENTIETH CENTURY FOX FILM
CORPORATION,
    10201 West Pico Blvd.,
    Los Angeles, CA 90064,

FOX BROADCASTING COMPANY,
    10201 West Pico Blvd.,
    Los Angeles, CA 90064,

NBC SUBSIDIARY (WRC-TV) LLC,
    4001 Nebraska Avenue, NW,
    Washington, D.C. 20016,

NBC STUDIOS LLC,
    100 Universal City Plaza
    Universal City, CA 91608,

UNIVERSAL NETWORK TELEVISION LLC,
    100 Universal City Plaza,
    Universal City, CA 91608,

OPEN 4 BUSINESS PRODUCTIONS LLC,
    100 Universal City Plaza,
    Universal City, CA 91608,

TELEMUNDO NETWORK GROUP LLC,
    2290 West 8th Avenue,
    Hialeah, FL 33010,

**Civil Action No. 13-758
(RMC)**

**SECOND AMENDED
COMPLAINT FOR
INJUNCTIVE RELIEF AND
DAMAGES**

**JURY TRIAL DEMANDED**

AMERICAN BROADCASTING COMPANIES,
INC.
   77 West 66th Street,
   New York, NY 10023,

DISNEY ENTERPRISES, INC.,
   500 S. Buena Vista Street,
   Burbank, CA 91521,

ALLBRITTON COMMUNICATIONS
COMPANY,
   1000 Wilson Boulevard, Suite 2700
   Arlington, VA  222209

CBS BROADCASTING INC.,
   51 West 52nd Street,
   New York, NY 10019,

CBS STUDIOS INC.,
   51 West 52nd Street,
   New York, NY 10019,

GANNETT CO., INC.,
   7950 Jones Branch Drive,
   McLean, VA 22107,

     Plaintiffs,

v.

FILMON X, LLC,
   400 E. 58th Street, Apt. 8B,
   New York, NY 10022,

FILMON.TV NETWORKS, INC.,
   301 N. Canon Drive,
   Beverly Hills, CA 90210,

FILMON.TV, INC.
    301 N. Canon Drive,
    Beverly Hills, CA 90210,

FILMON.COM, INC,
    301 N. Canon Drive,
    Beverly Hills, CA 90210,

ALKIVIADES DAVID,
    301 N. Canon Drive,
    Beverly Hills, CA 90210,

               Defendants.

-----------------------------------------------------------x

## SECOND AMENDED COMPLAINT

Plaintiffs Fox Television Stations, Inc., Twentieth Century Fox Film Corporation, Fox Broadcasting Company, NBC Subsidiary (WRC-TV) LLC, NBC Studios LLC, Universal Network Television LLC, Open 4 Business Productions LLC, Telemundo Network Group LLC, American Broadcasting Companies, Inc., Disney Enterprises, Inc., Allbritton Communications Company, CBS Broadcasting Inc., CBS Studios Inc., and Gannett Co., Inc., (collectively, "Plaintiffs"), by their respective attorneys, complain and allege against defendants FilmOn X, LLC (f/k/a Aereokiller LLC), FilmOn.TV Networks, Inc., Filmon.TV, Inc., FilmOn.com, Inc., and Alkiviades David inclusive (collectively "Defendants" or "FilmOnX") as follows:

## PRELIMINARY STATEMENT

1.      This copyright infringement action arises out of Defendants'
unauthorized retransmission over the Internet of the copyrighted programming
broadcast on numerous broadcast television stations, including the programming of
stations licensed by the Federal Communications Commission to serve the
Washington, D.C. market.  Defendants' retransmissions are occurring without the
consent of the affected broadcast stations or copyright owners, and infringe
Plaintiffs' copyrights in the retransmitted programming.  The purpose of this action
is to restrain Defendants from exploiting without authorization, and violating
Plaintiffs' rights in, some of the most valuable intellectual property created in the
United States.  Further, this particular action -- in a district court in the District of
Columbia Circuit -- is necessitated by Defendants' continued flagrant infringement
of Plaintiffs' valuable intellectual property rights in this Circuit, despite substantial
and diligent efforts by Plaintiffs to protect those rights in other courts.

2.      In early August 2012, Defendants began streaming over the Internet
through their websites the signals of broadcast television stations from the Los
Angeles, Chicago, New York and Minneapolis markets.  Defendants' streaming
included the broadcasts of television stations owned by Plaintiffs, as well as the
broadcasts of stations owned by other entities on which Plaintiffs' copyrighted
programming is televised.  Defendants offer and sell, or have offered and sold,

online access to their unauthorized retransmission service via the websites www.barrydriller.com, www.filmonx.com and www.filmon.com, and through mobile "apps" that Internet users may download.  Simply by clicking on a particular broadcast station listed on the program guides on Defendants' websites, a visitor to those sites is able to view on his or her laptop, personal computer, or mobile device the content -- including copyrighted programming -- being televised by the station at that time, just like a subscriber to a cable system can view the same program by turning on his or her television set.  The NBC program appearing in the screen shot below, for example, was viewable by clicking on the "NBC Washington" program listing, which appears highlighted in red:



Defendants are providing this commercial service, which features Plaintiffs' copyrighted television programming, without the authorization of any of the

affected stations or copyright owners.  All of Defendants' services will be referred to collectively as "FilmOnX."

3.      Within days of the commencement of Defendants' unlawful activity, certain of the Plaintiffs took action to address it by filing copyright infringement lawsuits against FilmOn X, LLC (f/k/a Aereokiller LLC) and other related entities in the United States District Court for the Central District of California (the "California Actions").  Defendants in the California Actions responded to the filing of the California Actions by expanding their service to stream broadcast stations from Dallas, San Francisco, Miami, Las Vegas, and Washington, D.C., without the consent of any party.  On information and belief, Defendants recently have expanded their service into even more cities and plan further expansion in the future.

4.      On November 8, 2012, the Plaintiffs in the California Actions moved for a nationwide preliminary injunction to enjoin Defendants' infringing conduct throughout the country.  On December 27, 2012, the district court preliminarily enjoined Defendants' unauthorized Internet retransmissions of broadcast television programming owned by the Plaintiffs in the California Actions.  In granting Plaintiffs' motions, the court found that Defendants' service was a clear violation of Plaintiffs' public performance rights under the Transmit Clause of the Copyright Act, and that Plaintiffs in those cases would suffer irreparable harm absent an

injunction.  *See Fox Television Stations, Inc. v. Barry Driller Content Sys., PLC*, 915 F. Supp. 2d. 1138 (C.D. Cal. 2012), a true and correct copy of which is attached hereto as Exhibit A.  However, the district court limited the scope of its injunction to the geographic boundaries of the Ninth Circuit.  The grant of the preliminary injunction, and the geographic limitation of that injunction to the Ninth Circuit, currently are on appeal to the Ninth Circuit Court of Appeals.

5.     The district court in the California Actions limited the injunction to the Ninth Circuit based on comity concerns arising out of the Second Circuit's decision in *Cartoon Network LP v. CSC Holdings, Inc.*, 536 F.2d 121 (2d Cir. 2008) ("*Cablevision*") and the application of the *Cablevision* decision to Aereo, an Internet-based television retransmission service allegedly similar to Defendants' service.  In *Aereo*, a federal district court in the Southern District of New York declined to enter a preliminary injunction enjoining Aereo's retransmission service.  The district court in the California Actions ruled that, "principles of comity prevent the entry of an injunction that would apply in the Second Circuit," where the courts in *Cablevision* and *Aereo* (then on appeal to the Second Circuit Court of Appeals) interpreted the Transmit Clause differently from the California district court.  For the same reason, the district court also declined to enjoin preliminarily Defendants' activities in all circuits other than the Ninth Circuit.

6.      Plaintiffs in *Aereo* appealed the district court's decision.  Had the Second Circuit reversed, plaintiffs in the California Actions intended to move to have the geographic limitation on the scope of the preliminary injunction lifted since a reversal of the district court's decision in *Aereo* would have removed the basis for that limitation.  However, on April 1, 2013, a divided panel of the Second Circuit Court of Appeals affirmed the *Aereo* decision.  *See WNET Thirteen v. Aereo, Inc.*, 712 F.3d 676 (2d Cir. 2013) ("*Aereo*").  Accordingly, to address Defendants' ongoing infringement outside of the Ninth Circuit, Plaintiffs are required to bring this action.

7.      FilmOnX is currently streaming broadcast content in this Circuit -- such that people in the District of Columbia and surrounding area can view the same broadcast content as other who watch that content on their television sets or through other distribution channels authorized by Plaintiffs.  The District Court in California already has held that this conduct is infringing and causes immediate and irreparable harm in a variety of ways.  *See* <u>Exhibit A</u>.

8.      Plaintiffs ask this Court to reach the same conclusion and to preliminarily and permanently enjoin Defendants' unlawful conduct.

## JURISDICTION AND VENUE

9.      This is a civil action seeking injunctive relief and damages for copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.*

10.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

11.     This Court has personal jurisdiction over FilmOnX, LLC, FilmOn.TV Networks, Inc., Filmon.TV, Inc., FilmOn.com, Inc., and Alkiviades David because they engage in copyright infringement in Washington, D.C. by retransmitting, without authorization, Plaintiffs' broadcast network signals and copyrighted programming to FilmOnX users and subscribers located in the Washington, D.C. area.  Further, Defendants' representative, Alkiviades David, has sworn under oath that all equipment, servers, and technology the Defendants use to capture Plaintiffs' signals and transmit them to FilmOnX users and subscribers in a particular city are located within that city.  Moreover, because the FilmOnX service is a commercial service, Defendants are profiting from Washington, D.C. users and subscribers.

12.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(a) because, *inter alia*, a substantial part of the acts of infringement complained of herein occurs in this District.

**THE PARTIES**

13.     Plaintiff Fox Broadcasting Company is a Delaware corporation with its principal place of business at 10201 West Pico Blvd., Los Angeles, California.

Fox Broadcasting Company operates the Fox network, a national broadcast television network (the "Fox Network").

14.    Plaintiff Twentieth Century Fox Film Corp. is a Delaware corporation with its principal place of business at 10201 West Pico Blvd., Los Angeles, California.  Twentieth Century Fox owns copyrights in certain original primetime television programs broadcast on the Fox Network and distributed via other media in the United States and around the world.

15.    Plaintiff Fox Television Stations, Inc. ("FTS"), a Delaware corporation, owns and operates numerous local broadcast television stations that broadcast television programming, including programming of the Fox Network, over-the-air to numerous localities throughout the United States, including WTTG in Washington, D.C., which broadcasts the Fox Network to viewers over-the-air on channel 5 in the Washington, D.C. market.  The FCC has licensed FTS to operate WTTG (among other television stations).  FTS is actively engaged, among other things, in the production and distribution of television programs and other copyrighted works, including local news programming.  Cable systems, satellite services and other multichannel video programming distributors also make retransmissions of WTTG television broadcasts available to their subscribers upon negotiating the right to do so under Section 325(b) of the Communications Act, 47 U.S.C. § 325(b).

16.     Plaintiff NBC Subsidiary (WRC-TV) LLC ("WRC") is a Delaware limited liability company with its principal place of business at 4001 Nebraska Avenue, NW, Washington, D.C.  WRC owns and operates the television station WRC-TV, which is an FCC-licensed broadcast station that broadcasts to viewers over-the-air on channel 4 in the Washington, D.C. market.  WRC-TV is affiliated with the NBC Television Network, a national broadcast network.  WRC is actively engaged, among other things, in the production and distribution of television programs and other copyrighted works, including local news programming.  Cable systems, satellite services and other multichannel video programming distributors also make retransmissions of WRC-TV television broadcasts available to their subscribers upon negotiating for the right to do so under Section 325 of the Communications Act, 47 U.S.C. § 325.

17.     Plaintiff NBC Studios LLC ("NBC Studios") is a Delaware limited liability company with its principal place of business at 100 Universal City Plaza, Universal City, California.  NBC Studios is actively engaged in the production and licensed distribution of television programs, including programs that are transmitted to numerous broadcast stations in the United States affiliated with the NBC Television Network and distributed elsewhere in the world.

18.     Plaintiff Universal Network Television LLC ("UNT") is a Delaware limited liability company with its principal place of business at 100 Universal City

Plaza, Universal City, California.  UNT is actively engaged in the production and licensed distribution of television programs, including programs that are transmitted to numerous broadcast stations in the United States affiliated with the NBC Television Network and distributed elsewhere in the world.

19.    Plaintiff Open 4 Business Productions LLC ("O4B") is a Delaware limited liability company with its principal place of business at 100 Universal City Plaza, Universal City, California.  O4B is actively engaged in the production and licensed distribution of television programs, including programs that are transmitted to numerous broadcast stations in the United States affiliated with the NBC Television Network and distributed elsewhere in the world.

20.    Plaintiff Telemundo Network Group LLC ("Telemundo") is a Delaware limited liability company with its principal place of business at 2290 West 8th Avenue, Hialeah, Florida.  Telemundo is, among other things, actively engaged in the production and licensed distribution of Spanish-language television programs, including programs that are transmitted to numerous broadcast stations in the United States affiliated with the Telemundo Network, a broadcast network, and distributed elsewhere in the world.

21.    Plaintiff American Broadcasting Companies, Inc. ("ABC") is a Delaware corporation with its principal place of business at 77 West 66th Street, New York, New York, and does business as the ABC Television Network.  ABC

is actively engaged in the production and distribution of television programs and other copyrighted works, including programs ABC transmits to numerous broadcast television stations that it owns as well as other stations that are affiliated with its ABC Television Network and with other networks, in the United States. ABC grants these stations the right to broadcast programming within their communities of license.  ABC is a wholly-owned, indirect subsidiary of plaintiff Disney Enterprises, Inc.

22.     Plaintiff Disney Enterprises, Inc. ("DEI") is a Delaware corporation with its principal place of business at 500 S. Buena Vista Street, Burbank, California.  DEI is actively engaged in the licensing of its copyrighted properties, and certain of its affiliates are engaged in the worldwide production and distribution of copyrighted entertainment products, including programs that television broadcast stations and other media outlets transmit or retransmit to the public.

23.     Plaintiff Allbritton Communications Company ("Allbritton") is a Delaware corporation with its principal place of business at 1000 Wilson Boulevard, Suite 2700, Arlington, Virginia.  Allbritton owns and operates the television station WJLA-TV, which is an FCC-licensed broadcast station that broadcasts to viewers over-the-air on channel 7 in the Washington, D.C. market. WJLA-TV is affiliated with the ABC Television Network.  Allbritton is actively

engaged, among other things, in the production and distribution of television programming and other copyrighted works, including local news programming. Cable systems, satellite services and other multichannel video programming distributors also make retransmissions of WJLA-TV television broadcasts available to their subscribers upon negotiating for the right to do so under Section 325 of the Communications Act, 47 U.S.C. § 325.

24.    Plaintiff CBS Broadcasting Inc. ("CBS") is a New York corporation with its principal place of business at 51 West 52nd Street, New York, New York. CBS is actively engaged in the production and distribution of television programs and other copyrighted works, including programs CBS transmits to numerous broadcast television stations that it owns as well as other stations in the United States that are affiliated with its CBS Television Network.  CBS grants these stations the right to broadcast programming within their communities of license.

25.    Plaintiff CBS Studios Inc. ("CBS Studios") is a Delaware corporation with its principal place of business at 51 West 52nd Street, New York, New York. CBS Studios is actively engaged in the worldwide production and distribution of copyrighted entertainment products, including programs that television broadcast stations and other media outlets transmit or retransmit to the public.

26.    Plaintiff Gannett Co., Inc. ("Gannett") is a Delaware corporation with its principal place of business at 7950 Jones Branch Drive, McLean, Virginia.

Gannett's wholly owned subsidiary, Detroit Free Press, Inc. owns and operates the television station WUSA, which is an FCC-licensed broadcast station that broadcasts to viewers over-the-air on channel 9 in the Washington, D.C. market. WUSA is affiliated with the CBS Television Network.  Gannett is actively engaged, among other things, in the production and distribution of television programming and other copyrighted works, including local news programming. Cable systems, satellite services and other multichannel video programming distributors also make retransmissions of WUSA television broadcasts available to their subscribers upon negotiating for the right to do so under Section 325 of the Communications Act, 47 U.S.C. § 325.

27.     On information and belief, Defendant FilmOn X, LLC (f/k/a Aereokiller LLC) is a Delaware limited liability company that does business in, among other locations throughout the United States, Washington, D.C.  Plaintiffs are further informed and believe that FilmOn X, LLC's business address is 400 E. 58th Street, Apt. 8B, New York, New York.

28.     On information and belief, Defendant FilmOn.TV, Inc. is a Delaware corporation that does business in, among other locations throughout the United States, Washington, D.C.  Plaintiffs are further informed and believe that FilmOn.TV, Inc.'s business address is 301 N. Canon Drive, Beverly Hills, California.

29.     On information and belief, Defendant FilmOn.TV Networks, Inc. is a Delaware corporation that does business in, among other locations throughout the United States, Washington, D.C.  Plaintiffs are further informed and believe that FilmOn.TV Networks, Inc.'s business address is 301 N. Canon Drive, Beverly Hills, California.

30.     On information and belief, Defendant FilmOn.com, Inc. is a Delaware corporation that does business in, among other locations throughout the United States, Washington, D.C.  Plaintiffs are further informed and believe that FilmOn.com, Inc.'s business address is 301 N. Canon Drive, Beverly Hills, California.

31.     On information and belief, Defendant Alkiviades David ("David") is an individual who resides in Beverly Hills, California.  On information and belief, David is the founder, Chief Executive Officer, owner, and/or majority shareholder of Defendants FilmOn.com, Inc., FilmOn.TV Networks, Inc., and FilmOn.TV, Inc.

32.     David is personally liable for the acts of infringement under the Copyright Act alleged herein.  On information and belief, there is a substantial and continuing connection between David and the Corporate Defendants with respect to the infringing acts, wherein David controls the infringing conduct, and has a direct financial interest in the infringing activity.  Upon information and belief, David is the Chief Executive Officer, director, and/or majority shareholder of

Defendants, FilmOn.com, Inc., FilmOn.TV Networks, Inc., and FilmOn.TV, Inc. (collectively, the "Corporate Defendants").  Upon information and belief, David directed one or more of the Corporate Defendants to commence its infringing conduct.

33.     To the extent one or more of the Defendants claims another Defendant is responsible for the infringement alleged herein, Plaintiffs allege such Defendant is subject to alter ego liability for the acts of infringement alleged herein.  First, there is a unity of interest and ownership among the Defendants such that one or more of the Defendants is an alter ego of the other Defendants.  One or more of the Defendants exerts domination and control over one or more of the other Defendants.  Indeed, on information and belief, Alkiviades "Alki" David is the officer, director and major shareholder of three of the Defendants:  FilmOn.TV Networks, Inc., FilmOn.TV, Inc., and FilmOn.com, Inc.  He directed one or more of the Defendants to commence its infringing conduct and he has, on information and belief, the decision-making power to start, stop, or continue the infringing conduct.  Moreover, one or more of the Defendants is used as a mere shell for one or more of the other Defendants' actions.  Additionally, the Defendants are inadequately capitalized, and one or more of the Defendants uses the same office space and shares or has inherited the employees of another Defendant.  Second, observance of the corporate form would lead to an inequitable result because it

would sanction the Defendants' unauthorized infringement of Plaintiffs' copyrights and allow another Defendant to avoid liability.

## NATURE OF DEFENDANTS' UNLAWFUL CONDUCT

34.     Defendants collectively operate an Internet and mobile streaming service, originally available over the Internet at www.barrydriller.com, later relocated to www.filmonx.com, and now available on www.filmon.com, and via web applications and Smartphone applications, which captures and streams Plaintiffs' live broadcast television programming over the Internet or via apps to members of the public on their web-enabled devices, iPhones, Androids, Smartphones, tablets and iPads.  Defendants do business in Washington, D.C., among other locations throughout the United States.

35.     Defendants claim to utilize tiny television antennas in data centers, along with data storage facilities and Internet connections to bring consumers the FilmOnX service.  According to public statements by Defendants, the FilmOnX service functions by capturing the signals of television broadcast stations in their local markets and then streaming the signals over the Internet to customers on their wireless and other Internet-enabled devices in order to watch those television broadcast programs.

36.     Through this commercial service, FilmOnX provides users and subscribers the ability to receive whichever broadcast station the user or subscriber

chooses, ultimately having the ability to watch live broadcast television programming over the Internet using any device.  In other words, through the FilmOnX service, Defendants built a business founded on offering its users and subscribers a "live" Internet and mobile streaming service based on Plaintiffs' television programming, but without authorization or license from Plaintiffs.

37.    Plaintiffs have never granted Defendants any license to Plaintiffs' copyrighted programming.  Defendants' service is available in multiple locations, including Washington, D.C., and on multiple Internet-enabled and mobile devices, and allows users to access local television stations associated with the Fox, NBC, ABC, and CBS networks -- and Plaintiffs' copyrighted programming on those stations -- using Defendants' service.

38.    Defendants charge fees to their subscribers to receive unauthorized transmissions of network and local programming in High Definition ("HD") to be watched live, and charge fees to copy Plaintiffs' programming for later viewing through a copying and storage service Defendants provide and refer to as a "Remote DVR."  Defendants also retransmit Plaintiffs' broadcasts live in Standard Definition ("SD") and, while Defendants do not charge users or subscribers to watch SD retransmissions, Defendants capitalize on and profit from such retransmissions though various forms of advertising.

## FIRST CLAIM FOR RELIEF

## (Copyright Infringement)

39.     Plaintiffs incorporate by reference paragraphs 1 through 36 as if set forth herein.

40.     Plaintiffs, together with their affiliates, are actively engaged in the production, acquisition, and distribution of copyrighted entertainment products, including programs that television broadcast stations and other media outlets transmit, retransmit, or otherwise distribute to the public.

41.     Plaintiffs (and/or their parents, subsidiaries or affiliates) are the legal or beneficial owners of the copyrights in numerous programs, such as *Glee* (FOX), *The Office* (NBC), *Grey's Anatomy* (ABC), and *Elementary* (CBS), and local news programming (FTS, WRC, Telemundo, Allbritton, and Gannett) that have been, and/or will be, exhibited over broadcast television stations in Washington, D.C. and other broadcast markets nationwide and through a variety of other media outlets.  A non-exhaustive list identifying representative samples of such television programs is set forth in Exhibit B ("TV Program(s)").

42.     Each such TV Program is an original audiovisual work that has been or will be fixed in a tangible medium of expression and constitutes copyrightable subject matter within the meaning of section 102 of the Copyright Act, 17 U.S.C.

§ 102.  Each such TV Program has been or will be registered with the United States Copyright Office or is the subject of an application for registration filed with the Copyright Office.  Representative examples of the copyright registration certificates or other documentation demonstrating compliance with Sections 408(f) and 411 of the Copyright Act, 17 U.S.C. §§ 408(f) & 411, and implementing Copyright Office regulations, corresponding to the TV Programs identified in Exhibit B, also are attached as part of Exhibit B.

43.    Each TV Program has been created or licensed for exhibition by Plaintiffs (and/or their parents, subsidiaries or affiliates), the transmissions of which the Defendants are streaming without authorization as part of the FilmOnX service.  On information and belief, Defendants have streamed or will stream without authorization, as part of the FilmOnX service, each TV Program and numerous other works in which Plaintiffs own copyrights.

44.    Under Section 106 of the Copyright Act, 17 U.S.C. § 106, Plaintiffs (and/or their parents, subsidiaries or affiliates) own the exclusive rights, among others, to reproduce copies of their copyrighted works, to distribute copies to the public of their copyrighted works, to publicly perform their copyrighted works, to publicly display their copyrighted works, and to make derivative works based upon their copyrighted works.

45.    Under Section 106 of the Copyright Act, 17 U.S.C. § 106, Plaintiffs (and/or their parents, subsidiaries or affiliates) also own the exclusive rights to authorize others to exercise the rights set forth in the preceding paragraph 42.

46.    Neither Plaintiffs nor any other person authorized by Plaintiffs have granted any license, permission or authorization to Defendants to exercise any of the rights set forth in paragraphs 42 and 43 or to authorize others to exercise such rights, respecting the TV Programs or any other works in which Plaintiffs (and/or their parents, subsidiaries or affiliates) own copyrights.

47.    In offering the FilmOnX service, Defendants have exercised and will exercise (or have authorized or will authorize others to exercise) one or more of Plaintiffs' exclusive rights set forth in paragraphs 42 and 43 respecting the TV Programs and other works in which Plaintiffs (and/or their parents, subsidiaries or affiliates) own copyrights.

48.    As a result, Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated or measured in money.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a preliminary and permanent injunction prohibiting infringement of Plaintiffs' copyrights and exclusive rights under copyright.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1.      For a preliminary and permanent injunction requiring that Defendants and Defendants' successors and assigns, parents, subsidiaries, affiliates, suppliers, officers, agents, servants, employees, and attorneys, and all those persons in active concert, participation or privity with them cease any and all infringement of Plaintiffs' rights under Section 106 of the Copyright Act in their copyrighted programming, including by retransmission of broadcasts of such programming over FilmOnX or any other service.

2.      For Plaintiffs' costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

3.      For impounding and disposition of infringing articles under 17 U.S.C. § 503.

4.      For such monetary relief, including statutory damages and/or actual damages, and pre- and post-judgment interest thereon, as the Court and/or a jury determine are appropriate and should be awarded against Defendants.

5.      For pre- and post-judgment interest on any monetary award made part of the judgment against Defendants.

6.      For such other and further relief as the Court may deem just and proper.

//

//

Dated:  September 22, 2014                    Respectfully Submitted,


_____/s/ Paul Smith_____
Paul Smith (D.C. Bar No. 358870)
psmith@jenner.com
JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC  20001-4412
Telephone:  (202) 639-6000
Facsimile:   (202) 639-6066

Richard L. Stone*
rstone@jenner.com
Julie A. Shepard*
jshepard@jenner.com
Amy Gallegos*
agallegos@jenner.com
JENNER & BLOCK LLP
633 West 5th Street, Suite 3600
Los Angeles, CA  90071
Telephone:  (213) 239-5100
Facsimile:   (213) 239-5199

*Attorneys for Plaintiffs Fox Television
Stations, Inc., Twentieth Century Fox Film
Corporation, and Fox Broadcasting
Company*

_____/s/ Robert Garrett_____
Robert Alan Garrett (D.C. Bar No. 239681)
Hadrian R. Katz (D.C. Bar No. 931162)
Christopher Scott Morrow (D.C. Bar
   No. 491925)
Murad Hussain (D.C. Bar No. 999278)
ARNOLD & PORTER LLP
555 12th St., NW
Washington, DC  20004
Telephone:   (202) 942-5444
Facsimile:   (202) 942-5999

James S. Blackburn*
james.blackburn@aporter.com
John C. Ulin*
john.ulin@aporter.com
ARNOLD & PORTER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017
Telephone:   (213) 243-4000
Facsimile:   (213) 243-4199

*Attorneys for Plaintiffs NBC Subsidiary
(WRC-TV) LLC, NBC Studios LLC,
Universal Network Television LLC, Open 4
Business Productions LLC, Telemundo
Network Group LLC, American
Broadcasting Companies, Inc., Disney
Enterprises, Inc., Allbritton
Communications Company, CBS
Broadcasting Inc., CBS Studios Inc., and
Gannett Co., Inc.*

*Pro hac vice

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FOX TELEVISION STATIONS, INC., et al.

*Plaintiffs/Counter-Defendants,*

v.        Civil No. 1:13-cv-00758 (RMC)

FILMON X, LLC, et al.

*Defendants/Counter-Plaintiffs.*

## THE FILMON ENTITY DEFENDANTS' ANSWER TO SECOND AMENDED

## COMPLAINT

Defendants FilmOn X, LLC, formerly Aereokiller LLC ("FilmOn X"), FilmOn.TV, Inc.,

FilmOn.TV Networks, Inc., and FilmOn.com, Inc. (collectively, "Defendants") hereby answer

Plaintiffs Fox Television Stations, Inc., Twentieth Century Fox Film Corporation, Fox

Broadcasting Company, NBC Subsidiary (WRC-TV) LLC, NBC Studios LLC, Universal

Network Television LLC, Open 4 Business Productions LLC, Telemundo Network Group LLC,

American Broadcasting Companies, Inc., Disney Enterprises, Inc., Allbritton Communications

Company, CBS Broadcasting Inc., CBS Studios Inc., and Gannett Co., Inc. (collectively,

"Plaintiffs'") Second Amended Complaint ("SAC"), by paragraph, as follows:

1.      Deny.

2.      In answering Paragraph 2, Defendants state that it contains arguments, opinions

and legal conclusions that require no response.  Defendants otherwise deny the allegations of

Paragraph 2.

3.      In answering Paragraph 3, Defendants state that it contains arguments, opinions

and legal conclusions that require no response.  Defendants otherwise deny the allegations of Paragraph 3.

4.      In answering Paragraph 4, Defendants state that it contains arguments, opinions and legal conclusions that require no response.  Defendants otherwise deny the allegations of Paragraph 4.

5.      In answering Paragraph 5, Defendants admit that "[t]he district court in the California Actions limited the injunction to the Ninth Circuit" and "declined to enjoin preliminarily Defendants' activities in all circuits other than the Ninth Circuit."  Defendants otherwise deny all other allegations of Paragraph 5.

6.      In answering Paragraph 6, Defendants admit that "Plaintiffs in *Aereo* appealed the district court's decision" and that "on April 1, 2013, a…panel of the Second Circuit Court of Appeals affirmed the *Aereo* decision. *See WNET Thirteen v. Aereo, Inc.*, 712 F.3d 676 (2d Cir. Apr. 1, 2013) ("Aereo")."  Defendants otherwise deny all allegations of Paragraph 6.

7.      In answering Paragraph 7, Defendants state that it contains arguments, opinions and legal conclusions that require no response.  Defendants otherwise deny the allegations of Paragraph 7.

8.      Contains no allegation that requires an admission or denial.

9.      Admit that the Court has jurisdiction.

10.     Admit that the Court has jurisdiction.

11.     Deny.

12.     Defendants are without sufficient knowledge or information to form a belief as to the truth of this paragraph.

13.     Defendants are without sufficient knowledge or information to form a belief as to

2

the truth of this paragraph.

14.     Defendants are without sufficient knowledge or information to form a belief as to the truth of this paragraph.

15.     Defendants are without sufficient knowledge or information to form a belief as to the truth of this paragraph.

16.     Defendants are without sufficient knowledge or information to form a belief as to the truth of this paragraph.

17.     Defendants are without sufficient knowledge or information to form a belief as to the truth of this paragraph.

18.     Defendants are without sufficient knowledge or information to form a belief as to the truth of this paragraph.

19.     Defendants are without sufficient knowledge or information to form a belief as to the truth of this paragraph.

20.     Defendants are without sufficient knowledge or information to form a belief as to the truth of this paragraph.

21.     Defendants are without sufficient knowledge or information to form a belief as to the truth of this paragraph.

22.     Defendants are without sufficient knowledge or information to form a belief as to the truth of this paragraph.

23.     Defendants are without sufficient knowledge or information to form a belief as to the truth of this paragraph.

24.     Defendants are without sufficient knowledge or information to form a belief as to the truth of this paragraph.

3

25.     Defendants are without sufficient knowledge or information to form a belief as to the truth of this paragraph.

26.     Defendants are without sufficient knowledge or information to form a belief as to the truth of this paragraph.

27.     In answering Paragraph 27, Defendants admit that "Defendant FilmOn X is a Delaware limited liability corporation." Defendants otherwise deny all allegations of Paragraph 27.

28.     In answering Paragraph 28, Defendants admit that "Defendant FilmOn.TV, Inc. is a Delaware corporation." Defendants otherwise deny all allegations of Paragraph 28.

29.     In answering Paragraph 29, Defendants admit that "Defendant FilmOn.TV Networks, Inc. is a Delaware corporation" and "FilmOn.TV Networks, Inc.'s business address is 301 N. Canon Drive, Beverly Hills, California." Defendants otherwise deny all allegations of Paragraph 29.

30.     In answering Paragraph 30, Defendants admit that "Defendant FilmOn.com, Inc. is a Delaware corporation." Defendants otherwise deny all allegations of Paragraph 30.

31.     Admit that defendant Alkiviades David is a resident of Beverly Hills, California. Otherwise disputed.

32.     Deny.

33.     Deny.

34.     Deny.

35.     In answering Paragraph 35, Defendants state that it contains arguments, opinions and legal conclusions that require no response. Defendants otherwise deny the allegations of Paragraph 35.

36.     In answering Paragraph 36, Defendants state that it contains arguments, opinions and legal conclusions that require no response.  Defendants otherwise deny the allegations of Paragraph 36.

37.     In answering Paragraph 37, Defendants state that it contains arguments, opinions and legal conclusions that require no response.  Defendants otherwise deny the allegations of Paragraph 37.

38.     Deny.

39.     Defendants incorporate paragraphs 1-38 as if set forth fully herein.

40.     Defendants are without sufficient knowledge or information to form a belief as to the truth of this paragraph.

41.     Defendants are without sufficient knowledge or information to form a belief as to the truth of this paragraph.

42.     Defendants are without sufficient knowledge or information to form a belief as to the truth of this paragraph.

43.     Defendants are without sufficient knowledge or information to form a belief as to the truth of this paragraph.

44.     Defendants are without sufficient knowledge or information to form a belief as to the truth of this paragraph.

45.     Defendants are without sufficient knowledge or information to form a belief as to the truth of this paragraph.

46.     Defendants admit that Plaintiffs have not formally granted Defendant any non-statutory license to Plaintiffs' copyrighted programming.  However, Defendant is entitled to a statutory license under 17 U.S.C. Section 111 (hereinafter, "Section 111"), and therefore is

entitled to retransmit Plaintiffs' broadcast programming as a cable system. *See* 17 U.S.C. § 111. Defendant denies the remainder of the paragraph.

47.     In answering Paragraph 47, Defendants state that it contains arguments, opinions and legal conclusions that require no response.   Defendants otherwise deny the allegations of Paragraph 47.

48.     Deny.

## AFFIRMATIVE DEFENSES

Pursuant to Rule 8(c) of the Federal Rules of Civil Procedure, Defendants further plead the following separate and additional defenses. By pleading these defenses, Defendants do not in any way agree or concede that it has the burden of proof or persuasion on any of these issues. Defendants reserve the right to assert such additional affirmative defenses as discovery indicates are proper.

### FIRST AFFIRMATIVE DEFENSE

#### (Failure to State A Claim)

The SAC fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

#### (Comparative Fault)

The SAC is barred, in whole or in part, based on the doctrine of comparative fault.

### THIRD AFFIRMATIVE DEFENSE

#### (Failure to Mitigate Damages)

The SAC is barred, in whole or in part, based on Plaintiffs' failure to mitigate damages.

## FOURTH AFFIRMATIVE DEFENSE

### (Estoppel)

The SAC is barred, in whole or in part, based on the principles of estoppels.

## FIFTH AFFIRMATIVE DEFENSE

### (Fair Use)

The SAC is barred, in whole or in part, by the doctrine of fair use.

## SIXTH AFFIRMATIVE DEFENSE

### (Laches)

The SAC is barred, in whole or in part, by the doctrine of laches.

## SEVENTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

The SAC is barred, in whole or in part, by the doctrine of unclean hands.

## EIGHTH AFFIRMATIVE DEFENSE

### (Waiver)

The SAC is barred, in whole or in part, by the doctrine of waiver.

## NINTH AFFIRMATIVE DEFENSE

### (First Amendment)

The SAC is barred, in whole or in part, because application of the Copyright Act to impose liability in this case would violate the First Amendment to the United States Constitution.

## TENTH AFFIRMATIVE DEFENSE

### (Copyright Abandonment)

The SAC is barred, in whole or in part, to the extent any Plaintiffs have forfeited or abandoned copyright or failed to comply with all necessary formalities.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Innocent Infringers)

The SAC is barred, in whole or in part, to the extent any persons, based on whose behavior seek to hold Defendants liable, are innocent infringers.

## TWELFTH AFFIRMATIVE DEFENSE

### (Supervening Events)

The SAC is barred, in whole or in part, because any alleged injury or loss sustained by Plaintiffs was caused by intervening or supervening events over which Defendants had and have no control.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Responsibility of Third Parties)

The SAC is barred, in whole or in part, because any alleged injury or loss sustained by Plaintiffs was the fault and responsibility of third parties over whom Defendants had and have no control, and for whose actions Defendants had and have no responsibility.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Express or Implied License)

The SAC is barred, in whole or in part, because Plaintiffs have granted an express or implied license in some or all of their copyrighted works to Defendants.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Section 111 Compulsory License)

To the extent that any of the acts alleged in the SAC are attributed to Defendants, the SAC is barred, in whole or in part, because retransmission of Plaintiffs' copyrighted works is authorized under the compulsory license scheme set forth under Section 111 of the Copyright Act. *See* 17 U.S.C. § 111.

## ADDITIONAL AFFIRMATIVE DEFENSES

### (Subsequently Discovered Defense)

Defendant has insufficient knowledge or information upon which to form a belief as to whether it may have additional affirmative defenses, and reserves the right to assert additional defenses if and as it learns of facts that may support such defenses.

September 22, 2014                          Respectfully submitted,

By: /s/ Ryan G. Baker
    Ryan G. Baker
    BAKER MARQUART LLP
    10990 Wilshire Blvd., Fourth Floor
    Los Angeles, California 90024
    (424) 652-7811 (telephone)
    (424) 652-7850 (facsimile)
    Cal. State Bar No. 200344


    /s/Kerry J. Davidson
    LAW OFFICE OF KERRY J. DAVIDSON
    1738 Elton Road, Suite 113
    Silver Spring, Maryland 20903
    (301) 586-9516 (telephone)
    (866) 920-1535(facsimile)
    Bar No.: 456431

*Attorneys for Defendants and Counterclaim Plaintiffs FilmOn X, LLC, FilmOn.TV, Inc., FilmOn.TV Networks, Inc., FilmOn.com, Inc., and Alkiviades David*

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FOX TELEVISION STATIONS, INC., et al.

*Plaintiffs/Counter-Defendants,*

v.       Civil No. 1:13-cv-00758 (RMC)

FILMON X, LLC, et al.

*Defendants/Counter-Plaintiffs.*

## DEFENDANT ALKIVIADES DAVID'S ANSWER TO SECOND AMENDED

## COMPLAINT

Defendant Alkiviades David (collectively, "Defendant") hereby answer Plaintiffs Fox
Television Stations, Inc., Twentieth Century Fox Film Corporation, Fox Broadcasting Company,
NBC Subsidiary (WRC-TV) LLC, NBC Studios LLC, Universal Network Television LLC, Open
4 Business Productions LLC, Telemundo Network Group LLC, American Broadcasting
Companies, Inc., Disney Enterprises, Inc., Allbritton Communications Company, CBS
Broadcasting Inc., CBS Studios Inc., and Gannett Co., Inc. (collectively, "Plaintiffs'") Second
Amended Complaint ("SAC"), by paragraph, as follows:

1.      Deny.

2.      In answering Paragraph 2, Defendant states that it contains arguments, opinions
and legal conclusions that require no response.  Defendant otherwise denies the allegations of
Paragraph 2.

3.      In answering Paragraph 3, Defendant states that it contains arguments, opinions
and legal conclusions that require no response.  Defendant otherwise denies the allegations of

Paragraph 3.

4.      In answering Paragraph 4, Defendant states that it contains arguments, opinions and legal conclusions that require no response.  Defendant otherwise denies the allegations of Paragraph 4.

5.      In answering Paragraph 5, Defendant admits that "[t]he district court in the California Actions limited the injunction to the Ninth Circuit" and "declined to enjoin preliminarily Defendant's activities in all circuits other than the Ninth Circuit."  Defendant otherwise denies all other allegations of Paragraph 5.

6.      In answering Paragraph 6, Defendant admits that "Plaintiffs in *Aereo* appealed the district court's decision" and that "on April 1, 2013, a…panel of the Second Circuit Court of Appeals affirmed the *Aereo* decision.  *See WNET Thirteen v. Aereo, Inc.*, 712 F.3d 676 (2d Cir. Apr. 1, 2013) ("Aereo")."  Defendant otherwise denies all allegations of Paragraph 6.

7.      In answering Paragraph 7, Defendant states that it contains arguments, opinions and legal conclusions that require no response.  Defendant otherwise denies the allegations of Paragraph 7.

8.      Contains no allegation that requires an admission or denial.

9.      Admit that the Court has jurisdiction.

10.     Admit that the Court has jurisdiction.

11.     Deny.

12.     Defendant is without sufficient knowledge or information to form a belief as to the truth of this paragraph.

13.     Defendant is without sufficient knowledge or information to form a belief as to the truth of this paragraph.

14.     Defendant is without sufficient knowledge or information to form a belief as to the truth of this paragraph.

15.     Defendant is without sufficient knowledge or information to form a belief as to the truth of this paragraph.

16.     Defendant is without sufficient knowledge or information to form a belief as to the truth of this paragraph.

17.     Defendant is without sufficient knowledge or information to form a belief as to the truth of this paragraph.

18.     Defendant is without sufficient knowledge or information to form a belief as to the truth of this paragraph.

19.     Defendant is without sufficient knowledge or information to form a belief as to the truth of this paragraph.

20.     Defendant is without sufficient knowledge or information to form a belief as to the truth of this paragraph.

21.     Defendant is without sufficient knowledge or information to form a belief as to the truth of this paragraph.

22.     Defendant is without sufficient knowledge or information to form a belief as to the truth of this paragraph.

23.     Defendant is without sufficient knowledge or information to form a belief as to the truth of this paragraph.

24.     Defendant is without sufficient knowledge or information to form a belief as to the truth of this paragraph.

25.     Defendant is without sufficient knowledge or information to form a belief as to

the truth of this paragraph.

26.     Defendant is without sufficient knowledge or information to form a belief as to the truth of this paragraph.

27.     In answering Paragraph 27, Defendant admits that "Defendant FilmOn X is a Delaware limited liability corporation."  Defendant otherwise denies all allegations of Paragraph 27.

28.     In answering Paragraph 28, Defendant admits that "Defendant FilmOn.TV, Inc. is a Delaware corporation."  Defendant otherwise denies all allegations of Paragraph 28.

29.     In answering Paragraph 29, Defendant admits that "Defendant FilmOn.TV Networks, Inc. is a Delaware corporation" and "FilmOn.TV Networks, Inc.'s business address is 301 N. Canon Drive, Beverly Hills, California." Defendant otherwise denies all allegations of Paragraph 29.

30.     In answering Paragraph 30, Defendant admits that "Defendant FilmOn.com, Inc. is a Delaware corporation."  Defendant otherwise denies all allegations of Paragraph 30.

31.     Admit that Defendant is a resident of Beverly Hills, California.  Otherwise disputed.

32.     Deny.

33.     Deny.

34.     Deny.

35.     In answering Paragraph 35, Defendant states that it contains arguments, opinions and legal conclusions that require no response.  Defendant otherwise denies the allegations of Paragraph 35.

36.     In answering Paragraph 36, Defendant states that it contains arguments, opinions

and legal conclusions that require no response.  Defendant otherwise denies the allegations of Paragraph 36.

37.    In answering Paragraph 37, Defendant states that it contains arguments, opinions and legal conclusions that require no response.  Defendant otherwise denies the allegations of Paragraph 37.

38.    Deny.

39.    Defendant incorporates paragraphs 1-38 as if set forth fully herein.

40.    Defendant is without sufficient knowledge or information to form a belief as to the truth of this paragraph.

41.    Defendant is without sufficient knowledge or information to form a belief as to the truth of this paragraph.

42.    Defendant is without sufficient knowledge or information to form a belief as to the truth of this paragraph.

43.    Defendant is without sufficient knowledge or information to form a belief as to the truth of this paragraph.

44.    Defendant is without sufficient knowledge or information to form a belief as to the truth of this paragraph.

45.    Defendant is without sufficient knowledge or information to form a belief as to the truth of this paragraph.

46.    Defendant admits that Plaintiffs have not formally granted Defendant any non-statutory license to Plaintiffs' copyrighted programming.  Defendant denies the remainder of the paragraph.

47.    In answering Paragraph 47, Defendant states that it contains arguments, opinions

and legal conclusions that require no response.  Defendant otherwise denies the allegations of Paragraph 47.

48.    Deny.

## AFFIRMATIVE DEFENSES

Pursuant to Rule 8(c) of the Federal Rules of Civil Procedure, Defendant further pleads the following separate and additional defenses. By pleading these defenses, Defendant does not in any way agree or concede that it has the burden of proof or persuasion on any of these issues. Defendant reserves the right to assert such additional affirmative defenses as discovery indicates are proper.

### FIRST AFFIRMATIVE DEFENSE

**(Failure to State A Claim)**

The SAC fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

**(Comparative Fault)**

The SAC is barred, in whole or in part, based on the doctrine of comparative fault.

### THIRD AFFIRMATIVE DEFENSE

**(Failure to Mitigate Damages)**

The SAC is barred, in whole or in part, based on Plaintiffs' failure to mitigate damages.

### FOURTH AFFIRMATIVE DEFENSE

**(Estoppel)**

The SAC is barred, in whole or in part, based on the principles of estoppels.

## FIFTH AFFIRMATIVE DEFENSE

### (Fair Use)

The SAC is barred, in whole or in part, by the doctrine of fair use.

## SIXTH AFFIRMATIVE DEFENSE

### (Laches)

The SAC is barred, in whole or in part, by the doctrine of laches.

## SEVENTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

The SAC is barred, in whole or in part, by the doctrine of unclean hands.

## EIGHTH AFFIRMATIVE DEFENSE

### (Waiver)

The SAC is barred, in whole or in part, by the doctrine of waiver.

## NINTH AFFIRMATIVE DEFENSE

### (First Amendment)

The SAC is barred, in whole or in part, because application of the Copyright Act to impose liability in this case would violate the First Amendment to the United States Constitution.

## TENTH AFFIRMATIVE DEFENSE

### (Copyright Abandonment)

The SAC is barred, in whole or in part, to the extent any Plaintiffs have forfeited or abandoned copyright or failed to comply with all necessary formalities.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Innocent Infringers)

The SAC is barred, in whole or in part, to the extent any persons, based on whose behavior seek to hold Defendants liable, are innocent infringers.

## TWELFTH AFFIRMATIVE DEFENSE

### (Supervening Events)

The SAC is barred, in whole or in part, because any alleged injury or loss sustained by Plaintiffs was caused by intervening or supervening events over which Defendants had and have no control.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Responsibility of Third Parties)

The SAC is barred, in whole or in part, because any alleged injury or loss sustained by Plaintiffs was the fault and responsibility of third parties over whom Defendants had and have no control, and for whose actions Defendants had and have no responsibility.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Express or Implied License)

The SAC is barred, in whole or in part, because Plaintiffs have granted an express or implied license in some or all of their copyrighted works to Defendants.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Section 111 Compulsory License)

Defendant is not engaged in, and has never been engaged in, any retransmission of Plaintiffs' copyrighted works.  To the extent that any of the acts alleged in the SAC are attributed to Defendant, the SAC is barred, in whole or in part, because retransmission of Plaintiffs' copyrighted works is authorized under the compulsory license scheme set forth under Section

111 of the Copyright Act. *See* 17 U.S.C. § 111.

## ADDITIONAL AFFIRMATIVE DEFENSES

### (Subsequently Discovered Defense)

Defendant has insufficient knowledge or information upon which to form a belief as to whether it may have additional affirmative defenses, and reserves the right to assert additional defenses if and as it learns of facts that may support such defenses.

September 22, 2014                          Respectfully submitted,

                                   By: /s/ Ryan G. Baker
                                        Ryan G. Baker
                                        BAKER MARQUART LLP
                                        10990 Wilshire Blvd., Fourth Floor
                                        Los Angeles, California 90024
                                        (424) 652-7811 (telephone)
                                        (424) 652-7850 (facsimile)
                                        Cal. State Bar No. 200344


                                        /s/Kerry J. Davidson
                                        LAW OFFICE OF KERRY J. DAVIDSON
                                        1738 Elton Road, Suite 113
                                        Silver Spring, Maryland 20903
                                        (301) 586-9516 (telephone)
                                        (866) 920-1535(facsimile)
                                        Bar No.: 456431

                                        *Attorneys for Defendants and Counterclaim*
                                        *Plaintiffs FilmOn X, LLC, FilmOn.TV, Inc.,*
                                        *FilmOn.TV Networks, Inc., FilmOn.com, Inc.,*
                                        *and Alkiviades David*

# EXHIBIT D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FOX TELEVISION STATIONS, INC., et al.

      *Plaintiffs/Counter-Defendants,*

      v.

FILMON X, LLC, et al.

      *Defendants/Counter-Plaintiffs.*

**CIVIL ACTION NO.** 1:13-cv-00758 (RMC)

**FILMON X, LLC'S, FILMON.TV NETWORKS, INC.'S, FILMON.TV, INC.'S, AND FILMON.COM, INC'S SECOND AMENDED COUNTERCLAIM FOR DECLARATORY JUDGMENT**

## SECOND AMENDED COUNTERCLAIM

Defendants and counterclaimants FilmOn X, LLC (f/k/a Aereokiller LLC), FilmOn.TV Networks, Inc., FilmOn.TV, Inc. and FilmOn.com, Inc. (collectively, "FilmOn X"), by their attorneys, allege against Counterclaim Defendants Fox Television Stations, Inc., Twentieth Century Fox Film Corporation, Fox Broadcasting Company, NBC Subsidiary (WRC-TV) LLC, NBC Studios LLC, Universal Network Television LLC, Open 4 Business Productions LLC, Telemundo Network Group LLC, American Broadcasting Companies, Inc., Disney Enterprises, Inc., Allbritton Communications Company, CBS Broadcasting Inc., CBS Studios Inc., and Gannett Co., Inc. (collectively, "Counterdefendants") as follows:

### INTRODUCTION

1.     For the past several years, the Counterdefendants have advocated in courts around the country that FilmOn X and its competitor, Aereo, Inc. ("Aereo"), are "just like" cable systems, but are unfairly depriving the plaintiff-networks of licensing fees that are paid by traditional cable systems.

2.     For example, in Counterdefendants' memorandum of law in support of their

motion for preliminary injunction in this case they stated that: "FilmOnX provides the same type

of broadcast retransmission service as cable systems (e.g., Comcast) and satellite carriers (e.g.,

DirecTV) — retransmitting broadcasts of copyrighted television programs to unlimited numbers

of subscribers. Like cable and satellite television providers, FilmOnX is publicly performing

broadcast programming, and it must therefore obtain copyright licenses "on pain of liability for

copyright infringement." (Dkt. 27-1, at 2-3.)

     3.     In *American Broadcasting Companies, Inc. v. Aereo, Inc.* ("*Aereo*"), 134 S.Ct.

2498 (2014), the Supreme Court agreed with the plaintiff-networks' advocacy that Aereo (and by

extension FilmOn X) are "cable systems" under the 1976 Copyright Act.  It reasoned that

Aereo's "Watch Now" technology – which is similar to FilmOn X's technology that allows

contemporaneous viewing of live network content (the "FilmOn X Technology") – is equivalent

to the technology the Court previously considered in *Fortnightly* and *Teleprompter* (precisely the

technology the 1976 amendments were intended to reach) and that therefore Aereo must be

covered under the Act. *See id.* at 2506.  The Supreme Court expressly acknowledged at oral

argument that such a finding would also bring Aereo under the rights and obligations contained

in 17 U.S.C. Section 111's compulsory license provisions.  Transcript of Oral Argument at 5,

*Am. Broad. Co., Inc. v. Aereo, Inc.*, 134 S.Ct. 2498 (2014) (No. 13-461).

     4.     Now, based in part on the Supreme Court's ruling in *Aereo*, FilmOn X has

submitted the appropriate documentation for a compulsory performance license in accordance

with 17 U.S.C. Section 111 (hereinafter "Section 111"), and has deposited the fees required

under that provision to the Copyright Office for distribution to copyright owners (including

Counterdefendants) of the programs consumers can watch using the FilmOn X Technology.  As

a result, Counterdefendants can no longer complain they are not being fairly compensated as

copyright owners.  Indeed, they are being compensated exactly as Congress intended.

5.      It would, of course, be fundamentally unfair and illogical to find that FilmOn X is a "cable system" under the Act, but that FilmOn X is not entitled to the protections the Copyright Act affords to all cable systems.  In other words, the benefits and the burdens of cable-company status under the Copyright Act flow together.  Accordingly, and tellingly, the Supreme Court's *Aereo* decision clearly states that the "amendments" (plural) to the 1976 act were intended to address the community antenna (CATV) technology addressed in prior Supreme Court decisions, concluding that, "[g]iven Aereo's overwhelming likeness to the cable companies targeted by the 1976 amendments [plural], this sole technological difference between Aereo and traditional cable companies does not make a critical difference here." *Aereo,* 134 S.Ct. at 2507.  The opinion, when describing the "amendments" at issue, also describes Section 111, as well as Section 101. *See id.* at 2505-06.  As a result, there can be no question that FilmOn X is entitled to a statutory license in accordance with Section 111.  That is what the Supreme Court understood. Accordingly, FilmOn X brings this counterclaim for declaratory relief to obtain a judicial declaration that it qualifies as a "cable system" under Section 111 and is entitled to a compulsory license.

## JURISDICTION AND VENUE

6.      This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, seeking a declaration of rights regarding the parties to this litigation with respect to an actual and justiciable controversy arising under the copyright laws of the United States, 17 U.S.C. § 101 *et seq.*

7.      This Court has exclusive jurisdiction over the copyright subject matter of this action pursuant to the Copyright Act (17 U.S.C. § 101 *et seq.*), 28 U.S.C. §1331, 1338, and the

3

Declaratory Judgment Act (28 U.S.C. § 2201).

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## PARTIES

9.      Counterclaimant FilmOn X, LLC is a Delaware limited liability company.

10.     Counterclaimant FilmOn.com, Inc. ("FilmOn") is a Delaware corporation with its principal place of business at 301 N. Canon Drive, Beverly Hills, California.

11.     Counterclaimant FilmOn.TV Networks, Inc. ("FilmOn") is a Delaware corporation with its principal place of business at 301 N. Canon Drive, Beverly Hills, California.

12.     Counterclaimant FilmOn.TV, Inc. ("FilmOn") is a Delaware corporation with its principal place of business at 301 N. Canon Drive, Beverly Hills, California.

13.     On information and belief, Counterclaim Defendant Fox Broadcasting Company is a Delaware corporation with its principal place of business at 10201 West Pico Blvd., Los Angeles, California. Fox Broadcasting Company operates the Fox network, a national broadcast television network (the "Fox Network").

14.     On information and belief, Counterclaim Defendant Twentieth Century Fox Film Corp. is a Delaware corporation with its principal place of business at 10201 West Pico Blvd., Los Angeles, California. Twentieth Century Fox owns copyrights in certain original primetime television programs broadcast on the Fox Network and distributed via other media in the United States and around the world.

15.     On information and belief, Counterclaim Defendant Fox Television Stations, Inc. ("FTS"), a Delaware corporation, owns and operates numerous local broadcast television stations that broadcast television programming, including the Fox Network, over-the-air to numerous localities throughout the United States, including WTTG in Washington, D.C., which broadcasts

4

the Fox Network to viewers over-the-air on channel 5 in the Washington, D.C. market. The FCC

has licensed FTS to operate WTTG (among other television stations). FTS is actively engaged,

among other things, in the production and distribution of television programs and other

copyrighted works, including local news programming. Cable systems, satellite services and

other multichannel video programming distributors also make retransmissions of WTTG

television broadcasts available to their subscribers upon negotiating the right to do so under

Section 325(b) of the Communications Act, 47 U.S.C. § 325(b).

16.   On information and belief, Counterclaim Defendant NBC Subsidiary (WRC-TV)

LLC ("WRC") is a Delaware limited liability company with its principal place of business at

4001 Nebraska Avenue, NW, Washington, D.C. WRC owns and operates the television station

WRC-TV, which is an FCC-licensed broadcast station that broadcasts to viewers over-the-air on

channel 4 in the Washington, D.C. market. WRC-TV is affiliated with the NBC Television

Network, a national broadcast network. WRC is actively engaged, among other things, in the

production and distribution of television programs and other copyrighted works, including local

news programming. Cable systems, satellite services and other multichannel video programming

distributors also make retransmissions of WRC-TV television broadcasts available to their

subscribers upon negotiating for the right to do so under Section 325 of the Communications

Act, 47 U.S.C. § 325.

17.   On information and belief, Counterclaim Defendant NBC Studios LLC ("NBC

Studios") is a Delaware limited liability company with its principal place of business at 100

Universal City Plaza, Universal City, California. NBC Studios is actively engaged in the

production and licensed distribution of television programs, including programs that are

transmitted to numerous broadcast stations in the United States affiliated with the NBC

5

Television Network and distributed elsewhere in the world.

18.     On information and belief, Counterclaim Defendant Universal Network Television LLC ("UNT") is a Delaware limited liability company with its principal place of business at 100 Universal City Plaza, Universal City, California. UNT is actively engaged in the production and licensed distribution of television programs, including programs that are transmitted to numerous broadcast stations in the United States affiliated with the NBC Television Network and distributed elsewhere in the world.

19.     On information and belief, Counterclaim Defendant Open 4 Business Productions LLC ("O4B") is a Delaware limited liability company with its principal place of business at 100 Universal City Plaza, Universal City, California. O4B is actively engaged in the production and licensed distribution of television programs, including programs that are transmitted to numerous broadcast stations in the United States affiliated with the NBC Television Network and distributed elsewhere in the world.

20.     On information and belief, Counterclaim Defendant Telemundo Network Group LLC ("Telemundo") is a Delaware limited liability company with its principal place of business at 2290 West 8th Avenue, Hialeah, Florida. Telemundo is, among other things, actively engaged in the production and licensed distribution of Spanish-language television programs, including programs that are transmitted to numerous broadcast stations in the United States affiliated with the Telemundo Network, a broadcast network, and distributed elsewhere in the world.

21.     On information and belief, Counterclaim Defendant American Broadcasting Companies, Inc. ("ABC") is a Delaware corporation with its principal place of business at 77 West 66th Street, New York, New York, and does business as the ABC Television Network. ABC is actively engaged in the production and distribution of television programs and other

6

copyrighted works, including programs ABC transmits to numerous broadcast television stations that it owns as well as other stations that are affiliated with its ABC Television Network and with other networks, in the United States. ABC grants these stations the right to broadcast programming within their communities of license. ABC is a wholly-owned, indirect subsidiary of plaintiff Disney Enterprises, Inc.

22.     On information and belief, Counterclaim Defendant Disney Enterprises, Inc. ("DEI") is a Delaware corporation with its principal place of business at 500 S. Buena Vista Street, Burbank, California. DEI is actively engaged in the licensing of its copyrighted properties, and certain of its affiliates are engaged in the worldwide production and distribution of copyrighted entertainment products, including programs that television broadcast stations and other media outlets transmit or retransmit to the public.

23.     On information and belief, Counterclaim Defendant Allbritton Communications Company ("Allbritton") is a Delaware corporation with its principal place of business at 1000 Wilson Boulevard, Suite 2700, Arlington, Virginia. Allbritton owns and operates the television station WJLA-TV, which is an FCC-licensed broadcast station that broadcasts to viewers over-the-air on channel 7 in the Washington, D.C. market. WJLA-TV is affiliated with the ABC Television Network. Allbritton is actively engaged, among other things, in the production and distribution of television programming and other copyrighted works, including local news programming. Cable systems, satellite services and other multichannel video programming distributors also make retransmissions of WJLA-TV television broadcasts available to their subscribers upon negotiating for the right to do so under Section 325 of the Communications Act, 47 U.S.C. § 325.

24.     On information and belief, Counterclaim Defendant CBS Broadcasting Inc.

7

("CBS") is a New York corporation with its principal place of business at 51 West 52nd Street, New York, New York. CBS is actively engaged in the production and distribution of television programs and other copyrighted works, including programs CBS transmits to numerous broadcast television stations that it owns as well as other stations in the United States that are affiliated with its CBS Television Network. CBS grants these stations the right to broadcast programming within their communities of license.

25.     On information and belief, Counterclaim Defendant CBS Studios Inc. ("CBS Studios") is a Delaware corporation with its principal place of business at 51 West 52nd Street, New York, New York. CBS Studios is actively engaged in the worldwide production and distribution of copyrighted entertainment products, including programs that television broadcast stations and other media outlets transmit or retransmit to the public.

26.     On information and belief, Counterclaim Defendant Gannett Co., Inc. ("Gannett") is a Delaware corporation with its principal place of business at 7950 Jones Branch Drive, McLean, Virginia. Gannett's wholly owned subsidiary, Detroit Free Press, Inc. owns and operates the television station WUSA, which is an FCC-licensed broadcast station that broadcasts to viewers over-the-air on channel 9 in the Washington, D.C. market. WUSA is affiliated with the CBS Television Network. Gannett is actively engaged, among other things, in the production and distribution of television programming and other copyrighted works, including local news programming. Cable systems, satellite services and other multichannel video programming distributors also make retransmissions of WUSA television broadcasts available to their subscribers upon negotiating for the right to do so under Section 325 of the Communications Act, 47 U.S.C. § 325.

8

## FACTUAL BACKGROUND

27.     The 1976 amendments to the Copyright Act struck a carefully-designed balance between cable systems, broadcasters, and the general public. *See Satellite Home Viewer Extension and Reauthorization Act Section 109 Report*, A Report of the Register of Copyrights (June 30, 2008), http://www.copyright.gov/reports/section109-final-report.pdf. These amendments redefined the right of public performance to protect broadcasters' property interests in their copyrights and bring cable systems within the scope of the Act. *See id.* at 3. At the same time, Congress amended the Act to create a compulsory licensing scheme for cable systems in Section 111 to ensure that cable systems could continue to operate and provide the public with the benefits of improved access to broadcast content. *See id.* at 3-5.

28.     The sums raised under Section 111's compulsory license system were designed to provide copyright owners with fair remuneration, but they were also designed to be modest, so that they would not harm access to local programming that CATV systems provided at the time (and that FilmOn X's system provides now). *See id.* at 3. As the House said, "[t]he Committee believes that such payments are modest and will not retard the orderly development of the cable television industry or the service it provides to its subscribers." H.R. Rep. No. 94-1476 at 91.

## A.     The 1976 Amendments

29.     In *Aereo*, the Supreme Court explained that "Congress amended the Copyright Act [in 1976] in large part to reject the Court's holdings in *Fortnightly* and *Teleprompter*." 134 S.Ct. at 2505. In those decisions, the Court had held that CATV systems (the ancestors of modern cable systems) did not "perform" within the meaning of the 1909 Copyright Act when they received and transmitted over-the-air television signals through cable wires to individual subscribers. *See Fortnightly Corp. v. United Artists Television, Inc.*, 392 U.S. 390, 401 (1968)

9

("*Fortnightly*"); *Teleprompter Corp. v. Columbia Broad. Sys., Inc.*, 415 U.S. 394, 408-09 (1974) ("*Teleprompter*").  Under those decisions, cable systems were able to profit from the delivery of copyrighted content to the public without providing any compensation to the copyright holders.

30.     In 1976, Congress amended the Copyright Act "to overturn this Court's determination that community antenna television (CATV) systems (the precursors of modern cable systems) fell outside the Act's scope." *Aereo*, 134 S. Ct. at 2504.  In doing so, Congress enacted three inextricably intertwined amendments that were intended to bring the transmissions made by cable systems within the scope of the Act's proscriptions: (1) a new definition of "public performance"; (2) the Transmit Clause; and (3) Section 111 (collectively, the "1976 Amendments").  *See id.* at 2505-06.

31.     By redefining a public performance and adding the Transmit Clause, Congress made "clear that an entity that acts like a CATV system itself performs, even if when doing so, it simply enhances viewers' ability to receive broadcast television signals." *Id.* at 2506. Additionally, "Congress further created a new section of the Act to regulate cable companies' public performances of copyrighted works.  Section 111 creates a complex, highly detailed compulsory licensing scheme that sets out the conditions, including the payment of compulsory fees, under which cable systems may retransmit broadcasts." *Id.*  "Congress made these three changes to achieve a similar end:  to bring the activities of cable systems within the scope of the Copyright Act." *Id.*

32.     Through the 1976 Amendments, Congress struck a careful balance between the interests of cable systems, broadcasters and the general public.  While recognizing that broadcasters should receive compensation for their copyrighted content, Congress also recognized that cable systems serve a valuable function by providing the general public with

access to free-to-air content.  Accordingly, Congress established "a program of compulsory copyright licensing that permits cable systems to retransmit distant broadcast signals without securing permission from the copyright owner and, in turn, requires each system to pay royalty fees to a central royalty fund based on a percentage of its gross revenues." *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 710 (1984).  This program "not only protects the commercial value of copyrighted works but also enhances the ability of cable systems to retransmit such programs carried on distant broadcast signals, thereby allowing the public to benefit by the wider dissemination of works carried on television broadcast signals." *Id.* at 710-11; *see also* H. Rep. No. 94-1476 at 89 (1976) (reasoning that "[C]opyright royalties should be paid by cable operators to the creators of such programs . . . [but] it would be impractical and unduly burdensome to require every cable system to negotiate with every copyright owner whose work was retransmitted by a cable system.").

33.     Section 111(c)(1) of the Copyright Act creates a compulsory license for cable systems that receive free over-the-air broadcasts and pass them along as secondary transmissions.  It provides that, upon compliance with procedural requirements and the payment of mandatory royalties, "secondary transmissions to the public by a cable system of a . . . primary transmission . . . shall be subject to statutory licensing . . . where the carriage of the signals comprising the secondary transmission is permissible under the rules, regulations, or authorizations of the Federal Communications Commission."  17 U.S.C. § 111(c)(1).

34.     Congress was careful in 1976 to expressly define a "cable system" to make it clear who qualifies for a compulsory license.  Section 111(f)(3) defines a "cable system" as:

> a facility, located in any State, territory, trust territory, or possession, that in whole or in part receives signals transmitted or programs broadcast by one or more television broadcast stations licensed by the Federal Communications Commission, and makes secondary transmissions of such signals or programs by

wires, cables, microwave, or other communications channels to subscribing members of the public who pay for such service. 17 U.S.C. § 111(f)(3).

35.     The statutory definition is, on its face, completely indifferent as to the mode of retransmission technology.  By its terms, a broadcast retransmitter can qualify as a "cable system" regardless of the type of communications channels it chooses to use.  Congress' open-ended definition of a "cable system" to include "other communications channels" demonstrates a clear intent that the Act be construed to accommodate new, as-yet unnamed technologies.  *See WGN Continental Broadcasting v. United Video, Inc.*, 693 F.2d 622, 627  (7th Cir. 1982) (concluding that "Congress probably wanted the courts to interpret the definitional provisions of the new act flexibly, so that it would cover new technologies as they appeared, rather than to interpret those provisions narrowly and so force Congress periodically to update the Act").[1]

## B.     FilmOn X Meets The Statutory Definition Of A Cable System

36.     In light of the 1976 Amendments and the Supreme Court's recent decision in *Aereo*, it is clear that FilmOn X qualifies for a compulsory license as a cable system under Section 111. As Justice Sotomayor, who joined in the majority opinion, specifically stated in oral argument in the *Aereo* case, "We say they're a c[]able company, they get the compulsory license." *See* Transcript of Oral Argument at 5:2-4, *Aereo*, 134 S.Ct. 2498 (2014) (No. 13-461).

37.     In *Aereo*, the Supreme Court analyzed Aereo's "Watch Now" service and concluded that Aereo's activities fall within the scope of the 1976 Amendments.  It reasoned that

---

[1] There is ample evidence in the legislative record suggesting Congress intended the compulsory copyright license to cover new retransmission technologies.  During subcommittee hearings on the proposed amendments to the Copyright Act, the former Register of Copyright, Barbara Ringer, testified that Section 111 "deals with all kinds of secondary transmissions, which usually means picking up electrical energy signals, broadcast signals, off the air and retransmitting them simultaneously by one means or the other—usually cable but sometimes other communication channels, like microwave and apparently laser beam transmissions that are on the drawing board if not in actual operation."  Hearings on H.R. 2223 before the Subcomm. On Courts, Civil Liberties, and the Admin. of Justice of the Comm. On the Judiciary House of Representatives, 94th Cong., 1st Session 1820 (1975) (hereinafter "H.R. 2223 Hearings"); see also H.R. 2223 Hearings at 442 ("the technology is so rapidly changing that we cannot really foresee what kind of changes in technology will occur") (statement of Rep. Pattison).

Aereo's service, which allows subscribers "to watch television programs over the Internet at about the same time as the programs are broadcast over the air[,]" is "substantially similar to those of the CATV companies that Congress amended the Act to reach." *See Aereo*, 134 S. Ct. at 2503, 2506.  It dismissed factual differences between Aereo and traditional cable companies as minor and insignificant, concluding that Aereo's service is "for all practical purposes a traditional cable system" and is "overwhelming[ly]" similar to "cable companies targeted by the 1976 amendments." *See id*. at 2506-07.

38.     As with Aereo, FilmOn X operates a cable system that allows subscribers to watch television programs over the internet at about the same time as the programs are broadcast over the air.  This system meets the statutory definition of a cable system under Section 111; that is, FilmOn X is a facility, its facility receives signals, and its equipment transmits those signals to subscribers.

39.     More specifically, FilmOn X has physical facilities located in the United States where it receives primary transmissions in the form of over-the-air signals transmitted by one or more television broadcast stations licensed by the FCC.  It then makes secondary transmissions of those signals by wires, cables, or other communications channels to subscribing members of the public who pay for such service.  Thus, FilmOn X fits squarely within the statutory definition of a cable system.  *See* 17 U.S.C. § 111(f)(3); *see also* Transcript of Oral Argument at 4:1-13, *Aereo*, 134 S.Ct. 2498 (2014) (No. 13-461) (Justice Sotomayor:  "I look at the definition of a cable company, and it seems to fit.").

**C.     FilmOn X Meets All Section 111's Remaining Requirements**

40.     FilmOn X has taken all appropriate steps to file the necessary paperwork to comply with the statutory licensing requirements set forth in Section 111.

13

41.     Section 111(d)(1) specifically directs that cable systems deposit their compulsory license royalty fees with the Register of Copyrights, "in accordance with requirements that the Register shall prescribe by regulation . . . ." 17 U.S.C. § 111(d)(1).  The Copyright Office has prescribed rules pertaining to "the fees for . . . services performed by the Licensing Division" (37 C.F.R. § 201.3), "the verification of a Statement of Account and royalty fees" (37 C.F.R. § 201.16), and "the deposit of Statements of Account and royalty fees." 37 C.F.R. § 201.17.

42.     As required under Section 111(d)(1), on or about July 11, 2014, FilmOn X submitted its "Statement of Account for Secondary Transmissions by Cable Systems" and paid all necessary royalty and filing fees.  Specifically, it submitted forms for fourteen markets covering the reporting periods from January 1, 2014 to June 30, 2014 for each city in which it operated during that period, including Washington, D.C.  It also paid the associated royalty and filing fees for that time period.

43.     At this juncture, FilmOn X has complied with all the statutory requirements for a Section 111 compulsory license, and therefore is entitled to retransmit plaintiffs' broadcast programming as a cable system.

**D.**     **This Action For Declaratory Relief Is Ripe**

44.     The Copyright Act does not direct or otherwise authorize the Copyright Office to make eligibility determinations as to whether a company meets the statutory definition of a cable system. *See* Compulsory License for Cable Systems, 45 Fed. Reg. 45270-01, 45271 (Jul. 3, 1980) (to be codified at 37 C.F.R. pt. 201).  Nor has the Copyright Office prescribed any specific rules or regulations that govern such determinations. *See* Statements of Account covering compulsory licenses for secondary transmission by cable systems, 37 C.F.R. § 201.17 (2013).

45.     On or about July 23, 2014, the Copyright Office sent a letter to FilmOn X in

14

which it accepted FilmOn X's documentation on a "provisional basis." Letter from Jacqueline C. Charlesworth, General Counsel and Associate Register of Copyrights, to Yelena Calendar, Re: Section 111 Statement of Account Filings (Jul. 23, 2014) (on file with recipient). In this letter signed by the General Counsel and Associate Register of Copyrights, Jacqueline C. Charlesworth, the Copyright Office acknowledged that "the question of eligibility of internet-based retransmission services for the Section 111 license appears to have been raised again before the courts . . . ." *Id.* at 1. Thus, although the Copyright Office expressed the belief that FilmOn X as an "internet-based service" falls outside the scope of the Section 111 license, it concluded that:

> [T]he Office will not refuse FilmOn's filings but will instead accept them on a provisional basis. FilmOn should be aware that, depending upon further regulatory or judicial developments, and/or based upon the Office's own further review of the issue, the Office may subsequently determine that it is appropriate to take definitive action on FilmOn's filings, which could include rejection of the statements. *Id.* at 2.

A true and correct copy of this July 23, 2014 letter issued by the Copyright Office is attached as Exhibit 1.

46.     At this juncture, FilmOn X is entitled to seek a judicial declaration from this Court. FilmOn X is not required by the Copyright Act or any agency rule to exhaust further administrative remedies or to pursue a special statutory review proceeding to adjudicate its right to a Section 111 compulsory license. Accordingly, this action before this Court is ripe.

## FIRST COUNTERCLAIM FOR DECLARATORY RELIEF

### (Against all Plaintiffs/Counterdefendants)

47.     FilmOn X reincorporates and re-alleges the allegations contained in all preceding paragraphs as if fully stated herein.

48.     An actual controversy has arisen and now exists between FilmOn X and

Counterdefendants concerning their respective rights and duties in that Counterdefendants contend that FilmOn X is not entitled to a compulsory license under Section 111 of the Copyright Act of 1976, whereas FilmOn X contends that it is entitled to such a license as a "cable system." A judicial declaration that recognizes FilmOn X's right to a compulsory license in accordance with Section 111 would allow FilmOn X to resume secondary transmissions of plaintiffs' broadcasts without infringing Counterdefendants' copyrights.

49. FilmOn X desires a judicial determination of its right and duties, and judicial declarations as to which party's interpretation of the Copyright Act is correct.

50. A judicial declaration is necessary and appropriate at this time under the circumstances in order that FilmOn X and Counterdefendants may ascertain their rights and duties under the Copyright Act.

## **PRAYER FOR RELIEF**

WHEREFORE, Counterclaimant FilmOn X prays for a judgment as follows:

A) That the Court enter a judgment in FilmOn X's favor declaring that FilmOn X meets the statutory definition of a "cable system" under 17 U.S.C. Section 111(f).

B) That the Court enter a judgment in FilmOn X's favor declaring that FilmOn X is entitled to a compulsory license under section 17 U.S.C. Section 111(c)(1).

C) That the Court enter a judgment in FilmOn X's favor and against Counterdefendants declaring that FilmOn X has not violated the Copyright Act with respect to any of Defendants' copyrighted works.

D) For such other and further relief as the Court may deem proper.

September 22, 2013                   Respectfully submitted,


By: /s/ Ryan G. Baker
    Ryan G. Baker
    Scott M. Malzahn
    BAKER MARQUART LLP
    10990 Wilshire Blvd., Fourth Floor
    Los Angeles, California 90024
    (424) 652-7811 (telephone)
    (424) 652-7850 (facsimile)
    Bar No.: 200344

/s/ Kerry J. Davidson
LAW OFFICE OF KERRY J. DAVIDSON
1738 Elton Road, Suite 113
Silver Spring, Maryland 20903
(301) 586-9516 (telephone)
(866) 920-1535(facsimile)
Bar No.: 456431

*Attorneys for Defendants and Counterclaim
Plaintiffs FilmOn X, LLC, FilmOn.TV, Inc.,
FilmOn.TV Networks, Inc., and FilmOn.com, Inc.*

17

# EXHIBIT E

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FOX TELEVISION STATIONS, INC., *et al.*, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )   Civil Action No. 13-758 (RMC) |
| FILMON X, LLC, *et al.*, | )<br>) |
| Defendants. | )<br>) |
| FILMON X, LLC, et al., | )<br>) |
| Counter-Complainants, | )<br>) |
| v. | )<br>) |
| FOX TELEVISION STATIONS, INC., et al., | )<br>) |
| Counter-Defendants. | )<br>) |

**PLAINTIFFS/COUNTER-DEFENDANTS' ANSWER
TO SECOND AMENDED COUNTERCLAIM**

Plaintiffs and Counter-Defendants Fox Television Stations, Inc., Twentieth Century Fox Film Corporation, Fox Broadcasting Company, NBC Subsidiary (WRC-TV) LLC, NBC Studios LLC, Universal Network Television LLC, Open 4 Business Productions LLC, Telemundo Network Group LLC, American Broadcasting Companies, Inc., Disney Enterprises, Inc., Allbritton Communications Company, CBS Broadcasting Inc., CBS Studios Inc., and Gannett Co., Inc., (collectively, "Plaintiffs") hereby answer the allegations contained in the Second Amended Counterclaim (the "Counterclaim") of Defendants and Counter-Complainants FilmOn X LLC (f/k/a Aereokiller LLC), FilmOn.TV Networks, Inc., Filmon.TV, Inc., and

FilmOn.com, Inc. (collectively "Defendants").  Plaintiffs deny all allegations contained in the

Counterclaim (including headings and captions) not specifically admitted in this Answer.

1.        Plaintiffs admit that certain of the Plaintiffs in this action have brought suit for

copyright infringement against Defendants, and/or certain other individuals and/or entities

affiliated with Defendants, in this and other courts, including the District Court for the Southern

District of New York and the District Court for the Central District of California.  The remaining

allegations in Paragraph 1 consist of Defendants' characterizations of contentions made in these

actions, to which no response is required.  Except as expressly admitted, to the extent the

allegations contained in Paragraph 1 may be deemed to require a response, they are denied.

2.        Plaintiffs admit that they filed a Memorandum of Points and Authorities in

support of Plaintiffs' Motion for Preliminary Injunction (Dkt No. 27-1, filed Aug. 1, 2013).

Certain of the allegations contained in Paragraph 2 consist of Defendants' characterizations of

and/or quotations from that document, which document is the best evidence of its content, and

therefore no response is required.  Except as expressly admitted, to the extent the allegations

contained in Paragraph 2 may be deemed to require a response, they are denied.

3.        Plaintiffs admit that the United States Supreme Court issued the decision titled

*American Broadcasting Companies, Inc. v. Aereo, Inc.*, 134 S. Ct. 2498 (2014) ("*Aereo*").

Certain of the allegations contained in Paragraph 3 consist of purported characterizations of

and/or quotations from the *Aereo* decision or oral argument before the Supreme Court in that

case, which proceedings are the best evidence of their content, and therefore no response is

required.  The remaining allegations in Paragraph 3 consist of Defendants' characterizations of

the *Aereo* decision, Defendants' contentions of law, and/or Defendants' characterizations of

Plaintiffs' contentions, to which no response is required.  Except as expressly admitted, to the

extent the allegations contained in Paragraph 3 may be deemed to require a response, they are denied.

4.      Paragraph 4 consists of Defendants' contentions of law and argument, to which no response is required.  Certain of the allegations contained in Paragraph 4 consist of Defendants' characterizations of and/or quotations from one or more other documents, which documents are the best evidence of their contents, and therefore no response is required. Plaintiffs lack knowledge or information regarding Defendants' characterizations of their purported submissions to the Copyright Office, and on that basis, deny those allegations.  To the extent the remaining allegations contained in Paragraph 4 may be deemed to require a response, they are denied.

5.      Paragraph 5 consists of Defendants' contentions of law and argument and/or characterizations of their Counterclaim, to which no response is required.  Certain of the allegations contained in Paragraph 5 consist of Defendants' characterizations of and/or quotations from one or more other documents, which documents are the best evidence of their contents, and therefore no response is required.  Plaintiffs specifically deny Defendants' contention that they are "entitled to a statutory license in accordance with Section 111."  Except as expressly admitted, to the extent the allegations contained in Paragraph 5 may be deemed to require a response, they are denied.

6.      Paragraph 6 consists of Defendants' characterizations of their purported Counterclaim, to which no response is required.  To the extent the allegations in Paragraph 6 may be deemed to require a response, they are denied.

7.      Paragraph 7 consists of Defendants' contentions of law, to which no response is required.  Plaintiffs admit that this Court has jurisdiction over actions arising under the

- 3 -

Copyright Act (17 U.S.C. § 101 *et seq.*) and the Declaratory Judgment Act (28 U.S.C. § 2201). Except as expressly admitted, to the extent the allegations contained in Paragraph 7 may be deemed to require a response, they are denied.

8.      Plaintiffs admit that venue is proper in this District.  Except as expressly admitted, to the extent any response to the allegations contained in Paragraph 8 may be deemed to require a response, they are denied.

9.      Plaintiffs lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 9 and on that basis, deny those allegations.

10.      Plaintiffs lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10 and on that basis, deny those allegations.

11.      Plaintiffs lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11 and on that basis, deny those allegations.

12.      Plaintiffs lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12 and on that basis, deny those allegations.

13.      Plaintiffs admit the allegations contained in Paragraph 13.

14.      Plaintiffs admit the allegations contained in Paragraph 14.

15.      Plaintiffs admit that Fox Television Stations, Inc. ("FTS"), is a Delaware Corporation that owns and operates numerous local broadcast television stations that broadcast television programming, including programming of the Fox network, over-the-air to numerous localities throughout the United States, including WTTG in Washington, D.C., which broadcasts the Fox network to viewers over-the-air on channel 5 in the Washington, D.C. market.  Plaintiffs admit that the FCC has licensed FTS to operate WTTG (among other television stations). Plaintiffs admit that FTS is actively engaged, among other things, in the production and

distribution of television programs and other copyrighted works, including local news programming.  Plaintiffs admit that cable systems, satellite services and other multichannel video programming distributors also make retransmissions of WTTG television broadcasts available to their subscribers upon negotiating the right to do so under Section 325(b) of the Communications Act, 47 U.S.C. § 325(b).  Except as expressly admitted, to the extent the allegations contained in Paragraph 15 may be deemed to require a response, they are denied.

16.     Plaintiffs admit the allegations contained in Paragraph 16.

17.     Plaintiffs admit the allegations contained in Paragraph 17.

18.     Plaintiffs admit the allegations contained in Paragraph 18.

19.     Plaintiffs admit the allegations contained in Paragraph 19.

20.     Plaintiffs admit the allegations contained in Paragraph 20.

21.     Plaintiffs admit the allegations contained in Paragraph 21.

22.     Plaintiffs admit the allegations contained in Paragraph 22.

23.     Plaintiffs admit the allegations contained in Paragraph 23.

24.     Plaintiffs admit the allegations contained in Paragraph 24.

25.     Plaintiffs admit the allegations contained in Paragraph 25.

26.     Plaintiffs admit the allegations contained in Paragraph 26.

27.     Paragraph 27 consists of Defendants' contentions of law and argument, to which no response is required.  Certain of the allegations contained in Paragraph 27 consist of Defendants' characterizations of one or more other documents or statutory provisions, which documents are the best evidence of their contents, and therefore no response is required.  To the extent the allegations contained in Paragraph 27 may be deemed to require a response, they are denied.

28.     Paragraph 28 consists of Defendants' contentions of law and argument, to which no response is required.  Certain of the allegations contained in Paragraph 28 consist of Defendants' characterizations of and/or quotations from one or more other documents, which documents are the best evidence of their contents, and therefore no response is required.  To the extent the allegations contained in Paragraph 28 may be deemed to require a response, they are denied.

29.     Paragraph 29 consists of Defendants' contentions of law and argument, to which no response is required.  Certain of the allegations contained in Paragraph 29 consist of Defendants' characterizations of and/or quotations from one or more other documents, which documents are the best evidence of their contents, and therefore no response is required.  To the extent the allegations contained in Paragraph 29 may be deemed to require a response, they are denied.

30.     Paragraph 30 consists of Defendants' contentions of law and argument, to which no response is required.  Certain of the allegations contained in Paragraph 30 consist of Defendants' characterizations of and/or quotations from one or more other documents, which documents are the best evidence of their contents, and therefore no response is required.  To the extent the allegations contained in Paragraph 30 may be deemed to require a response, they are denied.

31.     Paragraph 31 consists of Defendants' contentions of law and argument, to which no response is required.  Certain of the allegations contained in Paragraph 31 consist of Defendants' characterizations of and/or quotations from one or more other documents, which documents are the best evidence of their contents, and therefore no response is required.  To the

extent the allegations contained in Paragraph 31 may be deemed to require a response, they are denied.

32.     Paragraph 32 consists of Defendants' contentions of law and argument, to which no response is required.  Certain of the allegations contained in Paragraph 32 consist of Defendants' characterizations of and/or quotations from one or more other documents, which documents are the best evidence of their contents, and therefore no response is required.  To the extent the allegations contained in Paragraph 32 may be deemed to require a response, they are denied.

33.     Paragraph 33 consists of Defendants' contentions of law and argument, to which no response is required.  Certain of the allegations contained in Paragraph 33 consist of Defendants' characterizations of and/or quotations from one or more other documents, which documents are the best evidence of their contents, and therefore no response is required.  To the extent the allegations contained in Paragraph 33 may be deemed to require a response, they are denied.

34.     Paragraph 34 consists of Defendants' contentions of law and argument, to which no response is required.  Certain of the allegations contained in Paragraph 34 consist of Defendants' characterizations of and/or quotations from one or more other documents and/or statutory provisions, which documents are the best evidence of their contents, and therefore no response is required.  To the extent the allegations contained in Paragraph 34 may be deemed to require a response, they are denied.

35.     Paragraph 35 consists of Defendants' contentions of law and argument, to which no response is required.  Certain of the allegations contained in Paragraph 35 consist of Defendants' characterizations of and/or quotations from one or more other documents, which

documents are the best evidence of their contents, and therefore no response is required.  To the extent the allegations contained in Paragraph 35 may be deemed to require a response, they are denied.[1]

36.     Paragraph 36 consists of Defendants' contentions of law and argument, to which no response is required.  Certain of the allegations contained in Paragraph 36 consist of Defendants' characterizations of and/or quotations from one or more other documents, which documents are the best evidence of their contents, and therefore no response is required.  Plaintiffs specifically deny Defendants' contention that "FilmOn X qualifies for a compulsory license as a cable system under Section 111."  To the extent the allegations contained in Paragraph 36 may be deemed to require a response, they are denied.

37.     Paragraph 37 consists of Defendants' contentions of law and argument, to which no response is required.  Certain of the allegations contained in Paragraph 37 consist of Defendants' characterizations of and/or quotations from one or more other documents, which documents are the best evidence of their contents, and therefore no response is required.  To the extent the allegations contained in Paragraph 37 may be deemed to require a response, they are denied.

38.     Paragraph 38 consists of Defendants' contentions of law and argument, to which no response is required.  Plaintiffs lack knowledge or information regarding Defendants' characterizations of their technology and on that basis, deny those allegations.  Plaintiffs

---

[1] Footnote 1 to Paragraph 35 consists of Defendants' contentions of law and argument, to which no response is required.  Certain of the allegations contained in Footnote 1 to Paragraph 35 consist of Defendants' characterizations of and/or quotations from one or more other documents, which documents are the best evidence of their contents, and therefore no response is required.  To the extent the allegations contained in Footnote 1 to Paragraph 35 may be deemed to require a response, they are denied.

specifically deny Defendants' contention that their FilmOn X "system meets the statutory definition of a cable system under Section 111[.]"  To the extent the remaining allegations contained in Paragraph 38 may be deemed to require a response, they are denied.

39.     Paragraph 39 consists of Defendants' contentions of law and argument, to which no response is required.  Certain of the allegations contained in Paragraph 39 consist of Defendants' characterizations of and/or quotations from one or more other documents, which documents are the best evidence of their contents, and therefore no response is required. Plaintiffs lack knowledge or information regarding Defendants' characterizations of their technology and on that basis, deny those allegations.  Plaintiffs specifically deny Defendants' contention that "FilmOn X fits squarely within the statutory definition of a cable system."  To the extent the remaining allegations contained in Paragraph 39 may be deemed to require a response, they are denied.

40.     Plaintiffs deny the allegations contained in Paragraph 40.

41.     Paragraph 41 consists of Defendants' contentions of law and argument, to which no response is required.  Certain of the allegations contained in Paragraph 41 consist of Defendants' characterizations of and/or quotations from one or more other documents, which documents are the best evidence of their contents, and therefore no response is required.  To the extent the allegations contained in Paragraph 41 may be deemed to require a response, they are denied.

42.     Paragraph 42 consists of Defendants' contentions of law and argument, to which no response is required.  Certain of the allegations contained in Paragraph 42 consist of Defendants' characterizations of and/or quotations from one or more other documents, which documents are the best evidence of their contents, and therefore no response is required.

Plaintiffs lack knowledge or information regarding Defendants' characterizations of their purported submissions to the Copyright Office, and on that basis, deny those allegations. To the extent the remaining allegations contained in Paragraph 42 may be deemed to require a response, they are denied.

43.    Plaintiffs deny the allegations contained in Paragraph 43.

44.    Paragraph 44 consists of Defendants' contentions of law and argument, to which no response is required. Certain of the allegations contained in Paragraph 44 consist of Defendants' characterizations of and/or quotations from one or more other documents, which documents are the best evidence of their contents, and therefore no response is required. To the extent the allegations contained in Paragraph 44 may be deemed to require a response, they are denied.

45.    Paragraph 45 consists of Defendants' contentions of law and argument, to which no response is required. Certain of the allegations contained in Paragraph 43 consist of Defendants' characterizations of and/or quotations from one or more other documents, which documents are the best evidence of their contents, and therefore no response is required. Plaintiffs lack knowledge or information regarding Defendants' characterizations of their communications with the Copyright Office and on that basis, deny those allegations. To the extent the remaining allegations contained in Paragraph 45 may be deemed to require a response, they are denied.

46.    Paragraph 46 consists of Defendants' contentions of law and argument , and/or Defendants' characterizations of their purported Counterclaim, to which no response is required. To the extent the allegations in Paragraph 46 may be deemed to require a response, they are denied.

47.     Plaintiffs hereby incorporate by reference their responses to the above allegations in Paragraphs 1-46, as set forth above.

48.     Plaintiffs admit that they contend Defendants are engaged in copyright infringement, and that there exists an actual and justiciable controversy between the parties regarding Defendants' copyright infringement.  Plaintiffs deny the remaining allegations contained in Paragraph 48.

49.     Paragraph 49 consists of Defendants' characterizations of their purported Counterclaim, to which no response is required.  To the extent the allegations in Paragraph 49 may be deemed to require a response, they are denied.

50.     Paragraph 50 consists of Defendants' characterizations of their purported Counterclaim, to which no response is required.  To the extent the allegations in Paragraph 50 may be deemed to require a response, they are denied.

## RESPONSE TO PRAYER FOR RELIEF

The paragraphs of the Counterclaim containing Defendants' "prayer for relief" do not require a response.  To the extent that those paragraphs are deemed to require a response, Plaintiffs deny that Defendants are entitled to any of the relief requested in the Prayer for Relief.

## AFFIRMATIVE DEFENSES

Without conceding that it bears the burden of proof as to any of these defenses, Plaintiffs allege the following affirmative defenses to the allegations set forth in the Counterclaim. Plaintiffs aver that Defendants' claims do not describe the events or legal theories with sufficient particularity to permit Plaintiffs to ascertain all defenses that may exist.

## First Affirmative Defense

The Counterclaim fails to state a claim upon which relief can be granted, including because Defendants' claims are ambiguous, vague, and/or unintelligible.

**Second Affirmative Defense**

The Counterclaim is barred, in whole or in part, by the doctrine of unclean hands.

**Third Affirmative Defense**

The Counterclaim is barred, in whole or in part, by the doctrines of res judicata and/or collateral estoppel.

**Fourth Affirmative Defense**

The Counterclaim is barred, in whole or in part, by the doctrine of laches.

**Fifth Affirmative Defense**

The Counterclaim is barred, in whole or in part, by the doctrines of waiver and/or estoppel.

**RESERVATION OF DEFENSES AND AFFIRMATIVE DEFENSES**

Plaintiffs have not knowingly or intentionally waived any applicable defenses and explicitly reserve the right to assert any additional defenses and affirmative defenses as this actions proceeds.  Plaintiffs further reserve the right to amend their Answer and/or defenses accordingly, and/or to delete defenses that Plaintiffs determine are not applicable as this action proceeds.

WHEREFORE, Plaintiffs pray for judgment on Defendants' Counterclaim as follows:

1.     That Defendants take nothing by way of their Counterclaim;

2.     That Plaintiffs recover their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505; and

3.     For such other and further relief as the Court may deem just and proper.

Dated: September 22, 2014

/s/ Paul Smith
Paul Smith (D.C. Bar No. 358870)
psmith@jenner.com

- 12 -

JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412
Telephone: (202) 639-6000
Facsimile: (202) 639-6066

Richard L. Stone (admitted *pro hac*)
rstone@jenner.com
Julie A. Shepard (admitted *pro hac*)
jshepard@jenner.com
Amy Gallegos (admitted *pro hac*)
agallegos@jenner.com
JENNER & BLOCK LLP
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
Telephone: (213) 239-5100
Facsimile: (213) 239-5199

*Attorneys for Plaintiffs Fox Television
Stations, Inc., Twentieth Century Fox Film
Corporation, and Fox Broadcasting Company*

Dated: September 22, 2014

/s/ Robert Alan Garrett
Robert Alan Garrett (D.C. Bar No. 239681)
Hadrian R. Katz (D.C. Bar No. 931162)
Christopher Scott Morrow (D.C. Bar No. 491925)
Murad Hussain (D.C. Bar No. 999278)
ARNOLD & PORTER LLP
555 12th St., NW
Washington, DC 20004
Telephone: (202) 942-5444
Facsimile: (202) 942-5999

James S. Blackburn (admitted *pro hac*)
james.blackburn@aporter.com
John C. Ulin (admitted *pro hac*)
john.ulin@aporter.com
ARNOLD & PORTER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017
Telephone: (213) 243-4000
Facsimile: (213) 243-4199

*Attorneys for Plaintiffs NBC Subsidiary
(WRC-TV) LLC, NBC Studios LLC,*

- 13 -

*Universal Network Television LLC, Open 4 Business Productions LLC, Telemundo Network Group LLC, American Broadcasting Companies, Inc., Disney Enterprises, Inc., Allbritton Communications Company, CBS Broadcasting Inc., CBS Studios Inc., and Gannett Co., Inc.*